1   SEYFARTH SHAW LLP
    Christian J. Rowley (SBN 187293)
2     (crowley@seyfarth.com)
    560 Mission Street, Suite 3100
3   San Francisco, CA 94105
    Telephone: (310) 277-7200
4   Facsimile: (310) 201-5219

5   Attorneys for Respondent
    SAFEWAY, INC.

6

7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  INTERNATIONAL BROTHERHOOD OF      )   Case No. C08-02536-JL-ADR
    TEAMSTERS, LOCAL 439,             )
13                                    )   **RESPONSE AND OPPOSITION TO**
                   Petitioner,        )   **PETITION TO CONFIRM**
14                                    )   **ARBITRATION AWARDS; MOTION**
          v.                          )   **TO TRANSFER OR STAY ACTION OR**
15                                    )   **TO VACATE ARBITRATION**
    SAFEWAY, INC.,                    )   **AWARDS**
16                                    )
                   Respondent.        )
17  _____ )

18

19

20

21

22

23

24

25

26

27

28

---

OPPOSITION TO PETITION; MOTIONS TO TRANSFER OR STAY ACTION OR TO VACATE ARBITRATION AWARDS, CASE
No. C08-02536-JL-ADR

SF1 28325528.1 / 35977-000110

# TABLE OF CONTENTS

RESPONSE TO PETITION TO CONFIRM ARBITRATION AWARDS ...................................2

AFFIRMATIVE DEFENSES .................................................................................................6

OPPOSITION TO PETITION TO CONFIRM ARBITRATION AWARDS AND
MOTION TO TRANSFER OR STAY ACTION OR TO VACATE AWARDS.................. 6

I.       INTRODUCTION ..................................................................................................6

II.      FACTUAL AND PROCEDURAL BACKGROUND.........................................8

         A.       The Parties .................................................................................................8

         B.       The Parties' CBA, Grievance-Arbitration Mechanism, And Selection Of
                  Arbitrator Barbara Bridgewater As The Permanent Arbitrator .....................9

         C.       The CPS Settlement Agreement Grievance And Arbitration .....................10

         D.       Safeway's Termination Of Arbitrator Barbara Bridgewater .....................13

         E.       The Union's Breach Of The Parties' CBA, The Dispute Over Arbitrator
                  Bridgewater's Termination, And Her Continued Hearing Of Grievances ...........13

         F.       The Related Eastern District Of California Proceedings .......................14

III.     LEGAL ARGUMENT ............................................................................................16

         A.       The Court Should Deny The Petition Because The Parties Have Not
                  Consented To The Entry Of Judgment Upon Arbitration Awards. ...............16

         B.       The Court Should Further Deny The Petition Because The Arbitration
                  Awards Are Not Final. ...............................................................................17

         C.       Alternatively, The Court Should Transfer This Action To The Eastern
                  District Of California. ...............................................................................18

                  1.       The Union's petition could have been brought in the Eastern
                           District.....................................................................................18

                  2.       The Union's petition should be transferred to the Eastern District. ..........19

                           a.       The Eastern District is a more convenient forum for the
                                    parties...................................................................................19

                           b.       The Eastern District is a convenient forum for the
                                    witnesses. ...........................................................................20

                           c.       The interests of justice favor transfer to the Eastern District.........20

                           d.       The Eastern District's interest in the action outweighs the
                                    Union's choice of forum...............................................................21

- i -

1       e. The relative ease of access to evidence favors transferring this action to the Eastern District. ...................................................22

2

3       f. The availability of compulsory process for unwilling witnesses and the costs involved in securing willing witnesses favor transferring this action to the Eastern District. ...................................................................................22

4

5       g. Practical considerations make it easier to try this case in the Eastern District. ...................................................................22

6

7   D. In The Event That The Court Does Not Dismiss The Petition Or Transfer The Action, The Court Should Stay This Action Until The Eastern District Rules On The Claims In Safeway's Complaint. ......................................23

8

9   E. In The Event That The Court Decides To Proceed With This Action, The Court Should Vacate The Awards. ........................................................24

10     1. Arbitrator Bridgewater exceeded her arbitral authority under the CBA when she issued her May 7 award because she was terminated; Safeway had not agreed to submit the issue of her termination to her, and she did not have the power to decide her own jurisdiction to hear a grievance. ........................................25

11

12

13     2. Arbitrator Bridgewater exceeded her arbitral authority under the CBA when she issued the May 14 award because the dispute was not properly before her and was not substantively arbitrable. ..................26

14

15   F. The Court Should Award Safeway Attorneys' Fees Because The Union's Anticipatory Petition Was Brought In Bad Faith. ....................................27

16

17 IV. CONCLUSION. .........................................................................................28

18

19

20

21

22

23

24

25

26

27

28

- ii -

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3   *Alltrade Inc. v. Uniweld Prods, Inc.,*
       946 F.2d 622 (9th Cir. 1991) ......................................................................21
4
    *American Pres. Lines Ltd. v. Trans Atlantic Assocs., Inc., No. C-04-1515 EDL*
5      2004 U.S. Dist. LEXIS 16852 (N.D. Cal. Aug. 17, 2004)................................16

6   *Bethlehem Mines Corp. v. United Mine Workers,*
       494 F.2d 776 (3d Cir. 1974)..........................................................................25
7
    *Bethlehem Mines Corp. v. United Mine Workers,*
8      344 F. Supp. 1161 (W.D. Pa. 1972).........................................................25, 26

9   *Coast Trading Co., Inc. v. Pacific Molasses Co.,*
       681 F.2d 1195 (9th Cir. 1982) ......................................................................24
10
    *Commodity Futures Trading Comm'n v. Savage,*
11     611 F.2d 270 (9th Cir. 1979) ........................................................................18

12  *Commonwealth Enterps. v. Liberty Mutual Ins. Co., No. CA 91-55892,*
       958 F.2d 376 (9th Cir. 1992) ........................................................................16
13
    *Commonwealth Enterps. v. Liberty Mutual Ins. Co., No. CA 91-55892,*
14     1992 U.S. App. LEXIS 6121 (9th Cir. Mar. 4, 1992)................................16, 19

15  *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.,*
       529 U.S. 193 (2000)................................................................................18, 22
16
    *Decker Coal Co. v. Commonwealth Edison Co.,*
17     805 F.2d 834 (9th Cir. 1986) ........................................................................19

18  *Exxon Mobile Corp. v. Allied-Industrial Chemical,*
       383 F.Supp.2d 877 (M.D. La. 2005)........................................................24, 26
19
    *Fortune Alsweet & Eldridge, Inc. v. Daniel,*
20     724 F.2d 1355 (9th Cir. 1983) ....................................................................5, 24

21  *General Drivers, Warehousemen & Helpers v. Riss & Co.,*
       372 U.S. 517 (1963)......................................................................................16
22
    *International Union of Petroleum and Indus. Workers v. Western Indus. Maintenance,*
23     *Inc.,*
       707 F.2d 425 (9th Cir. 1983) ......................................................................5, 27
24
    *John Wiley & Sons, Inc. v. Livingston,*
25     376 U.S. 543 (1964)......................................................................................26

26  *Lindland v. U.S. Wrestling Ass'n, Inc.*
       227 F.3d 1000 (7th Cir. 2000) ......................................................................24
27

28

OPPOSITION TO PETITION; MOTIONS TO TRANSFER OR STAY ACTION OR TO VACATE ARBITRATION AWARDS, CASE
NO. C08-02536-JL-ADR

SF1 28325528.1 / 35977-000110

*Los Angeles Memorial Comm'n v. Nat'l Football League,*
    726 F.2d 1381 (9th Cir. 1984) ........................................................................18

*Los Angeles Memorial Comm'n v. Nat'l Football League,*
    89 F.R.D. 497 (C.D. Cal. 1981)....................................................................18

*Mediastream, Inc. v. Priddis Music, Inc., No. C 07-2127 PJH,*
    2007 U.S. Dist. LEXIS 73707 (N.D. Cal. Sept. 24, 2007) ........................21, 27

*Meyers v. Ciano, No. C 01-3955 TEH,*
    2002 U.S. Dist. LEXIS 2556 (N.D. Cal. Feb. 12, 2002) ...........................20, 21

*Michaels v. Mariforum Shipping,*
    624 F.2d 411 (2d Cir. 1980)..........................................................................17

*Millmen's Local 550, United Bhd. of Carpenters & Joiners v. Well's Exterior Trim,*
    828 F.2d 1373 (9th Cir. 1987) .......................................................................17

*Public Serv. Elec. & Gas Co. v. Sys. Council U-2,*
    703 F.2d 68 (3d Cir. 1983)............................................................................16

*Roadway Package Sys., Inc. v. Kayser,*
    257 F.3d 287 (3d Cir. 2001)..........................................................................24

*Sheetmetal Worker's International Association Local 252 v. Standard Sheetmetal, Inc.,*
    699 F.2d 481 (9th Cir. 1983) ......................................................................5, 24

*Sheetmetal Workers' International Association Local Union No. 359 v. Madison*
    *Industries Inc. of Arizona,*
    84 F.3d 1186 (9th Cir. 1996)...........................................................................5

*Textile Unlimited, Inc. v. A. Bmhand Co., Inc.,*
    240 F.3d 781 (9th Cir. 2001)..........................................................................18

*United Steelworkers v. Warrior & Gulf Navigation Co.,*
    363 U.S. 574 (1960)................................................................................25, 26

*Varley v. Tarrytown Assocs., Inc.,*
    477 F.2d 208 (2d Cir. 1973)..........................................................................16

**FEDERAL STATUTES**

9 U.S.C. § 10(a)(4)............................................................................................24

9 U.S.C. § 12 ....................................................................................................23

9 U.S.C. § 4 .......................................................................................................2

9 U.S.C. § 9 ...........................................................................................15, 18, 23

28 U.S.C. § 1331.................................................................................................2

28 U.S.C. §1337..................................................................................................2

SF1 28325528.1 / 35977-000110

1    28 U.S.C. § 1391(b) ...........................................................................................18

2    28 U.S.C. § 1404(a) ...............................................................................17, 18, 19

3    29 U.S.C. §152 ...................................................................................................2

4    29 U.S.C. §185.......................................................................................2, 8, 15, 17

5

## MISCELLANEOUS

6

FRCP Rule 57    .......................................................................................15, 23

7

22A Fed. Proc. § 52:2002 (Lawyers ed. 2003) ...................................................16, 17

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SF1 28325528.1 / 35977-000110

As a threshold matter, in an apparent attempt at forum shopping, Petitioner International Brotherhood of Teamsters, Local 439 ("Union") quickly filed what appears to be a boilerplate petition in this forum without the usual supporting argumentation or brief.[1]  Petitions to confirm arbitration awards brought pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, are supposed to be handled like motion practice where the moving party, in this case the Union, presents all of its supporting evidence and argumentation with the petition.  The Union, however, has filed what appears to be a more traditional complaint-type petition with little supporting analysis or argumentation.  Respondent Safeway, Inc. ("Safeway") therefore "answers" that petition immediately below and includes its opposition brief and argumentation thereafter.

**RESPONSE TO PETITION TO CONFIRM ARBITRATION AWARDS**

**PETITION ¶ NO. 1**

Jurisdiction of this Court is based upon 29 U.S.C. §185, 28 U.S.C. §1331, 28 U.S.C. §1337 and 9 U.S.C. § 4.  Venue is appropriate in this District since the arbitration awards involved in this despite were issued in this District and Respondent Safeway Stores, Inc. maintains its headquarters and various facilities within this District.

**RESPONSE TO PETITION ¶ NO. 1**

Respondent admits that the court has jurisdiction over the petition and that it maintains its headquarters and various facilities within this district.  Respondent denies that venue is appropriate in this district.

**PETITION ¶ NO. 2**

Petitioner is a labor organization within the meaning of 29 U.S.C. §152.  It is a labor organization organized for the purpose of representing its members in their terms and conditions of employment.

---

[1] For example, the Union includes the boilerplate claim that the time to vacate the arbitration "decisions" has past when in fact they were issued less than one month ago.  Under the Federal Arbitration Act, it is clear that Safeway has up to three months to petition to vacate any arbitration awards.

SF1 28325528.1 / 35977-000110

**RESPONSE TO PETITION ¶ NO. 2**

Respondent admits the allegations in paragraph 2 of the petition.

**PETITION ¶ NO. 3**

Respondent Safeway Stores, Inc. is an employer within the meaning of 29 U.S.C. § 152 and does business within this judicial district.

**RESPONSE TO PETITION ¶ NO. 3**

Respondent admits the allegations in paragraph 3 of the petition.

**PETITION ¶ NO. 4**

A Collective Bargaining Agreement exists between Petitioner and Respondent which contains a provision for final and binding arbitration.  Attached as Exhibit A is a copy of the grievance and arbitration procedure of the Collective Bargaining Agreement.

**RESPONSE TO PETITION ¶ NO. 4**

Respondent admits the allegations in paragraph 4 of the petition.

**PETITION ¶ NO. 5**

In 2007, a dispute arose between Petitioner and Respondent concerning whether the employer failed to comply with a January 31, 2007 agreement concerning whether Safeway breached the terms of a grievance settlement agreement involving Safeway's CPS facility, and whether the alleged breach was subject to arbitration.

**RESPONSE TO PETITION ¶ NO. 5**

Respondent denies that the agreement referenced in paragraph 5 of the petition is dated January 31, 2007.  Respondent further denies that the dispute referenced in paragraph 5 of the petition arose in 2007.  Respondent admits the remaining allegations in paragraph 5 of the petition.

**PETITION ¶ NO. 6**

Under the terms of the Agreement the parties submitted this matter to a Board of Adjustment on April 14, 2008 consisting of Union Member Ed Speckman, Union Member Daniel Lee, Company Member Doug Ruygrok, Company Member Michelle Scott and Company

1   Member Kurt Steinhoff.  Barbara Bridgewater was the Neutral Member of the Board of

2   Adjustment.

3   **RESPONSE TO PETITION ¶ NO. 6**

4          Respondent admits that a Board of Adjustment hearing occurred on April 14, 2008 before

5   Ed Speckman, Daniel Lee, Doug Ruygrok, Michelle Scott, Kurt Steinhoff, and Barbara

6   Bridgewater.  Respondent denies that the parties submitted the matter (*i.e.*, the dispute referenced

7   in paragraph 5 of the petition) to the Board of Adjustment.

8   **PETITION ¶ NO. 7**

9          Arbitrator Bridgewater issued her Decision finding the matter was arbitrable on May 14,

10  2008.  That Decision was issued in Alameda County and a copy of that Decision is attached as

11  Exhibit B.

12  **RESPONSE TO PETITION ¶ NO. 7**

13         Respondent admits that Arbitrator Bridgewater issued the purported decision attached as

14  Exhibit B to the petition on or about May 14, 2008.  Respondent further admits that Arbitrator

15  Bridgewater purports to find in that decision that the dispute referenced in paragraph 5 of the

16  petition was arbitrable.  By way of further answer, Respondent denies that Arbitrator

17  Bridgewater had the authority to issue that decision.  Respondent is without information or belief

18  as to where Arbitrator Bridgewater issued her decision and, therefore, denies the same.

19  **PETITION ¶ NO. 8**

20         After the Board of Adjustment but prior to the issuance of the written Decision,

21  respondent attempted to terminate Ms. Bridgewater as the arbitrator selected by the parties.  That

22  issue was submitted to the arbitrator and she ruled on May 7, 2008 that the company could not

23  remove her as arbitrator based upon the language of the contract.  This was a matter of a

24  controversy between the company and the Union.  It was fully arbitrable under the terms of the

25  grievance procedure attached as Exhibit A.  A copy of the Arbitrator's May 7 Decision is

26  attached as Exhibit C.

27

28

- 4 -

SF1 28325528.1 / 35977-000110

1  **RESPONSE TO PETITION ¶ NO. 8**

2  Respondent admits that on or about April 14, 2008, it properly terminated Arbitrator

3  Barbara Bridgewater under the parties' collective bargaining agreement. Respondent further

4  admits that Exhibit C is a copy of Arbitrator Bridgewater's purported May 7, 2008 decision

5  regarding her termination. Excepted as stated in its response to paragraph 8 of the petition,

6  Respondent denies the remaining allegations contained in that paragraph.

7  **PETITION ¶ NO. 9**

8  The Respondent has refused and failed to comply with the Decisions of Arbitrator

9  Bridgewater referred to as Exhibits B & C attached hereto.

10  **RESPONSE TO PETITION ¶ NO. 9**

11  Respondent denies the allegations contained in paragraph 9 of the petition.

12  **PETITION ¶ NO. 10**

13  Petitioner has been required to secure the services of counsel for the prosecution and

14  enforcement of the arbitration award. Because of Respondent's refusal to comply with the

15  Decisions of Arbitrator Bridgewater is unjustified and in bad faith, Petitioner seeks attorneys'

16  fees incurred to obtain compliance with the arbitration procedure. *International Union of*

17  *Petroleum and Indus. Workers v. Western Indus. Maintenance, Inc.*, 707 F.2d 425 (9th Cir.

18  1983); *Sheetmetal Workers' International Association Local Union No. 359 v. Madison*

19  *Industries Inc. of Arizona*, 84 F.3d 1186, 1191 (9th Cir. 1996). Here, Respondent has not sought

20  to vacate this arbitration award and any response is barred by the statute of limitations. See,

21  *Sheetmetal Worker's International Association Local 252 v. Standard Sheetmetal, Inc.*, 699 F.2d

22  481 (9th Cir. 1983) and *Fortune Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355 (9th Cir.

23  1983).

24  **RESPONSE TO PETITION ¶ NO. 10**

25  Respondent denies the allegations contained in paragraph 10 of the petition.

26  / / /

27  / / /

28  - 5 -

**AFFIRMATIVE DEFENSES**

1.      The parties' collective bargaining agreement does not provide that a court will enter judgment upon an arbitration award.

2.      The alleged arbitration awards that petitioner seeks to confirm are not final.

3.      Venue for this action is appropriate in the Eastern District of California and not in this district.

4.      The arbitrator exceeded her powers when she issued the alleged arbitration awards attached to the petition at Exhibits B and C.

WHEREFORE Safeway denies that the Union is entitled to any relief whatsoever and prays that judgment be entered in its favor on the Union's petition, that the petition be denied with prejudice, and that Safeway be awarded its attorneys' fees and costs and such other relief as the court deems equitable and just.

**OPPOSITION TO PETITION TO CONFIRM ARBITRATION AWARDS AND MOTION TO TRANSFER OR STAY ACTION OR TO VACATE AWARDS**

**I.      INTRODUCTION**

A dispute exists between the parties as to the scope of the arbitrator's authority under the parties' collective bargaining agreement ("CBA"), as well as to the identity of the proper arbitrator. The International Brotherhood of Teamsters, Local 439 ("Union") is insisting, in violation of the CBA, that Arbitrator Barbara Bridgewater decide disputes between the parties that do not arise under the parties' CBA. Moreover, the Union is insisting that Arbitrator Bridgewater, whom Safeway, Inc. ("Safeway") has terminated, hear grievances between the parties through September 27, 2008, in violation of the CBA. The Union is further violating the CBA by refusing to select a new arbitrator to hear those grievances and requesting that Arbitrator Bridgewater hear and decide those grievances even if Safeway does not appear at hearing.

The Union's petition asks the court to confirm Arbitrator Bridgewater's alleged May 7 and May 14 awards, in which she decided that she could hear grievances between the parties even though Safeway had terminated her in accordance with its rights under the CBA and in which she decided that she could arbitrate a dispute under the parties' CBA even though the

- 6 -

1    dispute did not involve an alleged violation of the CBA and, indeed, had nothing to do with the

2    CBA. Neither decision reached the merits of underlying grievances. Both "decisions," however,

3    involved issues that Safeway did not submit to Arbitrator Bridgewater for decision.

4        The Union filed the petition even though the parties' CBA does not provide that a court

5    will enter judgment upon an arbitration award and even though the awards are not final. Under

6    Section 301 of the Labor Management Relations Act ("LMRA") and Section 9 of the Federal

7    Arbitration Act ("FAA"), the court has no authority to confirm arbitration awards when the

8    parties' arbitration agreement does not provide that a court will enter judgment upon an award.

9    Under those same statutes, the court has no authority to confirm awards that are not final. Thus,

10   the court should deny the Union's petition.

11       Alternatively, the court should transfer the action to the Eastern District of California

12   ("Eastern District") where Safeway has filed a related complaint seeking declaratory relief that,

13   among other things, Arbitrator Bridgewater is terminated and has no authority to decide

14   grievances between the parties and moving to compel the Union to select a new arbitrator.

15   Venue in the Eastern District is appropriate for this action because Safeway and the Union reside

16   in that district, the facility at issue is in that district, and the arbitrations and all of the underlying

17   operative facts occurred there. Moreover, the Eastern District is the only venue in which

18   Safeway could have brought its complaint for declaratory relief. Indeed, the convenience of the

19   parties, the convenience of the witnesses, and the interests of justice, along with all of the factors

20   pertaining to venue transfers, favor transferring this action to the Eastern District. At the very

21   least, the court should stay this action until the Eastern District has ruled on Safeway's complaint

22   given the related nature of the proceedings, the similarity of the issues, and concerns of judicial

23   economy.

24       In the event that the court chooses to proceed with this action, Safeway seeks a vacation

25   of the awards because Arbitrator Bridgewater vastly exceeded the scope of her authority when

26   she issued them in violation of the parties' CBA, the LMRA, and the FAA. The court should

27   vacate the May 7 award because Safeway did not submit the issue of Arbitrator Bridgewater's

28

- 7 -

1    termination to her and she had no authority to hear the issue because Safeway had terminated

2    her.  Indeed, there was no arbitration even held, she just issued a purported decision out of the

3    blue.  Moreover, she had no authority to decide her own jurisdiction.  Instead, such a question is

4    for the court.  Consequently, vacation of the May 7 award is warranted.

5            Similarly, the court should vacate Arbitrator Bridgewater's May 14 award because

6    Safeway refused to submit the issue of the substantive arbitrability of the underlying grievance to

7    her.  Her authority to hear that grievance is a question for the court, and Safeway objected

8    accordingly at hearing.  In any event, Arbitrator Bridgewater's decision on that issue is just plain

9    wrong.  Because Safeway preserved the substantive arbitrability issue for the court, the court can

10   rule on that issue *de novo*.  As explained below, the court should rule that the underlying

11   grievance is substantively inarbitrable given that it does not involve an alleged violation of the

12   parties' CBA or a dispute arising under the parties' CBA and vacate Arbitrator Bridgewater's

13   decision to the contrary.

14   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

15       **A.    The Parties**

16           Safeway is a Delaware corporation qualified to do business in the State of California.

17   (Declaration of Carl Ramnitz at ¶ 3, attached hereto as Exhibit A.)  It maintains a distribution

18   center at 16900 West Schulte Road in Tracy, California  95377 ("Distribution Center"), at which

19   it employs approximately 1,750 individuals.  (Exhibit A at ¶ 2.)  Many of Safeway's employees

20   at the Distribution Center reside in and around Tracy, California.  (*Id.* at ¶ 4.)  Safeway is in an

21   industry affecting commerce within the meaning of Section 301 of the Labor Management

22   Relations Act, as amended, 29 U.S.C. §185.

23           The Union is the collective bargaining representative for approximately 1,624 warehouse

24   employees and drivers employed by Safeway at the Distribution Center and who are all covered

25   by the Agreement Between Safeway, Inc. and Local 439 International Brotherhood of Teamsters

26   Chauffeurs, Warehousemen, and Helpers of America, August 10, 2003 through September 27,

27   2008 ("CBA").  (Exhibit A at ¶ 5.)  The Union maintains its principal place of business at 1531

28

- 8 -

1   East Fremont Street in Stockton, California 95205. (*Id.* at ¶ 6.)

2   **B.    The Parties' CBA, Grievance-Arbitration Mechanism, And**
    **Selection Of Arbitrator Barbara Bridgewater As The**
3   **Permanent Arbitrator**

4       Safeway and the Union are parties to the CBA, which they entered into at the Distribution

5   Center in Tracy, California. (Exhibit A at ¶ 7, Exhibit 1.) The Distribution Center houses the

6   parties' CBA, grievance paperwork, and bargaining history. (Exhibit A at ¶ 8.)

7       Article XXVI of the CBA supplies a grievance-arbitration mechanism for resolving

8   disputes between the parties. (*Id.* at ¶ 9, Exhibit 1 at 21-24.) Pertinent to this dispute, Article

9   XXVI provides that an arbitrable grievance is a dispute arising out of an alleged violation of the

10  CBA and that the arbitrator's authority over such a grievance is limited to the interpretation of

11  the explicit provisions of the CBA. (*Id.* at ¶ 10, Exhibit 1 at 21, 23.) Article XXVI further

12  provides for the selection and termination of the permanent arbitrator. (*Id.* at ¶ 11, Exhibit 1 at

13  22-23.) Moreover, Article XXVI does not provide that a court will enter judgment upon

14  arbitration awards. (*Id.* at ¶ 12, Exhibit 1 at 21-24.)

15      More specifically, the relevant portions of Article XXVI read as follows:

16  ARTICLE XXVI. - GENERAL GRIEVANCE PROCEDURE. *A grievance is*
    *any controversy between the Company, the Union or an employee arising out of*
17  *an alleged violation of a specific provision of this Agreement.* The grievance
    and arbitration procedure shall apply only to disputes that arise during the term of
18  this Agreement. The grievance and arbitration procedure of this Agreement will
    be the sole and exclusive means available for resolving grievances. Prior to any
19  grievance being filed, the employee shall make his immediate supervisor aware of
    his dispute. In the case of a Company grievance, a representative of the Company
20  shall make a Union representative aware of the dispute prior to filing a formal
    grievance. In all cases, except where safety of the employee is in jeopardy, the
21  employee is required to work first and grieve later. It is the intent of the parties to
    settle grievances in an expeditious manner. . . .
22
    Step Three. In the event the second step fails to settle the grievance it shall be
23  referred to a Board of Adjustment within thirty (30) days by the initiating party or
    it shall be deemed resolved in favor of the other party. There shall be a Board of
24  Adjustment comprised of four (4) members; two (2) representing the Union and
    two (2) representing the Company and one neutral member who shall be XX and
25  shall also serve in the capacity of permanent arbitrator. The Union members of
    the Board of Adjustment shall not be employees of the Local Union and the
26  Company members of the Board of Adjustment shall not be management or
    supervisory employees of the Company who are assigned to the facility covered
27  by this agreement. If XX is unable to serve, the parties will appoint another
    permanent arbitrator. *Should the parties fail to agree on the replacement for the*
28
                                         - 9 -

*permanent arbitrator they shall select an arbitrator from a panel of seven (7) arbitrators having offices in Northern California furnished by the FMCS. The Arbitrator shall be selected by the alternate striking method, the order of choosing determined by the winner of a coin toss.*

The parties shall arrange with the arbitrator mutually agreeable dates, with a minimum of one date per month for a period of twelve (12) months for the Adjustment Boards to be convened. It is the intent of the parties that as many cases as can be heard, per monthly session, will be heard. By mutual agreement of the parties and the arbitrator, more dates may be scheduled. In no case shall attorneys be members of the Board of Adjustment except for the neutral member.

*Once each twelve (12) month period, either party may remove the arbitrator and request that a new arbitrator is chosen. If the parties cannot mutually agree on the selection of a new arbitrator, the arbitrator will be selected using the alternating selection method indicated above.* If no such request is made, the arbitrator shall be renewed for an additional twelve-(12) month period.

The Board of Adjustment shall not be empowered to amend, modify or change the terms of this Agreement. On termination and discipline cases, votes and deliberations of the Board of Adjustment shall be confidential among the members of the Board of Adjustment and only the final decision shall be announced to the parties. . . .

**D.      The jurisdiction and authority of the arbitrator over the grievance and his opinion and award shall be confined exclusively to the interpretation of the explicit provisions of this Agreement at issue between the Union and the Company.**

**E.      The arbitrator shall have no authority to add to, detract from, alter, amend or modify any provision of this Agreement, or impose on any party hereto a limitation or obligation not explicitly provided for in this Agreement or establish or alter any wage rate or wage structure.**

F.      A decision reached at any step of the grievance/arbitration procedure shall be final and binding on the parties and the employees.

(emphasis added). (Exhibit A at ¶ 7, Exhibit 1 at 21-24.)

On or about December 10, 2007, the parties selected Arbitrator Barbara Bridgewater as the permanent arbitrator to hear grievances between the parties from January 1, 2008 through September 27, 2008 (the expiration date of the CBA). (Exhibit A at ¶ 13.) In accordance with the CBA, the parties scheduled one date per month, through and including September 25, 2008, for Arbitrator Bridgewater to hear those grievances. (*Id.* at ¶ 14.) Arbitrations before Arbitrator Bridgewater have all occurred or will occur in Tracy, California. (*Id.* at ¶ 15.)

**C.      The CPS Settlement Agreement Grievance And Arbitration**

On October 25, 2006 and March 29, 2007, respectively, the Food, Industrial & Beverage

- 10 -

1   Warehouse, Drivers and Clerical Employees, Local 630 ("Local 630") and the Union filed

2   grievances alleging that Safeway had transferred bargaining unit work to Safeway's distribution

3   center located in West Sacramento, California ("CPS-West").  (Declaration of Doug Ruygrok,

4   attached hereto at Exhibit B, at ¶ 4, Exhibits 1 and 2.)  Safeway denied those grievances.

5   (Exhibit B at ¶ 5.)  Nonetheless, in the interest of resolving the dispute, Safeway, Local 630, and

6   the Union entered into a settlement over the grievance on February 1, 2008 ("CPS-West

7   settlement agreement").  (Exhibit B at ¶ 6, Exhibit 3.)  Although the Union is signatory to the

8   settlement agreement, the Union excused itself from settlement negotiations due to other

9   commitments and did not participate in the final settlement discussions or the actual drafting of

10  the settlement agreement.  (Exhibit B at ¶ 7.)  Rather, Local 630's attorney, Ralph Phillips, and

11  Doug Ruygrok, Safeway's Director of Labor Relations, Distribution & Supply, drafted and

12  finalized the settlement agreement.  (*Id.* at ¶¶ 2, 8.)

13        In pertinent part, the CPS-West settlement agreement sets forth that Local 630 will

14  represent the CPS-West workforce and that the collective bargaining agreement between

15  Safeway and Local 630, which covers Safeway's Vons warehouse in Southern California ("Vons

16  Warehouse"), would apply to CPS-West.  (Exhibit B at ¶ 9, Exhibit 3 at ¶ 2.)  Paragraph 3 of the

17  settlement agreement further provides that employees from Local 630's and the Union's

18  bargaining units who were "disadvantaged" by the alleged transfer of work to CPS-West would

19  have an opportunity to transfer into CPS-West.  (Exhibit B at ¶ 10, Exhibit 3 at ¶ 3.)

20        Importantly and as discussed at the time the settlement agreement was drafted and

21  finalized, the definition of "disadvantaged" employees is limited to employees: (1) who worked

22  in the allegedly affected departments, *i.e.*, Local 630 bargaining unit members working in the

23  Variety and Grocery departments in the Vons Warehouse and Union bargaining unit members

24  working in the Variety department in the Distribution Center in Tracy; and (2) who were laid off

25  or who received reduced hours or classification as a result of the alleged transfer of work to CPS-

26  West.  (Exhibit B at ¶ 11.)  Additionally, the parties explicitly discussed and agreed that the

27  definition of "disadvantaged" was not to include Local 630 or Union bargaining unit members

28

- 11 -

1  who did not gain overtime opportunities or an elevated position on the seniority list as a result of

2  the alleged transfer of work to CPS-West. (*Id.* at ¶ 12.)

3       The Vons Warehouse experienced a layoff, and four Local 630 bargaining unit members

4  from the affected departments applied for transfer to CPS-West under the CPS-West settlement

5  agreement. (Exhibit B at ¶ 13.) The Distribution Center in Tracy, however, did not experience a

6  lay off or reduction in hours or classifications. (*Id.* at ¶ 14.) Thus, no Union bargaining unit

7  members could demonstrate they were "disadvantaged" as that term is defined in the CPS-West

8  settlement agreement. (*Id.*) Nonetheless, the Union claims that 48 of its bargaining unit

9  members working at the Distribution Center were entitled to transfer under the terms of the CPS-

10 West settlement agreement. (*Id.*)

11      On April 1, 2008, the Union grieved the CPS-West settlement agreement dispute under

12 the parties' CBA. (Exhibit B at ¶ 15, Exhibit 4.) On April 14, 2008 at the Holiday Inn Express

13 in Tracy, California, the parties' appeared before Arbitrator Bridgewater on the CPS-West

14 settlement agreement grievance, among other grievances. (Exhibit B at ¶ 16.) At the outset of

15 the hearing, Mr. Ruygrok objected to Arbitrator Bridgewater hearing the CPS-West settlement

16 agreement grievance given that she had no authority to consider it. (*Id.* at ¶ 17.) He argued that

17 the grievance arose out of an alleged violation of the CPS-West settlement agreement and not the

18 parties' CBA; the underlying dispute pertained only to whether Union employees were

19 "disadvantaged" as defined by the CPS-West settlement agreement. (*Id.*) Mr. Ruygrok stated

20 those objections and arguments on the record. (*Id.*)

21      Nonetheless, Arbitrator Bridgewater proceeded and decided to hear the issue of whether

22 the CPS-West settlement agreement grievance was substantively arbitrable under the parties'

23 CBA. (Exhibit B at ¶ 18.) Mr. Ruygrok again objected and told Arbitrator Bridgewater that she

24 did not have the authority to decide the substantive arbitrability issue. (*Id.* at ¶ 19.) Mr.

25 Ruygrok further reserved Safeway's right to bring that issue before a court. (*Id.*) The Union and

26 Arbitrator Bridgewater, however, insisted that she consider substantive arbitrability of the

27 grievance. (*Id.* at ¶ 20.) Having no choice but to proceed with hearing or to risk an *ex parte*

28

- 12 -

1   award, Mr. Ruygrok argued Safeway's case on substantive arbitrability but reiterated on the

2   record that Safeway was proceeding without waiving its objection to Arbitrator Bridgewater's

3   lack of authority to hear the Grievance and without waiving its right to bring the substantive

4   arbitrability issue before a court. (*Id.* at ¶ 21.)

5       Despite Safeway's objections and reservations at hearing and the limited definition of a

6   "grievance" under the parties' CBA, Arbitrator Bridgewater issued an award on May 14, 2008,

7   in which she held that the CPS-West settlement agreement grievance was arbitrable under the

8   parties' CBA. (Petition at ¶ 7, Exhibit B.)

9       **D.    Safeway's Termination Of Arbitrator Barbara Bridgewater**

10      Pursuant to Safeway's right to terminate the permanent arbitrator once each twelve-

11  month period, Carl Ramnitz, Safeway's Director Labor Relations, Northern California Division,

12  terminated Arbitrator Bridgewater on or about April 14, 2008 (shortly after she wrongly

13  determined, over Safeway's vigorous objections to the contrary, that she could decide whether

14  the CPS-West settlement agreement grievance was substantively arbitrable). (Exhibit A at ¶ 16,

15  Exhibit 2.) He notified the Union and Arbitrator Bridgewater accordingly. (*Id.*) Importantly,

16  Safeway had not previously invoked its right to terminate the permanent arbitrator within the

17  twelve-month period following her appointment. (Exhibit A at ¶ 17.)

18      **E.    The Union's Breach Of The Parties' CBA, The Dispute Over**
        **Arbitrator Bridgewater's Termination, And Her Continued**
19      **Hearing Of Grievances**

20      Despite the CBA's clear language giving Safeway the right to terminate the permanent

21  arbitrator, the Union objected to the termination of Arbitrator Bridgewater. (Exhibit A at ¶ 18,

22  Exhibits 3 and 4.) The Union insists that she serve as the permanent arbitrator until the parties'

23  CBA expires on September 27, 2008. (*Id.*) The Union further refuses to select a new permanent

24  arbitrator under the selection method set forth in the parties' CBA. (*Id.*) Pursuant to that

25  insistence and refusal to abide by the parties' CBA, the Union told Arbitrator Bridgewater to

26  adjudicate grievances under the CBA through September 25, 2008 (the last date she was

27  scheduled to hear grievances), even in Safeway's absence. (*Id.*)

28

- 13 -

SF1 28325528.1 / 35977-000110

1   Although Safeway had not submitted the issue of her termination to her, Arbitrator

2   Bridgewater issued a written decision regarding that very issue on May 7, 2008 and without

3   hearing. (Exhibit A at ¶ 19; Petition at ¶ 8, Exhibit C.)  In deciding her own jurisdiction to hear

4   cases between the parties, Arbitrator Bridgewater predictably ruled that she remained the parties'

5   permanent arbitrator. (*Id.*)  She further ruled that she would hear and decide cases in Safeway's

6   absence in the event Safeway chose not to appear before her. (*Id.*)

7   Prior to Arbitrator Bridgewater's termination, the parties had scheduled May 22, 2008 as

8   a date for the hearing of grievances under the CBA. (Exhibit A at ¶ 20.)  The Union informed

9   Safeway that it intended to bring six grievances to Arbitrator Bridgewater for decision on that

10  date, including the merits of the CPS-West settlement agreement grievance. (Exhibit A at ¶ 20,

11  Exhibit 5.)  Given Arbitrator Bridgewater's decision and the Union's insistence that she decide

12  cases even in Safeway's absence, Safeway was forced to appear at that hearing and reiterate its

13  objections to Arbitrator Bridgewater's jurisdiction and authority to hear grievances between the

14  parties. (Exhibit A at ¶ 20.)  After the parties argued about that issue until approximately 3:00

15  p.m. on that day, Arbitrator Bridgewater required Safeway to proceed with hearing after stating

16  its objections on the record. (*Id.*)  The Union continues to insist that Arbitrator Bridgewater hear

17  additional grievances in this same manner and over Safeway's continued objections each month

18  through September. (*Id.* at ¶ 21.)

19  **F.    The Related Eastern District Of California Proceedings**

20  Safeway has reiterated to the Union that it has terminated Arbitrator Bridgewater and

21  continues to object to the Union's refusal to select a new permanent arbitrator in violation of the

22  parties' CBA. (Exhibit A at ¶ 22, Exhibits 6-8.)  Safeway further has told the Union that it

23  maintains its position that Arbitrator Bridgewater has no authority to decide her own termination

24  (*i.e.*, whether she has jurisdiction to hear future disputes between the parties). (Exhibit A at ¶ 22,

25  Exhibit 8.)  Because the Union still refused to select a new permanent arbitrator, Safeway

26  informed the Union on May 16, 2008 that on or after May 19, 2008 it intended to seek an order

27  from federal district court directing the Union to abide by the terms of the parties' CBA with

28  - 14 -

respect to appointing a new permanent arbitrator, among other prayers for relief. (Declaration of Christian J. Rowley, attached hereto at Exhibit C, at ¶ 2, Exhibit 1.)

Safeway notified the Union of its intention to file that action in order to comply with Section 4 of the Federal Arbitration Act ("FAA"), which requires five days notice to the adverse party before filing suit for an order directing arbitration to proceed in the manner provided for in the parties' arbitration agreement. (Exhibit C at ¶ 3, Exhibit 1.) After learning Safeway's intentions, the Union filed the petition in this court to confirm Arbitrator Bridgewater's awards on May 20 – just one day before Safeway had satisfied its FAA notice requirements and was therefore able to file suit in the Eastern District of California ("Eastern District"). (Exhibit C at ¶ 4.)

After satisfying its notice requirement, Safeway filed a complaint in the Eastern District on May 21, 2008, seeking speedy declaratory relief and an order compelling arbitration pursuant to the terms of the parties' CBA, and damages. (Exhibit C at ¶ 5, Exhibit 2.) More specifically, Safeway requested the following relief pertinent to the action in this court from the Eastern District:

- A declaratory judgment finding and declaration that Arbitrator Bridgewater has no authority to and may not hear or adjudicate the grievances between Safeway and the Union on May 22, 2008 or on any other future date (unless she were to be reappointed by the parties through the CBA's procedures).

- A declaratory judgment finding and declaration that any awards Arbitrator Bridgewater issues with respect to Safeway and the Union from the date of her termination on April 14, 2008 are null, void, and unenforceable.

- A declaratory judgment finding and declaration that the Union violated the CBA in refusing to adhere to the procedures for the selection of a new permanent arbitrator set forth in Article XXVI of the parties' CBA.

- A declaratory judgment finding and declaration that the Union is required to adhere to the procedures for the selection of a new permanent arbitrator as set forth in Article XXVI of the parties' CBA.

- That the court compel the Union to conduct future arbitration proceedings, including the proceedings scheduled for May 22, 2008 and through the expiration of the parties' CBA, before a new permanent arbitrator selected pursuant to and consistent with the provisions of Article XXVI of the parties' CBA.

(Exhibit C at ¶ 5, Exhibit 2 at ¶¶ 33-37.)

- 15 -

1    Safeway has moved the Eastern District to hold a "speedy hearing" under Federal Rule of

2    Civil Procedure ("FRCP") Rule 57 and the FAA on the claims set forth in Safeway's complaint.

3    (Exhibit C at ¶ 6, Exhibit 3.)

4    **III.    LEGAL ARGUMENT**

5         **A.    The Court Should Deny The Petition Because The Parties
              Have Not Consented To The Entry Of Judgment Upon**

6              **Arbitration Awards.**

7         The court's jurisdiction over this action is based on Section 301 of the Labor

8    Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Federal Arbitration Act

9    ("FAA"), 9 U.S.C. § 1 *et seq.* Section 9 of the FAA provides federal district courts with

10   authority to confirm arbitration awards, but only if "the parties in their agreement have agreed

11   that a judgment of the court shall be entered upon the award made pursuant to the arbitration." 9

12   U.S.C. § 9. Courts will not confirm arbitration awards absent such specific agreement by the

13   parties. *See, e.g., Commonwealth Enterps. v. Liberty Mutual Ins. Co.*, No. CA 91-55892, 1992

14   U.S. App. LEXIS 6121, at *5-*8 (9th Cir. Mar. 27, 1992), *aff'd*, 958 F.2d 376 (9th Cir. 1992)

15   ("[C]onfirmation of an arbitration award is appropriate only where the parties in their agreement

16   have agreed that a judgment of the court shall be entered upon the award.") (quotations omitted);

17   *Varley v. Tarrytown Assocs., Inc.*, 477 F.2d 208, 210 (2d Cir. 1973) (same); *American Pres.*

18   *Lines, Ltd. v. Trans Atlantic Assocs., Inc.*, No. C-04-1515 EDL, 2004 U.S. Dist. LEXIS 16852, at

19   *4 (N.D. Cal. Aug. 17, 2004) ("The district court must grant a timely motion to confirm an

20   arbitration award: (1) *if the parties have agreed that a court judgment shall be entered on the*

21   *award; and* (2) unless the arbitration award is vacated, modified or corrected.") (emphasis

22   added).

23        The parties in this case have not agreed that court judgments shall be entered upon

24   arbitration awards. Indeed, the CBA's grievance-arbitration provision is completely silent on the

25   issue. (Exhibit A at ¶ 12, Exhibit 1 at 21-24.) Accordingly, the court has no authority to confirm

26   the arbitration awards at issue here. *See, e.g., Commonwealth Enterps.*, 1992 U.S. App. LEXIS

27   6121, at *6 (affirming the district court's denial of petition to confirm arbitration award where

28

- 16 -

SF1 28325528.1 / 35977-000110

1    "nothing in the [arbitration agreement] indicated that a court judgment would be entered upon

2    the award"). *Compare American Pres. Lines*, 2004 U.S. Dist. LEXIS 16852, at \*4-\*5

3    (confirming award because the parties' arbitration agreement provided that awards "may be

4    enforced by any court . . . as may properly assert jurisdiction"). Thus, for this reason alone, the

5    court should deny the Union's petition.

6          **B.     The Court Should Further Deny The Petition Because The**
                     **Arbitration Awards Are Not Final.**
7
8          As a general rule, a court cannot review an arbitration decision until the decision is final.

     *See, e.g., General Drivers, Warehousemen & Helpers v. Riss & Co.*, 372 U.S. 517, 519 (1963).
9
     A decision is not final until all of the issues associated with the award are final. *See, e.g., Public*
10
     *Serv. Elec. & Gas Co. v. Sys. Council U-2*, 703 F.2d 68, 69-70 (3d Cir. 1983) (parties to a labor
11
     arbitration had agreed to bifurcate the determination of liability and remedy but court held that
12
     the determination of liability alone was not a reviewable final and binding award); 22A FED.
13
     PROC. § 52:2002 (Lawyers ed. 2003) ("Generally, a District Court may review an arbitrator's
14
     rulings pursuant to 29 U.S.C.A. § 185 only after there is a final award containing findings as to
15
     liability and as to the remedy."). As the Ninth Circuit has noted approvingly, the "Second
16
     Circuit has held that an arbitration award under the Federal Arbitration Act, . . . is a reviewable
17
     final order only if intended by the arbitrator to be a complete determination of the claims,
18
     including the issue of damages." *Millmen's Local 550, United Bhd. of Carpenters & Joiners v.*
19
     *Wells Exterior Trim*, 828 F.2d 1373, 1376 (9th Cir. 1987) (citing *Michaels v. Mariforum*
20
     *Shipping*, 624 F.2d 411, 413-14 (2d Cir. 1980).
21
           Neither arbitration award at issue in this case is final. With respect to Arbitrator
22
     Bridgewater's May 14, 2008 decision, Arbitrator Bridgewater decided merely the issue of
23
     substantive arbitrability, *i.e.*, whether the issue of Safeway's compliance with a February 1, 2008
24
     settlement agreement was arbitrable under the parties' CBA. Arbitrator Bridgewater has not
25
     decided the merits of the case, even though she intends to do so over Safeway's continuing
26
     objection. With respect to Arbitrator Bridgewater's May 7, 2008 decision, Arbitrator
27
     Bridgewater decided only the issue of whether she has jurisdiction to hear grievances between
28
                                              - 17 -

1   the parties given her termination on April 14, 2008. She has not decided the merits of any

2   grievances heard subsequent to her termination, even though, again, she plans to do so over

3   Safeway's continuing objection. Because Arbitrator Bridgewater has not yet heard the merits of

4   any of the grievances related to her May 14 or May 7 awards, those awards are not final because

5   they are not a complete determination of the Union's claims and, therefore, are not subject to

6   review by the court. *See, e.g., Millmen's*, 28 F.2d at 1376-77. Consequently, the court should

7   deny the Union's petition for this additional reason.

8       **C.    Alternatively, The Court Should Transfer This Action To The**
        **Eastern District Of California.**

9

10      A court has statutory authority to transfer a case to another district. Section 1404(a)

11  specifically provides that: "[f]or the convenience of the parties and witnesses, in the interests of

12  justice, a district court may transfer any civil action to any other district or division where it

13  might have been brought." 28 U.S.C. § 1404(a). To successfully move for transfer under

14  Section 1404(a), Safeway must establish that the action could have been brought in the district to

15  which transfer is sought. *See, e.g., Commodity Futures Trading Comm'n v. Savage*, 611 F.2d

16  270, 279 (9th Cir. 1979). Safeway also bears the burden of "establishing that the action should

17  be transferred." *Los Angeles Memorial Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 499

18  (C.D. Cal. 1981), *aff'd*, 726 F.2d 1381 (9th Cir. 1984). As explained in detail below, Safeway

19  meets its burden in both respects. Indeed, transfer is particularly appropriate in this case because

20  the related action that Safeway filed in the Eastern District of California ("Eastern District")

21  involves the same parties and similar issues (*e.g.,* whether Arbitrator Bridgewater has authority

22  to hear and decide grievances between the parties). *See, e.g., Cortez Byrd Chips, Inc. v. Bill*

23  *Harbert Const. Co.*, 529 U.S. 193, 196-97 (2000).

24      **1.    The Union's petition could have been brought in the**
        **Eastern District.**

25      Section 9 of the FAA provides that a petition to confirm an arbitration award "may be

26  made to the United States court in and for the district within which such award was made." 9

27  U.S.C. § 9. However, the venue provision in Section 9 is permissive and subject to the general

28
                                        - 18 -

1    venue statute. *See, e.g., Cortez Byrd*, 529 U.S. at 204; *Textile Unlimited, Inc. v. A. Bmhand Co.,*

2    *Inc.*, 240 F.3d 781, 784 (9th Cir. 2001). Section 1391(b), which is the general venue statute that

3    applies in this case because the petition is based on federal question jurisdiction under Section

4    301 of the LMRA, provides in pertinent part that venue is appropriate in any district where any

5    defendant resides or where a substantial part of the events giving rise to the claim occurred. 28

6    U.S.C. § 1391(b). Accordingly, the Union could have brought the petition in the Eastern District

7    because Safeway resides there, the arbitrations occurred there, and the underlying facts

8    pertaining to the grievances occurred there (not to mention that the Union resides there as well).

9    Thus, Safeway has met the first part of the transfer test by establishing "that the action could

10    originally have been brought in the [Eastern District of California]." *Commodity Futures*, 611

11    F.2d at 279.

**2.    The Union's petition should be transferred to the
Eastern District.**

12

13

14    In ruling on a motion to transfer, the court must consider each of the factors enumerated

15    in Section 1404(a), *i.e.*, convenience of the parties, convenience of the witnesses, and the

16    interests of justice. 28 U.S.C. § 1404(a). Other relevant factors include: the plaintiff's choice of

17    forum, the local interest in the issue, the relative ease of access to evidence, the availability of

18    compulsory process for unwilling witnesses and the cost involved in securing willing witnesses,

19    and the practical issues that make a case easier or more difficult to try in a given forum. *See*

20    *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). As explained

21    below, most – if not all – of these factors weigh in favor of transferring the case to the Eastern

22    District.

**a.    The Eastern District is a more convenient forum
for the parties.**

23

24    Both parties reside in the Eastern District. The Union's principal place of business is in

25    Stockton, California. (Exhibit A at ¶ 6.) Similarly, Safeway's Distribution Center is located in

26    Tracy, California, and Safeway employees that the Union represents work in that facility. (*Id.* at

27    ¶¶ 2,4-5.) Given that both parties reside in the Eastern District, that the arbitrations occurred

28

- 19 -

SF1 28325528.1 / 35977-000110

there (Exhibit A at ¶ 15, Exhibit B at ¶ 16), that many of the witnesses involved in the underlying grievances and the disputes relevant to this lawsuit work there, it will be more convenient for the parties to try a case in that court.

### b.    The Eastern District is a convenient forum for the witnesses.

Safeway intends to call at least two witnesses at any trial in this matter, Doug Ruygrok and Carl Ramnitz.  Mr. Ruygrok and Mr. Ramnitz are both responsible for labor relations at the Distribution Center.  (Exhibit A at ¶ 2 and Exhibit B at ¶ 2.)  At trial, they would testify to the topics included in their attached declarations.  (Exhibits A and B.)  Through their employment at Safeway, both Mr. Ruygrok and Mr. Ramnitz work at or visit the Distribution Center in the Eastern District.  (Exhibit A at ¶ 2 and Exhibit B at ¶ 2.)  As such, the Eastern District is a convenient forum for them.

Safeway does not know whom the Union would call as witnesses at any trial in this matter.  However, Safeway assumes that such witnesses would include Union representatives and business agents.  Because the Union's principal place of business is in the Eastern District and because the Union's representatives and business agents represent employees at the Distribution Center in that district (Exhibit A at ¶ 2, 5-6), the Eastern District would not be an inconvenient forum for the Union's witnesses.

### c.    The interests of justice favor transfer to the Eastern District.

Transfer is appropriate for the additional reason that this court is in the preliminary stage of proceedings. *See, e.g., Meyers v. Ciano*, No. C 01-3955 TEH, 2002 U.S. Dist. LEXIS 2556, at *10 (N.D. Cal. Feb. 12, 2002) (finding it was within the interests of justice to transfer the action because litigation had not progressed far).  Although the Eastern District likewise is in the preliminary stage of proceedings on Safeway's complaint, the interests of justice still weigh in favor of transferring the action because of judicial economy.  Safeway could not have brought its declaratory judgment action in this court because venue is not proper here.  The Union, the only defendant in that case, is not a resident of this judicial district.  (Exhibit A at ¶ 6.)  Moreover, a

- 20 -

1    substantial part of the events giving rise to Safeway's claims in its complaint did not occur in this

2    judicial district.  Rather, the arbitrations and CBA at issue all occurred or were entered into in the

3    Eastern District.  (Exhibit A at ¶ 15 and Exhibit B at ¶ 16.)  Additionally, the underlying facts

4    related to the grievances at issue occurred in that district.  (Exhibit A at ¶ 2, 5 and Exhibit B at ¶

5    2, 4.)  Consequently, if this court refuses to deny the petition or to transfer the action, then two

6    closely related proceedings will be occurring in two different judicial districts, wasting both the

7    parties' and the judiciary's resources.  The interests of justice plainly favor the transfer of this

8    action.

9               d.      **The Eastern District's interest in the action**
                        **outweighs the Union's choice of forum.**
10

11   The Eastern District has local interest in this action for a number of reasons.  First, the

12   Distribution Center at issue is located in that district.  (Exhibit A at ¶ 2.)  Second, the Union's

     principal place of business is located in that district.  (*Id.* at ¶ 6.)  Third, the arbitrations at issue
13
     occurred or will occur in that district.  (Exhibit A at ¶ 15 and Exhibit B at ¶ 16.)  Fourth, the
14
     employees subject to the parties' CBA work in that district, and many of them reside in that
15
     district.  (Exhibit A at ¶ 4.)  In comparison, this district has no particular interest in the subject
16
     matter of this dispute other than the fact that Arbitrator Bridgewater resides in this district, and
17
     she is not a party to this dispute.  Given the Eastern District's local interest in this case, this court
18
     should transfer the action to that district.
19
            Although the Union's choice of forum is one factor that the court should consider when
20
     deciding to transfer an action, the court should give the Union's choice of forum little weight in
21
     this case.  Indeed, this court has held that where, as here, the local interest lies so heavily in
22
     another district the plaintiff's choice of forum should be given minimal weight in the transfer
23
     analysis.  *See, e.g., Meyers*, 2002 U.S. Dist. LEXIS 2556, at *8-*9 (holding that a plaintiff's
24
     choice of forum should only be afforded minimal consideration where "she is not a resident of
25
     the district where she instituted suit, the operative facts have not occurred within the forum, and
26
     the forum has no particular interest in the parties or the subject matter").  Moreover, the Union
27
     filed this suit only after Safeway gave notice that it would file a complaint in the Eastern District.
28
                                          - 21 -

1   Such anticipatory suits "are disfavored because they are examples of forum shopping."

2   *Mediastream, Inc. v. Priddis Music, Inc.*, No. C 07-2127 PJH, 2007 U.S. Dist. LEXIS 73707, at

3   *7 (N.D. Cal. Sept. 24, 2007). Thus, the Union's choice of forum should be given minimal

4   weight for this additional reason. *See, e.g., Alltrade Inc. v. Uniweld Prods, Inc.*, 946 F.2d 622,

5   628 (9th Cir. 1991) (finding that courts should disregard the plaintiff's forum choice if the suit is

6   a result of forum shopping).

    **e.    The relative ease of access to evidence favors
    transferring this action to the Eastern District.**

7
8
9       As set forth above, the Distribution Center and the Union's offices are located in the

10  Eastern District. Because the disputes center around contract interpretation issues, any evidence

11  would be located in that district. The Distribution Center houses the CBA, grievance paperwork,

12  and bargaining history. (Exhibit A at ¶ 8.) Similarly, Safeway assumes that the Union's offices

13  house the CBA, relevant grievance paperwork, and relevant bargaining history. None of the

14  evidence is located in this district. Thus, the relative ease of access to evidence weighs in favor

15  of transferring this action to the Eastern District.

    **f.    The availability of compulsory process for
    unwilling witnesses and the costs involved in
    securing willing witnesses favor transferring this
    action to the Eastern District.**

16
17
18      As of this time, Safeway is unaware of any unwilling witnesses. However, if the need to

19  subpoena any unwilling witness arose, it is most likely that the subpoena would need to issue

20  from the Eastern District because the Distribution Center and the Union's offices are located in

21  that district. Moreover, for the reasons set forth in Section "b" above, Safeway's willing

22  witnesses and the Union's likely witnesses work and/or reside in the Eastern District, and their

23  costs of appearing there would be minimal. Accordingly, this factor favors transferring this

24  action to the Eastern District.

    **g.    Practical considerations make it easier to try this
    case in the Eastern District.**

25
26
27      This case is related to grievances, ongoing arbitrations, and future arbitrations that are

28  occurring in the Eastern District. (Exhibit A at ¶ 2, 4-5, 15 and Exhibit B at ¶ 16.) Moreover,

- 22 -

1   this case is substantially related to the proceedings pursuant to Safeway's complaint filed in that

2   district. (Exhibit C at ¶ 5.) Because witnesses and counsel are handling those grievances and

3   ongoing arbitrations, future arbitrations, and court proceedings are occurring in the Eastern

4   District (Exhibit A at ¶ 15, Exhibit B at ¶ 16, and Exhibit C at ¶ 5), it makes logistical sense to

5   have this case proceed in that district as well. Thus, this factor weighs in favor of venue transfer.

6       Based on all of the foregoing, it is apparent that the bulk of the venue transfer factors

7   favor transferring this action to the Eastern District. Accordingly, the court should transfer the

8   action to that court. *See, e.g., Cortez*, 529 U.S. at 203-04 (holding that court should have

9   carefully considered petitioner's motion to transfer where petitioner filed a petition to vacate an

10  arbitration award in one district and respondent filed a petition to confirm the award in another

11  district and venue was appropriate in both courts).

12      **D.    In The Event That The Court Does Not Dismiss The Petition
            Or Transfer The Action, The Court Should Stay This Action**
13          **Until The Eastern District Rules On The Claims In Safeway's**
            **Complaint.**
14

15      To reach the ultimate issue presented by the Union's petition (*i.e.*, whether Arbitrator

16  Bridgewater's May 7 and May 14 awards should be confirmed), this court must determine

17  whether Arbitrator Bridgewater had the requisite arbitral authority and power to issue those

18  awards. As explained above, the Eastern District is deciding the issue of Arbitrator

19  Bridgewater's authority and related issues. Thus, if the court chooses not to transfer the action,

20  then the court should stay proceedings until the Eastern District has made its ruling with respect

21  to Safeway's declaratory judgment action and motion to compel arbitration in that court.

22      Staying the proceedings pending the Eastern District's ruling makes practical sense.

23  Doing so will avoid unnecessary, duplicative, and potentially conflicting determinations on the

24  same or similar issues and will achieve judicial economy because this court will not waste its

25  limited time and resources deciding those similar issues. Furthermore, staying the proceedings is

26  even more warranted in this case, where Safeway has moved for a FRCP Rule 57 "speedy

27  hearing" on the claims in its complaint and, therefore, a resolution in that court likely will be

28  reached summarily. Additionally, neither of the parties to this action will be prejudiced by a stay

- 23 -

1   because the Eastern District is working to resolve the issue of Arbitrator Bridgewater's authority

2   to hear grievances between the parties, a determination that will likely expedite and will certainly

3   help to resolve the underlying issue in this litigation of whether this court should confirm her

4   awards.

5       **E.    In The Event That The Court Decides To Proceed With This
             Action, The Court Should Vacate The Awards.**

6

7       The Court should vacate Arbitrator Bridgewater's May 7 and May 14 awards because she

8   exceeded her arbitral authority when she issued both awards.[2]  9 U.S.C. § 9.  Under the FAA,

9   courts must vacate arbitration awards "where the arbitrators have exceeded their powers or so

10  imperfectly executed them that a mutual, final, and definite award upon the subject matter

11  submitted was not made."  9 U.S.C. § 10(a)(4).  An arbitrator derives her power by contract, an

12  instrument that also limits the arbitrator's power.  As the court in *Lindland v. U.S. Wrestling*

13  *Ass'n, Inc.* noted:

14          But arbitrators assuredly are bound by the contracts and other rules that give them
            power to act.  An arbitrator who throws aside those rules and implements his own
15          brand of industrial justice oversteps his powers, and the resulting award must be
            set aside.

16  227 F.3d 1000, 1004 (7th Cir. 2000) (quotations omitted).  *Accord Coast Trading Co., Inc. v.*

17  *Pacific Molasses Co.*, 681 F.2d 1195, 1197-98 (9th Cir. 1982).  Thus, when an arbitrator exceeds

18  her powers by, for example, taking action not authorized by the parties' CBA, her award must be

19  vacated.  *See, e.g., Coast Trading*, 681 F.2d at 1198-99 (arbitration panel exceeded authority by

20  ordering remedy not authorized by agreement); *Roadway Package Sys., Inc. v. Kayser*, 257 F.3d

21  287, 300 (3d Cir. 2001) ("[T]he scope of an arbitrator's authority is defined and confined by the

22  agreement to arbitrate.") (overruled on other grounds); *Exxon Mobile Corp. v. Allied-Industrial*

23  _____

24  [2] Contrary to the Union's assertion in its petition (see Petition ¶ 10), any petition by Safeway to
    vacate the awards is not barred by the statute of limitations because, as set forth above, those
25  awards are not final.  Regardless, under Section 12, of the FAA, Safeway has "three months after
    the award is filed or delivered" to move to vacate or modify the awards.  9 U.S.C. § 12.  In fact,
26  even the cases to which the Union cites, support Safeway's position that it may petition to vacate
    awards any time within the applicable statute of limitations period.  *See, e.g., Fortune v. Daniel*,
27  724 F.2d 1355, 1356 (9th Cir. 1983); *Sheet Metal Workers' Int'l Ass'n v. Standard Sheet Metal,*
    *Inc.*, 699 F.2d 481, 483 (9th Cir. 1983).

28                                      - 24 -

SF1 28325528.1 / 35977-000110

1  *Chemical*, 383 F.Supp.2d 877, 880 (M.D. La. 2005) ("[A] court is free to scrutinize an award to

2  ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective

3  bargaining agreement.  The arbitrator can bind the parties only on issues that they have agreed to

4  submit to him.  If the court finds that the arbitrator exceeded his contractual authority, it may

5  vacate the award.") (quotations omitted).

6           **1.    Arbitrator Bridgewater exceeded her arbitral authority
                    under the CBA when she issued her May 7 award**
7                   **because she was terminated; Safeway had not agreed to
                    submit the issue of her termination to her, and she did**
8                   **not have the power to decide her own jurisdiction to
                    hear a grievance.**
9
           Safeway terminated Arbitrator Bridgewater's appointment on April 14, 2008.  Safeway
10
   had a clear right to do this under Article XXVI, Step III of the parties' CBA, which provides that
11
   "[o]nce each twelve (12) month period, either party may remove the arbitrator and request that a
12
   new arbitrator is chosen."  The contract language is clear; either Safeway or the Union had a
13
   right to unilaterally terminate Arbitrator Bridgewater (assuming that neither party had exercised
14
   its right to terminate a permanent arbitrator in the prior twelve month period, which was the case
15
   here).  Neither party needs to have the other parties' permission to effectuate the termination.
16
   Consequently, as of April 14, Arbitrator Bridgewater was terminated, and the Union was
17
   required to select a new permanent arbitrator under the methods set forth in Article XXVI of the
18
   parties' CBA.  Arbitrator Bridgewater no longer had any authority to decide any disputes
19
   between the parties.  *See, e.g., Bethlehem Mines Corp. v. United Mine Workers*, 344 F.Supp.
20
   1161, 1165 (W.D. Pa. 1972), *aff'd*, 494 F.2d 776 (3d Cir. 1974) ("It is fundamental that one
21
   cannot be compelled to submit a matter to arbitration before a particular individual where there is
22
   no agreement as to method by which that individual is chosen.").
23
           Despite the clear contract language providing authority for Safeway to unilaterally
24
   terminate Arbitrator Bridgewater, the Union wrote to Arbitrator Bridgewater to object to her
25
   termination.  Safeway likewise wrote to Arbitrator Bridgewater to inform her of her termination
26
   and to confirm that she was not going to hear any additional grievances between the parties.
27
   However, Safeway never submitted or agreed to submit the issue of her termination to her.  She
28
                                                - 25 -

SF1 28325528.1 / 35977-000110

1    was, after all, terminated.  Moreover, it did not seem appropriate to Safeway for Arbitrator

2    Bridgewater to be deciding her own jurisdiction.  Nonetheless, Arbitrator Bridgewater

3    unexpectedly decided the issue without hearing and issued May 7 award, in which she

4    predictably ruled that she was not terminated and that she had the authority to hear and decide

5    grievances between the parties, even in Safeway's absence.

6          Vacation of the May 7 award is necessary because she did not have any authority to

7    consider the issue or to decide the issue.  The parties had not mutually agreed on Arbitrator

8    Bridgewater as the appropriate arbitrator to hear the dispute; rather, she was terminated under the

9    parties' CBA.  *See, e.g., Bethlehem Mines* 344 F.Supp. at 1165.  Moreover, Safeway did not

10    submit the issue of her termination to her.  *See, e.g., United Steelworkers v. Warrior & Gulf*

11    *Navigation Co.*, 363 U.S. 574, 582 (1960) (noting that a party cannot be required to submit to

12    arbitration any dispute that the party has not agreed to submit); *Allied-Industrial Chemical*, 383

13    F.Supp.2d at 880.  Regardless, even if she was not terminated and Safeway had submitted the

14    issue to her, it is for a court – and not the arbitrator – to decide whether an arbitrator has been

15    appropriately appointed.  *See, e.g., Bethlehem Mines*, 344 F.Supp. at 1166 (holding that courts,

16    not arbitrators, have the authority to order the parties to appoint an arbitrator in accordance with

17    their mutually agreed upon selection method).  For all of these reasons, Arbitrator Bridgewater

18    exceeded her powers when she issued the May 7 award deciding that she had not been

19    terminated as the permanent arbitrator.  The court should vacate that award accordingly.

20          **2.    Arbitrator Bridgewater exceeded her arbitral authority**
              **under the CBA when she issued the May 14 award**
21          **because the dispute was not properly before her and**
              **was not substantively arbitrable.**
22

23          At the outset and as explained above, it is a well-settled principle that "arbitration is a

24    matter of contract and a party cannot be required to submit to arbitration any dispute which he

25    has not agreed so to submit."  *United Steelworkers*, 363 U.S. at 582.  It is equally well settled

26    that that question of substantively arbitrability is one for the courts.  *See, e.g., John Wiley &*

27    *Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964).  Here, Safeway did not submit to Arbitrator

28    Bridgewater the issue of whether a dispute pertaining solely to the CPS-West settlement

- 26 -

SF1 28325528.1 / 35977-000110

1  agreement was subject to the parties' grievance-arbitration provision in the CBA.  Rather,

2  Safeway told Arbitrator Bridgewater that she did not have the authority to decide that issue and

3  stated its objection on the record.  Accordingly, when Arbitrator Bridgewater proceeded with

4  hearing on the issue and later issued the May 14 award, she exceeded the scope of her arbitral

5  authority given that Safeway had not agreed to submit the question of the substantive

6  arbitrability of the CPS-West settlement agreement grievance to her.  The court should vacate the

7  May 14 award for that reason alone.  *See, e.g., Allied-Industrial Chemical*, 383 F.Supp.2d at 880.

8         In any event, the court has the authority to rule on the substantive arbitrability issue *de*

9  *novo* because Safeway preserved the question of substantively arbitrability for the court at the

10 April 14 hearing.  *See, e.g., John Wiley*, 376 U.S. at 557.  Here, the CPS-West settlement

11 agreement grievance was not substantively arbitrable.  The parties' CBA defines a grievance as

12 "any controversy between the Company, the Union or an employee ***arising out of an alleged***

13 ***violation of a specific provision of this Agreement***."  Article XXVI (emphasis added).  The

14 grievance alleges that certain of the Union's bargaining unit members were "disadvantaged"

15 under the terms of the CPS-West settlement agreement.  Because the grievance pertains only to a

16 controversy arising out of an alleged violation of the CPS-West settlement agreement and not an

17 alleged violation of a specific provision of the parties' CBA, the grievance was not substantively

18 arbitrable under the clear terms of the parties' CBA.  Thus, the court should vacate the May 14

19 award and rule that the grievance was substantively inarbitrable.

20        **F.    The Court Should Award Safeway Attorneys' Fees Because
              The Union's Anticipatory Petition Was Brought In Bad Faith.**

21

22        The court may assess attorneys' fees "when the losing party has 'acted in bad faith,

23 vexatiously, wantonly, or for oppressive reasons.'"  *International Union of Petroleum and Indus.

24 Workers v. Western Indus. Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir. 1983) (quotations

25 omitted).  Here, the Union filed this petition only after learning that Safeway was going to seek

26 declaratory relief in the Eastern District.  As explained in Argument Section C above, such

27 anticipatory lawsuits are indicative of forum shopping and bad faith.  *See, e.g., Mediastream*,

28 2007 U.S. Dist. LEXIS 73707, at *7.  The Union's bad faith is further evidenced by the fact that

- 27 -

SF1 28325528.1 / 35977-000110

1  it filed the petition even though the parties' CBA does not provide for court confirmation of

2  arbitration awards and even though the awards are not final.  Given the Union's bad faith in

3  filing this petition, the court should grant Safeway's request for attorneys' fees and costs

4  incurred in responding to the petition and litigating this action.

5  **IV.    CONCLUSION**

6         For the foregoing reasons, Safeway respectfully requests the court deny the Union's

7  petition.  Alternatively, Safeway requests that the court transfer the entire action to the Eastern

8  District of California where closely related proceedings are ongoing.  In the event that the court

9  decides not to transfer the action, Safeway requests that the court stay proceedings in this action

10 until the Eastern District rules on the claims in Safeway's complaint in that district.  In the event

11 that the court decides to proceed with this action, Safeway requests that the court vacate the

12 arbitration awards.  Finally, Safeway requests attorneys' fees and costs incurred in litigating the

13 Union's petition.

14

15 DATED: June 9, 2008                        SEYFARTH SHAW LLP

16

17                                            By
                                                  Christian J. Rowley
18                                            Attorneys for Respondent
                                              SAFEWAY INC.

19

20

21

22

23

24

25

26

27

28

- 28 -

SF1 28325528.1 / 35977-000110

# EXHIBIT A

1   SEYFARTH SHAW LLP
    Christian J. Rowley (SBN 187293)
2    (crowley@seyfarth.com)
    560 Mission Street, Suite 3100
3   San Francisco, CA 94105
    Telephone: (310) 277-7200
4   Facsimile: (310) 201-5219

5   Attorneys for Respondent
    SAFEWAY, INC.
6

7

8

9                      UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11  INTERNATIONAL BROTHERHOOD OF          )   Case No. C08-02536-JL-ADR
    TEAMSTERS. LOCAL 439,                 )
12                                        )   **DECLARATION OF CARL RAMNITZ**
                   Petitioner,            )
13                                        )
            v.                            )
14                                        )
    Safeway, Inc.,                        )
15                                        )
                   Respondent.            )
16  _____     )

17

18      I, Carl Ramnitz, hereby state under the pains and penalty of perjury that:

19      1.   I am more than 18 years of age and am competent to make this declaration.  I

20  make this declaration based on my personal knowledge, information, and belief.

21      2.   I am currently employed as the Director of Labor Relations for Safeway. Inc.'s

22  Northern California Division.  In that position. I have knowledge of, and am one of the

23  people responsible for. labor relations at Safeway Inc.'s Distribution Center located in Tracy.

24  California at 16900 West Schulte Road, 95377 ("Distribution Center").  In that capacity, I

25  frequently work at the Distribution Center.

26

27

28

                                   - 1 -
                DECLARATION OF CARL RAMNITZ. CASE NO. C08-02536-JL-ADR
    SF1 28325540.1 / 35977-000110

**A.    Safeway, The Union, and The Distribution Center**

3.  Safeway is a Delaware corporation qualified to do business in the State of California.

4.  Safeway employs approximately 1,750 individuals at the Distribution Center. Many of Safeway's employees at the Distribution Center reside in and around Tracy, California.

5.  The Union is the collective bargaining representative for approximately 1,624 warehouse employees and drivers employed by Safeway at the Distribution Center and who are all covered by the Agreement Between Safeway, Inc. and Local 439 International Brotherhood of Teamsters Chauffeurs, Warehousemen, and Helpers of America, August 10, 2003 through September 27, 2008 ("CBA").

6.  The Union maintains its principal place of business at 1531 East Fremont Street in Stockton, California  95205.

**B.    The Parties' CBA, Collective Bargaining Relationship, And Grievance Arbitration Mechanism**

7.  Safeway and the Union are parties to the CBA, which they entered into at the Distribution Center in Tracy, California.  A true and correct copy of the CBA is attached hereto at Exhibit 1.

8.  The Distribution Center houses the parties' CBA, grievance paperwork, and bargaining history.

9.  Article XXVI of the CBA supplies a grievance-arbitration mechanism for resolving disputes between the parties.  *See* Exhibit 1 at 21-24.

1    10. Pertinent to this dispute, Article XXVI provides that an arbitrable grievance is a

2    dispute arising out of an alleged violation of the CBA and that the arbitrator's authority over

3    such a grievance is limited to the interpretation of the explicit provisions of the CBA. *See*

4    Exhibit 1 at 21, 23.

5

6    11. Article XXVI further provides for the selection and termination of the permanent

7    arbitrator. *See* Exhibit 1 at 22-23.

8    12. Article XXVI does not provide that a court will enter judgment upon arbitration

9    awards. *See* Exhibit 1 at 21-24.

10

11   **C.    Selection and Termination of Arbitrator Barbara Bridgewater**

12   13. On or about December 10, 2007, the parties selected Arbitrator Barbara

13   Bridgewater as the permanent arbitrator to hear grievances between the parties from January

14   1, 2008 through September 27, 2008 (the expiration date of the CBA).

15

16   14. In accordance with the CBA, the parties scheduled one date per month, through

17   and including September 25, 2008, for Arbitrator Bridgewater to hear grievances.

18   15. Arbitrations before Arbitrator Bridgewater have all occurred in Tracy, California.

19   16. Pursuant to Safeway's right to terminate the permanent arbitrator once each

20   twelve-month period, I terminated Arbitrator Bridgewater on behalf of Safeway on or about

21   April 14, 2008 and notified the Union and Arbitrator Bridgewater accordingly. *See* Exhibit

22   2.

23

24   17. Safeway had not previously invoked its right to terminate the permanent arbitrator

25   within the twelve-month period following her appointment.

26

27

28

---
DECLARATION OF CARL RAMNITZ, CASE NO. C08-02536-JL-ADR

SFI 28325540.1 / 35977-000110

D.    **Dispute over Arbitrator Bridgewater's Termination**

18. Despite the CBA's clear language giving Safeway the right to terminate the permanent arbitrator, the Union objected to the termination of Arbitrator Bridgewater. *See* Exhibits 3 and 4. The Union insists that she serve as the permanent arbitrator until the parties' CBA expires on September 27, 2008. *Id.* The Union further refuses to select a new permanent arbitrator under the selection method set forth in the parties' CBA. *Id.* Pursuant to that insistence and refusal to abide by the parties' CBA, the Union told Arbitrator Bridgewater to adjudicate grievances under the CBA through September 25, 2008 (the last date she was scheduled to hear grievances), even in Safeway's absence. *Id.*

19. Although Safeway had not submitted the issue of her termination to her, Arbitrator Bridgewater issued a written decision regarding that very issue on May 7, 2008 and without hearing. In deciding her own jurisdiction to hear cases between the parties, Arbitrator Bridgewater predictably ruled that she remained the parties' permanent arbitrator. She further ruled that she would hear and decide cases in Safeway's absence in the event Safeway chose not to appear before her.

20. Prior to Arbitrator Bridgewater's termination, the parties had scheduled May 22, 2008 as a date for the hearing of grievances under the CBA. The Union informed Safeway that it intended to bring six grievances to Arbitrator Bridgewater for decision on that date, including the merits of the CPS-West settlement agreement grievance. *See* Exhibit 5. Given Arbitrator Bridgewater's decision and the Union's insistence that she decide cases even in Safeway's absence, Safeway was forced to appear at that hearing and reiterate its objections to Arbitrator Bridgewater's jurisdiction and authority to hear grievances between the parties. After the parties argued about that issue until approximately 3:00 p.m. on that day, Arbitrator

- 4 -

SFI 28325540.1 / 35977-000110

1   Bridgewater required Safeway to proceed with hearing after stating its objections on the

2   record.

3       21. The Union continues to insist that Arbitrator Bridgewater hear additional

4   grievances in this same manner and over Safeway's continued objections each month through

5   September.

6       22. Safeway has reiterated to the Union that it has terminated Arbitrator Bridgewater

7   and continues to object to the Union's refusal to select a new permanent arbitrator in

8

9   violation of the parties' CBA. *See* Exhibits 6-8. Safeway maintains its position that

10  Arbitrator Bridgewater has no authority to decide her own termination (*i.e.*, whether she has

11  jurisdiction to hear future disputes between the parties).

12

13      I declare that the foregoing is true and correct to the best of my knowledge, information

14  and belief under the pains and penalties of perjury this _9TH_ day of _June_

15  at _Pleasanton_, California.

16

17                          By: _____

18                                  Carl Ramnitz
                                Director Labor Relations,
19                          Safeway Northern California Division

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

A G R E E M E N T

BETWEEN

SAFEWAY INC.

- and -

LOCAL 439 INTERNATIONAL BROTHERHOOD OF TEAMSTERS
CHAUFFEURS, WAREHOUSEMEN, AND HELPERS OF AMERICA

AUGUST 10, 2003 to SEPTEMBER 27, 2008

* * * *

INDEX

| DESCRIPTION | ARTICLE NO. | PAGE NO. |
|---|---|---|
| BARGAINING UNIT | I | 3 |
| BULLETIN BOARD AND UNION VISITS | XXVII | 24 |
| DISCHARGE AND DISCIPLINARY PROCEDURES | XXV | 20 |
| DONATIONS | VIII | 7 |
| EMPLOYEES COVERED | II | 3 |
| EXAMINATIONS, IDENTIFICATION | IX | 7 |
| FUNERAL LEAVE | XV | 12 |
| GENERAL GRIEVANCE PROCEDURE | XXVI | 21 |
| HEALTH & WELFARE | XVII | 13 |
| HOLIDAYS | XII | 10 |
| HOURS OF WORK | XX | 16 |
| JOB AND SHIFT BIDS | XXI | 17 |
| JURY DUTY | XIV | 12 |
| LEAVE OF ABSENCE | XVI | 13 |
| LIGHT DUTY | XXIX | 26 |
| MAINTENANCE OF MORE FAVORABLE CONDITIONS AND/OR PROGRAMS | X | 7 |
| MANAGEMENT RIGHTS | VI | 6 |
| MISCELLANEOUS CONDITIONS | XXVIII | 25 |
| NO STRIKE/LOCKOUT | V | 5 |
| OVERTIME | XXII | 18 |
| PART-TIME EMPLOYEES | XXIV | 20 |
| PAYROLL DEDUCTIONS | IV | 4 |
| PENSIONS | XVIII | 15 |
| PRODUCTION STANDARDS | VII | 6 |
| REST AND MEAL PERIODS | XXIII | 20 |
| SENIORITY | XIX | 15 |

SICK LEAVE                              XIII          11
SIP/401K                                XXXII         26
SUCCESSORS & ASSIGNS                    XXX           26
TERM OF AGREEMENT                       XXXIII        26
THIRD PARTY OPERATIONS                  XXX           26
UNION SECURITY                          III           4
VACATIONS                               XI            8

G. M. / H.B.C. (VARIETY) SUPPLEMENT                   28
GROCERY WAREHOUSE SUPPLEMENT                          31
FROZEN FOOD WAREHOUSE SUPPLEMENT                      34
MEAT WAREHOUSE SUPPLEMENT                             37
PRODUCE WAREHOUSE SUPPLEMENT                          40
CLERICAL (CRT) SUPPLEMENT                             43
MAINTENANCE EMPLOYEES SUPPLEMENT                      46
SALVAGE/CRATEYARD SUPPLEMENT                          49
DRIVERS SUPPLEMENT                                    52
TRUCK REPAIR (TEAMSTERS) SUPPLEMENT                   64

EXHIBIT A - BREAK IN RATES                            67
EXHIBIT B - NEW WORK RATES                            69
EXHIBIT C - ATTENDANCE CONTROL POLICY                 70
EXHIBIT D - SAFEWAY INC. STANDARD OF CONDUCT          72
EXHIBIT E - BAY AREA STORES SUBJECT TO DELAY PROCEDURE 75
EXHIBIT F - DRUG & ALCOHOL POLICY PROGRAM             76

LETTER AGREEMENT 1   RE: DELAY PROCEDURES             77
LETTER AGREEMENT 2   RE: PRODUCTIVITY INCENTIVE PLAN  78
LETTER AGREEMENT 3   RE: MULTI-STOP BACKHAULS         79
LETTER AGREEMENT 4   RE: CAMPBELL SOUP BACKHAUL RATE  81
LETTER AGREEMENT 5   RE: BREAD DRIVERS ARBITRATION    82
LETTER AGREEMENT 6   RE: RED CIRCLE RATES             83
LETTER AGREEMENT 7   RE: BEST EFFORTS CLAUSE          84
LETTER AGREEMENT 8   RE: FREEZER, PRODUCE, MAINTENANCE 85
                     AND OTHER APPLICABLE CLOTHING,
                     GEAR AND MAINTENANCE OF SUCH
LETTER AGREEMENT 9   RE: CLARIFICATION OF WORKERS     86
                     COMPENSATION AND INJURY POLICY
LETTER AGREEMENT 10  RE: NEW HIRE PENSION CONTRIBUTION RATE 88
                     AND START RATE
LETTER AGREEMENT 11  RE: HEALTH & WELFARE             89

- 2 -

## ARTICLE I. - BARGAINING UNIT

This Agreement, made this tenth day of August, 2003, by and between SAFEWAY, INC., at 16900 West Schulte Road, Tracy, California, and signatory hereto, hereinafter called the Company, and TEAMSTERS LOCAL 439 charted by the International Brotherhood of Teamsters, is in the mutual interest of the Company and employees. In the spirit of cooperative Management-Union relations, and in recognition that improving the competitive position of the Company within the Industry will prove mutually beneficial, the Company and the Union, in an effort to secure the future of their relationship, do hereby acknowledge and pledge a bond of common interest based on fundamental principles of increased productivity, a safe working environment, better quality, faster service and more efficient operations, in a good faith bargaining relationship with the intent to also improve the management/employee relations.

## ARTICLE II. - EMPLOYEES COVERED

A.     This Agreement and Supplements shall cover and apply to employees of the Company performing work in jobs classified in the Warehouse/Driver Wage Addendum at the Company's place of business located at 16900 W. Schulte Road, Tracy, CA 95376.

Only bargaining unit employees of the Company shall operate forklift equipment, towmotors and/or transporters of any kind within the Distribution Center, except in the following situations:

1.     Inbound freight loads that include unloading as part of the purchasing agreement.

2.     Inventory auditing and cycle counting.  Such work shall be performed by non-bargaining unit employees.

B.     The Company hereby recognizes the Union as the sole and exclusive collective bargaining agent and representative of employees covered by this Agreement.

C.     When new or additional employees are needed, the Company shall notify the Union of the number and classifications of employees needed.  Upon receipt of notification from the Company, the Union shall have seventy-two (72) hours to refer applicants.  The Company shall have no obligation to hire any applicants referred by the Union.

The Company agrees to notify the Union within fourteen (14) days of the names, addresses and social security numbers of all persons hired.

- 3 -

## ARTICLE III. - UNION SECURITY

A. It shall be a condition of employment that all employees of the Company covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing, and those who are not members on the effective date of this Agreement shall, on the thirty-first (31st) calendar day following the effective date of this Agreement, become and thereafter remain members in good standing in the Union. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall, on the thirty-first (31st) calendar day following the beginning of such employment, become and thereafter remain members in good standing in the Union. Good standing shall be defined as timely payment of regular dues and initiation fees, including re-initiation fees, uniformly applied to all members.

B.    The Company shall suspend an employee at the expiration of seven (7) days following receipt of written notice from the Union that the employee has failed to complete or maintain membership in good standing in the Union, unless the employee has corrected the deficiency and the Company is so notified within the seven (7) days. The employee can only return to covered work with a clearance in writing from the Local Union.

The Union hereby agrees to indemnify and hold harmless the Company for any and all back pay resulting from the Company's suspension of any employee pursuant to the Union's request for such suspension.

## ARTICLE IV. - PAYROLL DEDUCTIONS

A.    Upon receipt of a written assignment and authorization signed by the employee on a mutually acceptable form, the Company agrees to deduct the regular monthly dues and initiation fee for the subsequent month from the pay of such employee. The amount deducted shall be in accordance with the Union Constitution.

Payment shall be made to the Union on or before the first (1st) day of the calendar month following the deduction.

B.    An employee's deductions shall begin in the first calendar month following receipt of the authorization card by the Company.

C.    Should the Company not deduct dues from the employee's pay because of either insufficient earnings or absence for any reason during the deduction period, it will be the sole responsibility of such employee to make the required dues payment directly to the Union Office.

D.    If the Company complies with this check-off provision, all legal consequences are the responsibility of the Union and the Union agrees to reimburse the Company for any damages sustained by the Company in complying with this provision.

- 4 -

E.     The Union shall indemnify and save the Company harmless against any and all claims, demands, suits, legal proceedings, or other forms of liability that shall arise out of or by reason of action taken or not taken by the Company for the purpose of complying with any of the provisions of this Section or in reliance of any assignment furnished under any such provisions. The provisions of this Section shall be effective only in accordance with and consistent with applicable provisions of Federal or State Law.

F.     The Company agrees to deduct from the paycheck of all employees covered by this agreement voluntary contributions to "DRIVE". Such contributions shall be deducted pursuant to the written authorizations of the contributing employees on a weekly basis for all weeks worked. The phrase "weeks worked" excludes any week other than a week in which the employee earned a wage. The Company shall transmit to DRIVE National Headquarters on a monthly basis in one check the total amount deducted along with the name of each employee on whose behalf a deduction is made, the employee's social security number and the amount deducted from the employee's paycheck. Transmittals shall be made to DRIVE until and unless the Union notifies the Company in writing to discontinue such transmittals. The International Brotherhood of Teamsters shall reimburse the Company annually for the Company's actual cost for the expense incurred in administering the weekly payroll deduction.

## ARTICLE V. - NO STRIKE/LOCKOUT

A. There shall be no strikes or lockouts during the term of this agreement. The Union (meaning the Local Union and/or its officers or officials, not an individual member or members) and officials shall not overtly or covertly sanction, support, encourage, incite, or lend financial aid to any strike activity prohibited by this agreement. In addition to injunctive relief, the parties acknowledge that in the case of a violation of this paragraph of this agreement, the damages would be uncertain, costly and difficult if not impossible to calculate with reasonable accuracy. Therefore the parties agree: In the event a violation of this Article V.A. or B.2. occurs, the arbitrator shall presume that the aggrieved party suffered some economic damage and award economic damages even if the aggrieved party is unable to prove the amount of the economic loss with specificity.

In addition to the forgoing remedies, the Company may discharge, discipline, temporarily replace or permanently replace an employee who violates any provision of this ARTICLE V. subject to the grievance procedure contained herein.

B. Picket Line.  An employee may refuse to either cross or work behind a lawful, primary picket line established at the company's place of business covered by this collective bargaining agreement, if the picket line is maintained by a Teamster Local Union, and all of the following conditions are present:

a.     The picketing employees are represented by a Teamster Local Union recognized as the collective bargaining representative for employees of the Company and the picketing is in support negotiations on behalf of those employees;

- 5 -

b.    The Union has given the employer a seventy-two-(72) hour written notice prior to observing a lawful, primary picket line;

c.    The picket line has been sanctioned by the Union and its Joint Council.

C.    The union agrees that during the term of this agreement the union will not engage in leaf-letting, boycotting, information pickets and other related activity at the Company's retail stores.

## ARTICLE VI. - MANAGEMENT RIGHTS

A.    All rights of the Company not specifically limited by the terms of this Agreement are hereby reserved to the Company. Further, it is understood by the parties that the negotiations resulting in this Agreement provided ample opportunity for all matters to be considered and this Agreement shall not be construed to contain any matter not specifically set forth.

B.    It is understood that CRT work, training, auditing, incidental and/or emergency warehouse work performed by management is not a violation of Article II or any other Article or Section of this Labor Agreement. This provision shall not be used to erode the work of the bargaining unit.

## ARTICLE VII. - PRODUCTION STANDARDS

The Company may establish, modify, implement, and/or continue systems of production requirements. In the event the Company installs a new, engineered production program or substantially modifies the existing engineered production program the Company shall notify the Union of the change in advance of implementation. There will be no time loss discipline issued to any employees covered by said program while the Union verifies the reasonableness of the new or substantially modified production program. The Union will complete the review of the change as soon as practical but in no case shall it take longer than two (2) months from the point of implementation. Should a dispute arise between the Company and the Union regarding the reasonableness of the modification, the parties agree to expedite the resolution process including arbitration if necessary.

For the purpose of this section, "substantially modifies" is defined as a change in the method of calculating or deriving pick time, travel time, and/or personal delay allowances. Routine data maintenance, such as adding or deleting pick positions or aisles, assignment points, staging points, etc., shall not be considered as a substantial modification of the system.

Such production standards are used for acceptable levels only. All employees are required to work to the best of their ability. The Company agrees to give the Union any and all information related to production levels, elemental times, a general job description, and time studies provided that such information shall remain on Company premises within a secured filing cabinet. Access to the cabinet shall be restricted to officers, and chief stewards of Local 439.

## ARTICLE VIII. - DONATIONS

Contributions and donations for all charitable purposes shall be voluntary on the part of the employee.

## ARTICLE IX - EXAMINATIONS, IDENTIFICATION

A.    Examinations.  Medical or other examinations required by a government body, or the Company, shall be promptly complied with by all such employees provided, however, the Company shall pay for all such examinations and for full-time consumed, except in the case of a drivers' or chauffeurs' license examination

The Company shall have the right to test (using scientifically acceptable methods) an employee who the Company has justifiable cause to believe is working under the influence of an illegal drug or intoxicant.  Refusal of an employee to take a drug or intoxicant test upon request shall be deemed a voluntary quit.  See Exhibit F for the revised Company drug policy.

B.    In the event an employee is on work related or non-work related disability and is released by his/her doctor to return to work and the Company requests an examination by a company physician and the Company doctor disagrees with the findings and release of the employees physician, a third doctor shall be selected by the Company doctor and the employee's doctor and his decision shall be final and binding.  The cost of the third party doctor shall be borne equally by both parties.  In the event that the third doctor reverses the decision of the Company doctor, the Company shall be liable to make the employee whole up to a maximum of twenty-one (21) working days, unless otherwise mutually agreed to.

C.    Each employee reporting for work is required to be fit to perform assigned duties, including overtime when required.  In the event there is a question as to the fitness of any employee, the provision of Section B, above, shall control.

D.    Identification.  Should the Company find it necessary to require employees to carry personal identification, such requirement shall be complied with by the employee.  The cost of such personal identification shall be borne by the Company, however, replacement cost, except those costs due to normal wear and tear, shall be borne by the employee.

## ARTICLE X. - MAINTENANCE OF MORE FAVORABLE CONDITIONS AND/OR PROGRAMS

It is agreed by the Union and the Company that any voluntary benefits and/or programs which are now in effect, or may in the future be put into effect shall only be continued by option of the Company.

It is also agreed that no employee shall suffer a reduction of any kind due to the signing of this agreement.

- 7 -

Any employee presently receiving a wage rate higher than the base rates specified in either the "Master" or the "Supplements" shall retain such rate. In addition, they will receive all contractual increases.

The Company agrees not to enter into any agreement with employees, individually or collectively, which in any way conflict with the terms and conditions of this Agreement. Any such agreement shall be null and void.

## ARTICLE XI. - VACATIONS

A.    Every full-time employee, who on the most recent anniversary/eligibility date of his employment shall have been in the service of his Company for a period of one (1) year* or more and shall have worked a minimum of 1800 straight-time hours within the twelve (12) month period immediately preceding such anniversary/eligibility date, shall qualify for and be entitled to a vacation as follows:

One  (1)  week  (40 hours)  after one  (1) year;
Two  (2)  weeks (80 hours)  after two  (2) years;
Three (3)  weeks (120 hours) after five (5) years;
Four (4)  weeks (160 hours) after twelve (12) years;**
Five (5)  weeks (200 hours) after twenty  (20) years;

** Four (4) weeks after ten (10) years of service commences on the 5th anniversary of this agreement (September 28, 2008).

Vacation will be compensated at 1/52 of annual earnings or forty (40) hours per week, whichever is greater subject to the limitations of Article 11 paragraph. For the purpose of this section, vacation and holidays paid shall be considered straight-time hours worked.

* In order to establish a common eligibility date of January 1, after an employee completes one (1) year, his first vacation shall be prorated based on the straight-time hours worked from his hire date through December 31st of that year compared to two thousand eighty (2080) hours. His vacation eligibility date shall thereafter be January 1.

B.    Full-time employees who after their first anniversary year and during any eligibility year qualify for less than a full vacation shall be entitled to prorated vacation based upon the ratio between the number of straight-time hours worked and two thousand eighty (2080) hours.

C.    Part-time employees shall receive vacation in accordance with Article XXIV. - PART-TIME EMPLOYEES.

D.    Earned vacation must be taken in the eligibility calendar year unless the employee experiences a documented hardship. In such case, the employee may carry over one (1) week of vacation. If the employee is unable to take the one-(1) week vacation by December 31, s/he shall be paid for that week of vacation by the end of the

- 8 -

calendar year. Upon receipt of the payment for the week of vacation, and if requested by the employee, the unpaid time off must be scheduled and taken by March 31 of the following year or it shall be forfeited.

E.    Full-time employees will be scheduled for vacation on the basis of seniority within classification subject to the needs of the business. It is understand that employees entitled to three (3) or more weeks vacation may not schedule more than two (2) weeks until all employees have had the opportunity to make their first vacation selection.

The Company shall determine the number of employees to be scheduled for vacation each week; however, in no event shall the percentage of employees scheduled be less than seven (7) percent. Vacation bids shall be posted during the months of January and February and completed by the last day of February. In the weeks of Thanksgiving and Christmas the seven (7%) percent shall not be applicable. During these weeks the Company will allow as many employees off as possible, subject to the needs of the business.

F.    All eligible employees who terminate or are terminated after the first year of employment or their most current eligibility date shall be entitled to vacation pay as specified in Paragraph "B".

G.    The employee will receive his earned vacation pay on the last regular payroll date before his <u>vacation</u>.

No employee shall be required to work overtime on his or her last regular shift prior to taking a scheduled vacation.

No employee shall be forced to work during his or her vacation.

H.  Whenever a holiday falls within the vacation week, the employee shall receive an extra day (day before or day after) off with pay or an extra days pay at the discretion of the employee. Such election must be made when scheduling vacation time. All paid vacation time shall count as "time worked" for all purposes under this agreement.

## ARTICLE XII. - HOLIDAYS

A.    The following holidays shall be observed:

New Year's Day
Labor Day
Thanksgiving Day
Christmas Day
One (1) Personal Day

A Holiday Leave Week consisting of forty (40) hours.

These Holiday Leave days off are subject to the same eligibility, proration and scheduling procedures as provided in ARTICLE XI. VACATIONS.

B.    All eligible full-time and part-time employees shall be paid eight (8) hours straight-time pay for the four holidays and the Personal Day specified above with the exception that a 4/10 employee will be entitled to ten (10) hours holiday pay if a holiday falls within his regular workweek and he does not work on such holiday. Eligible employees are defined as full-time and part-time employees with seniority who work sometime during the week in which the holiday occurs and report to work their last scheduled working day preceding the holiday, on the holiday, if scheduled, and the next scheduled working day following the holiday. The requirement of the employee to work one day during the holiday week shall be waived if the employee is absent from work because of a bona fide illness or injury, which illness or injury has been continuous from not earlier than fifteen (15) working days prior to the holiday and not later than fifteen (15) working days after the holiday. Provided further that a full-time or part-time employee who is laid off the week before and rehired the week following the week in which the recognized holiday falls shall not suffer a loss or pay for the holiday.

C.    Part-time employees shall receive the personal day in accordance with Article XXIV. - PART-TIME EMPLOYEES.

D.    The Holiday Leave Week will be selected in the same manner as vacations, by seniority but on a separate bid. Those employees wishing to take the Holiday Leave Week at one time will select their full week first. After the full Holiday Leave Weeks are selected those employees wishing to split their Holiday Leave Week into one (1) day increments will then make their choices. The Personal Holiday will be selected under the same condition as the split Holiday Leave Week or selected later and taken on mutually agreeable date. It is understood that the Company will determine how many employees may be off each week and day and if single days are available the employees may select a day(s) off by seniority. Single days may be cashed out at any time at employee's discretion. An employee who cashes out days shall not be permitted to take such days off without pay.

Eligible employees taking the Holiday Leave Week in one segment or split days will be paid forty (40) hours for such week.

Part-time employees shall receive the holiday week in accordance with Article XXIV. - PART-TIME EMPLOYEES.

Full-time employees working less than full-time will receive pro-rata for the Holiday Leave Week and Personal Holiday pay as set forth in Article XI.B.

E.      Regular full-time and part-time employees who work on New Years' Day, Labor Day, Thanksgiving Day and Christmas Day shall be paid for such work at the overtime rate of time and one-half (1½), plus they shall also receive their earned holiday pay. No full-time employee shall be called to work on a recognized holiday for less than a full day. When a holiday under this section falls on a day an employee is not normally required to work, the employee may be required to work five (5) days for six (6) days of straight-time pay or four (4) days for five (5) days of straight-time pay that week or in the case of a 4/10 employee, the employee may be required to work four (4) days for five (5) days straight-time pay or three (3) days for four (4) days' straight-time pay.

For the purpose of computing the forty-(40) hour guaranteed workweek, paid holidays shall be considered as time worked.

Holidays will be observed on the day the holiday falls, however, on the second and third shifts, with two (2) weeks notice, the Company may designate the day prior or the day after for observance. If and when Federal or State legislation changes the date of observance of any paid holiday, the date of observance shall be recognized in this contract in lieu of the contract day shown.

Whenever a holiday falls within the vacation week, the employee shall receive an extra day's pay. However 50% of the employees, in a department, who are off on vacation in any week, on the basis of their seniority, may elect to receive an extra day off before or after their vacation week or an additional floating day off with pay in lieu of the extra day's pay. All paid vacation time shall count as "time worked" for all purposes under this agreement.

With two(2)weeks notice the Company reserves the right to modify schedules pursuant to Article XXI. JOB AND SHIFT BIDS and Article XX. HOURS OF WORK during the distribution of holiday merchandise.

## ARTICLE XIII. - SICK LEAVE

A.      All full-time employees covered by this Agreement who have been continuously employed by the Company for at least one (1) year shall be entitled to a total of five (5) days' sick leave with pay on their first anniversary date and each subsequent eligibility date* thereafter; provided the employee worked one thousand eight hundred (1,800) straight-time hours in the previous eligibility period. Full-time employees working less than one thousand eight hundred (1800) straight-time hours will receive prorated sick leave based on the difference between the hours worked in his eligibility year and two thousand eighty (2080) hours. Sick leave shall be payable at the employee's regular rate of pay due to bona fide absence caused by off-the-job illness or accident. Sick leave pay shall commence on the first (1st) working day lost. The Company may

- 11 -

require reasonable proof of disability or illness. Falsification of sick leave claims is cause for discharge or disciplinary action.

*January 1, following the employees' first year anniversary the sick leave will be prorated so the employee has a common sick leave eligibility date of January 1.

B.     Part-time employees shall receive sick leave in accordance with Article XXIV. - PART-TIME EMPLOYEES.

C.     Pay shall mean the employees' regular straight-time hourly rate for those straight time hours which the employee would have worked had the disability or illness not occurred. Payment will begin on the first (1st) day of sickness.

D.     Unused sick leave benefits in any one-(1) year shall accumulate from year to year to a maximum of thirty-six (36) days. Upon retirement, payment shall be made for all unused sick days, up to a maximum of thirty-six (36) days.

## ARTICLE XIV. - JURY DUTY

A.     Each day that a full-time and part-time employee is called to serve on any jury, including Grand Jury, and when such service deprives such employee of pay that he otherwise would have earned, the Company agrees to pay such employee for those days the difference between any remuneration that such employee receives for such jury duty and the amount that he would normally be paid for eight (8) hours at his regular straight-time rate. Remuneration for such jury duty service shall be limited to three (3) terms of jury duty service during the term of this Agreement.

B.     If such employee is excused from jury duty service on a scheduled workday and is able to report to work with no less than four (4) hours remaining on his shift, he shall immediately report for work to complete his scheduled work shift.

C.     Full-time and part-time employees who are selected for jury service shall be assigned to a day shift and work week consistent with the start time of jury duty.

## ARTICLE XV. - FUNERAL LEAVE

A.     Full-time and part-time employees will be allowed three (3) days off with pay (five (5) days for travel in excess of 325 miles (measured from Tracy Distribution Center)) for loss of their normal scheduled hours of work to make arrangements or attend the funeral for a member of the immediate family as defined below. Immediate family shall be defined as the employee's parents, spouse, children, stepchildren, foster children, siblings, current mother-in-law and father-in-law and grandparents. Full-time and part-time employees will be granted one (1) day off without pay for attendance of the funeral of an Aunt or Uncle.

B.     In instances where an employee is absent from work, whether on a paid or unpaid basis, there will be no funeral leave paid for deaths which occur during such periods of time. In the event an employee is on vacation when the death occurs, the

provisions of Article XV(A) shall be applicable and the employee may reschedule vacation time.

## ARTICLE XVI. - LEAVE OF ABSENCE

A.     The Company may, at its discretion, grant a leave of absence for personal reasons in thirty (30) day increments and/or consistent with State and Federal law.  The employee shall be given a written notice of the terms and conditions of any such leave of absence granted if requested by the employee.

B.     Any employee who undertakes or continues other work or employment during any leave of absence without first securing permission from the Company automatically cancels such leave of absence and will be considered to have terminated his employment.

C.     Failure to return to work in accordance with the terms of a leave of absence shall be a cause for immediate termination.

D.     Employees who transfer from a bargaining unit position to a non-bargaining unit position will be entitled to a one-time thirty (30) day leave of absence.  No extensions will be granted.

## ARTICLE XVII - HEALTH & WELFARE

A.     Effective September 28, 2000, the Company shall contribute to the Teamsters Benefit Trust Fund, Plan G, in the amount of $587 per month per Teamster member, and the employee in the amount of $8.65 per month.

Effective January 1, 2001 to December 31, 2001, the Company will contribute rates as set forth by the Trustees of the Plan, the amount of contribution to maintain the current benefits and the current level of benefits, Plan G.

Effective January 1, 2002 to the expiration of the Agreement, the Company will contribute rates as set forth by the Trustees of the Plan, the amount of contribution to maintain the current benefits and the current level of benefits, Plan G up to a maximum of a 5% increase in the rate of contribution in the year 2001, plus half of any increase above 5% (for example, if the year 2001 contribution level for the Company is $600.00, raised by 10% to $660.00 in 2002, the Company shall contribute $645.00 and each employee will contribute an additional $15.00-for a total of $23.65).

It is understood that the Company will not make contributions for the Health and Welfare on behalf of employees on probation (not until the 1st of the month following the completion of probation).

B.     Eligible Employees:  For the purpose of this Article only, the term "eligible employee" shall mean any employee who has worked eighty (80) hours, or has been paid for eighty (80) hours or more in the calendar month immediately preceding the month in which the premium payment is made.

Employees with two (2) or more years of continuous service, who are laid off for lack of work, shall be granted all the benefits and coverage as provided in this Section, commencing the calendar month immediately following said layoff (to which the laid off employee may already be entitled by having qualified by hours for the month in which the layoff occurred) and continuing for not more than three (3) additional months thereafter, provided, however, in the event said employee is re-employed by some other Company, at the time of layoff, subscribing to said fund within a four (4) month period, the Company, at the time of layoff, shall not be so obligated except for the period during which the employee is not otherwise entitled to coverage.

A qualified employee shall not be eligible for more than four (4) months of extended coverage in any twelve-(12) month period irrespective of the number, frequency and length of his layoff. It is further understood that the extended coverage referred to above applies only in the case of layoff for lack of work and does not apply in case of voluntary quit or discharge for cause.

When an employee is off the job due to an occupational or non-occupational disability, he and his eligible dependents will be entitled to three (3) months full benefit coverage to which he is entitled under the provisions of the Trust, which is called "waiver of premium", provided the disabled employee submits a doctor's statement to the Trust office verifying the disability.

If the employee is still disabled at the end of the initial three (3) month period, the Company shall make the necessary contributions to continue full coverage, not to exceed three (3) additional months.

C.    Retiree Benefits: The Board of Trustees, in their sole discretion, will arrange for a plan of retiree health and welfare benefits. The Trustees shall have the right in their sole discretion to modify the structure, benefits and eligibility rules of the plan as they pertain to retirees and their dependents.

A maximum of twenty-five dollars ($25.00) shall be allocated from each active participant's health and welfare contribution rate to provide benefits for eligible retirees and their eligible dependents. This amount constitutes the Company's sole obligation to fund retiree benefits during the term of this Agreement. The retiree's co-payment, if any, shall be determined by the Trustees of the Fund.

D.    TBT Retirement Security Plan: Employees may, on a department basis, as recognized by the Trust Fund, decide to deduct part of their compensation for the purpose of making contributions to the TBT Retirement Security Plan. Subject to IRS regulations, the employer agrees to deduct from employee's pre-tax wages after proper authorization and forward the contributions to the XX Retiree Medical Plan.

E.    Compliance: The Company agrees to comply with all provisions of the Trust fund subscribers agreement.

- 14 -

F.    By Mutual agreement between the Union and the Company the health and welfare coverage may be converted in part or in its entirety from the current Teamsters Benefit Trust to a different Trust or Benefit Plan.

G.    Effective August 10, 2003 or as soon as practical thereafter, pursuant to Paragraph E. above, the Union and the Company agree to convert from Teamsters Benefit Trust Fund, Plan G, to Teamsters Benefit Trust Fund, Plan 1A under the terms set forth in the <u>LETTER OF AGREEMENT 11 – HEALTH AND WELFARE</u> attached hereto.

## ARTICLE XVIII - PENSIONS

A.    For all employees hired after ratification of this Agreement, the Company will contribute $0.10 per hour worked for the first ninety-(90) days of employment. Thereafter, the full rate of contribution shall apply.

B.    As set forth in Supplements for each individual department, including the following increases:

Effective September 28, 2000 $0.10/hour (Regardless of wage
Effective September 28, 2001 $0.05/hour   diversions)
Effective September 28, 2002 $0.05/hour
Effective September 28, 2003 $0.05/hour
Effective September 28, 2004 $0.05/hour
Effective September 28, 2005 $0.05/hour
Effective September 24, 2006 Diversion from Wages
Effective September 30, 2007 Diversion from Wages

## ARTICLE XIX. - SENIORITY

A.    The Company shall maintain the following separate departmental seniority lists keeping them current and posting them on the Union bulletin boards in each department:
> Automotive and Truck Service Employees
> Salvage / Crate Yard Employees
> Drivers
> Frozen Food Employees
> Grocery Employees
> Maintenance Employees
> Produce Employees
> Variety Employees
> Meat Employees
> Clerical *

*    Each warehouse department shall have a separate clerical seniority roster (except that clerical [CRT's] shall have a master seniority list that will govern in the event of a layoff). At the initial bid, all CRT's will bid all positions available by seniority. Thereafter, there shall be a semi-annual bid within each department.  Any vacancy that

- 15 -

arises shall be bid to all CRT's by seniority for the first move only. Thereafter, vacancies shall be filled by the Company from the part-time list by seniority.

B.     All regular full-time employees shall be assigned to a department, and seniority accrues from the date the employee begins work in that department or after 520 straight-time hours worked from the date of hire, whichever is later.

C.     When it becomes necessary to reduce the number of employees, the last employee hired in that department affected shall be the first employee laid off and in rehiring, the last employee laid off in that department shall be the first employee rehired provided the employee has the qualifications and ability to perform the work available. When a full-time opening occurs in a different department, such openings shall be offered to laid off full-time employees by seniority, provided the employee has the qualifications and ability to perform the work available, prior to being offered to part-time employees or new hires. If accepted, the employee shall forfeit his previous departmental seniority and his new departmental seniority shall commence on the first day of work in that new department.

D.     All employees are to be given written notice or notice posted at the time clock of impending layoffs not later than their last scheduled workday in a calendar week. It shall be the responsibility of any employee who has been laid off to record his current address with the Company. Any employee who has been laid off and recalled to work and who fails to report to work within seventy-two (72) hours of the Company's certified notice to the employee's last recorded address may be considered a voluntary quit.

E.     Seniority shall be considered broken by:

   1.     Discharge for just cause.

   2.     Resignation or voluntary quit.

   3.     Failure to notify the Company of an absence of three (3) or more days, except in the case where the employee was unable to do so due to a serious documented injury.

   4.     Absence from work exceeding twelve (12) months, due to medical reasons. The time period shall be extended to eighteen (18) months if employed more than one year.

   5.     Layoff for a period equal to the length of service if employed less than one (1) year, and twelve (12) months if employed more than one (1) year.

   6.     Failure to return timely from an approved leave of absence.

## ARTICLE XX. - HOURS OF WORK

A.     For regular full-time employees who are able and available to work, the work week shall consist of five (5) eight (8) hour days or four (4) ten (10) hour days, provided

- 16 -

that no more than forty (40) percent of the regular full-time employees in the distribution center shall be assigned to a non-consecutive workweek.

Regular full-time employees who are available for work and report for work as scheduled shall be guaranteed forty (40) hours work or pay.

B.     In the event operations cannot commence or continue when so recommended by civil authorities, or public utilities fail to supply electricity, water or gas, or there is a failure in the public utilities, sewer system, or the interruption of work is caused by a computer failure, an Act of God, or such other emergency beyond the Company's control, the guarantees provided in this Agreement shall not be applicable.

C.     Full-time employees on layoff may waive the forty (40) hour guarantee, at which time they will be offered the available work in that department based on their seniority and shall work under the provisions of this Agreement.  If the full-time employee chooses not to waive the forty-(40) hour guarantee, that employee will remain on layoff until full-time work is available in his department.  While on layoff, if the employee notifies the Company that he wishes to waive his forty (40) hour guarantee on a week-to-week basis, he shall be offered the available work by seniority until recalled to full-time status.  Laid-off full-time employees shall be guaranteed four (4) hours when they report to work as scheduled.

D.     All work performed by employees on their sixth (6th) or seventh (7th) consecutive day (5th, 6th or 7th for those on a 4/10 schedule) of work in the work week shall be paid for at time and one-half.  This paragraph does not apply to drivers paid on the basis of mileage.

E.     Shifts shall be defined as follows:

• First shift starts on or after 4 a.m.
• Second shift starts on or after 4 p.m.
• Third shift start on or after 10 p.m.

## ARTICLE XXI. - JOB AND SHIFT BIDS

A.     All warehouse bargaining unit bid jobs, shifts and work weeks will be bid by seniority at least twice (2) a year; the semi-annual bid shall take effect on the first Sunday in February and no later than the first Sunday in August.  The Company may establish rebids when necessary.  When a permanent full-time bid job as designated in Article XXI.D herein, shift or workweek becomes available, the bid job, shift with initial starting times or workweek, shall be posted for a period of ten (10) working days and employees will indicate their interest by signing the sheet.  Seniority shall prevail in filling the position provided qualifications and ability are equal.  There shall be no bumping.  When a permanent bid position is abolished, the least senior employee within the classification and shift may displace the least senior employee who holds a permanent bid position.  The displaced employee will be reassigned to the general warehouse classification.

B.    It is understood that an employee in a bid job or on a bid shift may, after prior consultation, be disqualified and removed from the job or shift and reassigned to the General Warehouse classification if they do not meet the level of performance required by the Company. This clause shall not be enforced in an arbitrary, capricious or discriminatory manner. If any disagreements arise over this section, they shall be subject to the grievance procedure.

C.    Start times within a shift shall be assigned within classifications.

D.    The parties agree to establish the following job classifications:

Warehouse
- General Warehouse Worker*
- Checker
- Loader
- Forklift
- Sanitation
- Unloader/Hauler
- CRT/Clerical
- Cigarette Room (GM/HBC)
- Loop Stackers (GM/HBC)
- Hono Clerk (Produce)
- Mech Stocker (GM/HBC)

Salvage / Crate Yard
- Forklift

*For the purposes of job bidding General Warehouse Worker is not a bid job.

E.    In the event that major changes are made in working conditions/schedules after a bid, the Company and the Union shall meet to resolve any differences that may exist.

F.    All job offerings in the current classifications for temporary warehouse (Grocery, Produce, Meat, GM/HBC, and Frozen) jobs or replacements will be filled at management's discretion by seniority (General Warehouse) as follows: 1) daily, 2) weekly, and 3) extended time periods.

## ARTICLE XXII. - OVERTIME

A.    Overtime paid at a rate of time and one half (1 ½) shall be paid for all hours worked in excess of eight (8) hours in one (1) day (ten (10) hours for 4/10 employees) and in excess of forty (40) hours' worked in an employee's workweek, and for the hours when an employee is required to report for work prior to his normal start time.

B.    Assignment of Overtime: After scheduling all available straight-time employees, overtime shall be offered or assigned as follows:

    1.    Daily Overtime. Such overtime shall be offered by seniority to employees within the classification and shift who are qualified to perform the work when the

- 18 -

overtime starts and after completing the work assignment in progress. In no event shall an employee work more than sixteen (16) continuous hours in any combination of straight time and overtime work, except by mutual agreement.

A minimum of two (2) hours notice must be given for overtime anticipated to be in excess of one (1) hour or the employee may decline the overtime. Unless the entire department is mandatory for overtime, the overtime shall be offered from the top down and assigned from the bottom up.

2.    Merging Shifts.  When two shifts overlap, employees reporting for work will displace employees on overtime in bid positions.

3.    Sixth Day, Seventh Day and Holiday Overtime.  When more than one (1) overtime shift is to be worked, such overtime will he offered by seniority and classification to the employees who normally are scheduled on the shifts to be worked.

4.    When only one (1) overtime shift is scheduled on an overtime day as per No. 3 above, the Company shall determine the start time of the shift and offer the overtime needed to all employees of the department by seniority and classification.

5.    If the required overtime cannot be performed because of insufficient volunteers, work shall be assigned in the order of inverse seniority, as necessary, within the classification by shift.

C.    Employees reporting for work as scheduled on a sixth or seventh day shall be guaranteed four (4) hours work.

D.    There shall be no pyramiding of overtime or pyramiding or combination of two (2) or more methods or types of pay for the same daily or weekly hours.

E.    In all cases of overtime the employee must be qualified to perform the work in order to be eligible.

F.  Twice each year in June and December, the employees shall have the opportunity to elect whether they wish to decline overtime work on the sixth and seventh (6th and 7th) day.  If an employee elects to decline to work overtime, he will not be offered nor can he claim, overtime work during the succeeding six (6) month period, subject however, to the limitation that no more than twenty-five percent (25%) of the employees in each classification and on each shift and in each department may make such election.  If more than twenty-five percent (25%) wish to make such an election, selection will be made by seniority.  The election to decline overtime work shall not be effective in any week that this Agreement provides for a holiday.

This overtime exclusion will not apply in the event operations cannot commence or continue or are delayed by two (2) hours or more or so recommended by civil authorities, or public utilities fail to supply electricity, water or gas, or there is a failure in the public utilities, sewer system, or the interruption of work is caused by a computer failure, an Act of God, or such other emergency.

## ARTICLE XXIII- REST AND MEAL PERIODS

There shall be two (2) fifteen (15) minute paid rest periods per eight (8) or ten (10) hour shift -- one (1) during the first half of the shift and one (1) during the last half of the shift. Employees that work in excess of each two-(2) hours overtime shall receive an additional fifteen-(15) minutes paid rest period. Employees scheduled to work two (2) or more hours overtime shall receive a fifteen-(15) minute break at the end of their regular shift. (An extra fifteen (15) minute break shall be scheduled prior to an additional two (2) or more hours of work.)

The lunch period shall be thirty (30) minutes taken on the employee's own time.

Lunch and rest periods will be scheduled by the Company.

Employees who work a four-(4) hour shift shall receive one (1) fifteen-(15) minute paid rest period in their four-(4) hour shift.

## ARTICLE XXIV. - PART-TIME EMPLOYEES

A.     Part-time employees, excluding those part-timers who are replacing employees on scheduled or unscheduled absences, shall not exceed fifteen (15) percent of the Distribution Center seniority roster and shall be assigned at management's discretion.

B.     When a full-time position becomes available, the position shall be filled based on seniority since date of hire provided qualifications and ability are equal.

C.     After completion of the probationary period, for every 360 hours of actual straight-time hours worked, up to a maximum of 1800 hours, a part-time employee shall accrue one (1) day of vacation, sick and floating holidays. Upon completion of 360 straight-time hours worked, they will be entitled to the one (1) personal day. Part-time employees shall receive designated holidays, jury duty and funeral leave in accordance with the eligibility procedures for full-time employees.

D.     Part-time employees shall be offered four (4) hours work or pay when called in and report for work.

E.     Part-time employees do not attain seniority rights until they are upgraded to regular full-time status. The date a part-time employee becomes a full-time employee will become their new seniority date. Part-timers will not be required to complete an additional probationary period.

## ARTICLE XXV. - DISCHARGE AND DISCIPLINARY PROCEDURES

A.     The Company may discharge or otherwise discipline an employee for just cause. The Company shall not proceed with any interrogation unless the employee being interrogated is provided with Union representation unless specifically waived by the employee in writing with a copy to the Local Union. Suspension and discharge

- 20 -

notices must be sent by certified mail to both the employee and the Union within ten (10) working days exclusive of Saturday, Sunday or holidays, of the event of the violation, or when the Company obtains knowledge thereof. If the Company fails to send such notice within the time limits, the right to suspend or discharge is waived.

B.    An employee shall not be discharged unless he has had one previous written warning, excluding Production and Attendance, with a copy to the Union for any offense committed within 180 calendar days prior to discharge except in the case of discharge for dishonesty or theft, any violation of the Company's drug and alcohol policy including the sale or use of any alcohol or controlled substance related to employment, insubordination, and fighting. These exceptions are not an exclusive list, but are examples of conduct so serious in nature as to warrant discharge without prior warning. The complaint specified in such prior warning notice need not concern the same type of misconduct as the cause for discharge except cases of discharge for poor work performance. The Union agrees that the current Company rules are reasonable.

C.    Production Discipline: An employee shall be subject to the following disciplinary procedures while working under a work production system. If after completing thirty (30) hours under the work production system and each subsequent thirty-(30) hour time period, he fails to maintain the established standard, discipline shall be administered as follows:

| Step One | - | Verbal |
| Step Two | - | Written |
| Step Three | - | Written |
| Step Four | - | Three Day Suspension |
| Step Five | - | Termination |

1.    Under an engineered work standards program, the standard shall be sixty (60) minutes.

2.    Dereliction of Job Duty: If an employee falls below seventy-five (75) percent of the established standard for a total work day, the employee is subject to discipline as follows:

Verbal
Written
Termination

D.    New employees shall be subject to a 520 straight time hours worked probationary period during which they may be discharged without recourse through the grievance procedure for any reason which, in the sole opinion of the Company, is sufficient.

## ARTICLE XXVI. - GENERAL GRIEVANCE PROCEDURE

A grievance is any controversy between the Company, the Union or an employee arising out of an alleged violation of a specific provision of this Agreement. The grievance and arbitration procedure shall apply only to disputes that arise during the term of this

Agreement. The grievance and arbitration procedure of this Agreement will be the sole and exclusive means available for resolving grievances. Prior to any grievance being filed, the employee shall make his immediate supervisor aware of his dispute. In the case of a Company grievance, a representative of the Company shall make a Union representative aware of the dispute prior to filing a formal grievance. In all cases, except where safety of the employee is in jeopardy, the employee is required to work first and grieve later. It is the intent of the parties to settle grievances in an expeditious manner.

A.  Step One.  Any grievance shall be filed in writing within ten (10) days of the day the grievant knew or should have known of the alleged incident with the specific contractual violation clearly indicated. The matter shall be discussed with the grievant, the steward and the department head. Any grievance not filed within this ten-(10) day time limit will be considered null and void. The department head or his designee, shall respond to the grievance, in writing to the grievant, within ten (10) days of the grievance or the grievance shall be deemed resolved in favor of the Union.

Step Two.  If the grievance is not resolved between the employee, the steward and his department head, it shall be referred within ten (10) days of the receipt of the Company's response by the Union to the Director of Labor Relations or the grievance shall be deemed resolved in favor of the Company. As soon as possible, but not later than ten (10) days, the Director, the grievant, steward and the Business Agent shall meet to resolve the grievance. The Company shall respond within ten (10) days, in writing to the Union, for the purpose of resolving the grievance or the grievance shall be deemed resolved in favor of the union. In the case of a Company initiated grievance, the Company shall refer the grievance to the Union within ten (10) days or the grievance shall be deemed resolved in favor of the Union. The Union shall respond within ten (10) days, in writing to the Company, or the grievance shall be deemed resolved in favor of the Company. Suspensions and discharges shall automatically be referred to the Director of Human Resources.

Step Three.  In the event the second step fails to settle the grievance it shall be referred to a Board of Adjustment within thirty (30) days by the initiating party or it shall be deemed resolved in favor of the other party. There shall be a Board of Adjustment comprised of four (4) members; two (2) representing the Union and two (2) representing the Company and one neutral member who shall be XX and shall also serve in the capacity of permanent arbitrator. The Union members of the Board of Adjustment shall not be employees of the Local Union and the Company members of the Board of Adjustment shall not be management or supervisory employees of the Company who are assigned to the facility covered by this agreement. If XX is unable to serve, the parties will appoint another permanent arbitrator. Should the parties fail to agree on the replacement for the permanent arbitrator they shall select an arbitrator from a panel of seven (7) arbitrators having offices in Northern California furnished by the FMCS. The Arbitrator shall be selected by the alternate striking method, the order of choosing determined by the winner of a coin toss. The parties shall arrange with the arbitrator mutually agreeable dates, with a minimum of one date per month for a period of twelve (12) months for the Adjustment Boards to be convened. It is the intent of the parties that as many cases as can be heard, per monthly session, will be heard. By mutual agreement of the parties and the arbitrator, more dates may be scheduled. In no case shall attorneys be members of the Board of Adjustment except for the neutral member.

Once each twelve (12) month period, either party may remove the arbitrator and request that a new arbitrator is chosen. If the parties cannot mutually agree on the selection of a new arbitrator, the arbitrator will be selected using the alternating selection method indicated above. If no such request is made, the arbitrator shall be renewed for an additional twelve- (12) month period.

The Board of Adjustment shall not be empowered to amend, modify or change the terms of this Agreement. On termination and discipline cases, votes and deliberations of the Board of Adjustment shall be confidential among the members of the Board of Adjustment and only the final decision shall be announced to the parties.

The parties shall share the cost of the arbitrator's monthly fees equally.

Either party has the right to one (1) postponement of a case. If the postponement of a case results in the postponement of the Board of Adjustment, the postponing party shall pay the arbitrator's total monthly fee, unless a date is substituted at no additional cost. The rescheduled Board of Adjustment must occur within twenty (20) days. All decisions by the Board of Adjustment shall be made by confidential majority vote and announced by the neutral member.

<u>Step Three (A).</u> In cases of contract construction as distinguished from disciplinary cases, the parties may mutually agree to bypass the Board of Adjustment and to proceed to arbitration before the permanent arbitrator. Either party may be represented by counsel at arbitration. If one of the parties intends to have their attorney present they shall notify the other party at the point where it is agreed that the case is on the agenda for the next arbitration.

The Arbitrator shall issue a decision upon the conclusion of the case unless the time is extended by mutual agreement of the parties or at the request of the Arbitrator. In no event shall the time period for a decision be more than thirty (30) days. The Arbitrator may issue a bench decision at the conclusion of the hearing and later issue the written award.

B. In the event a grievance cannot be addressed within the prescribed time limits due to the involvement of outside agencies or due to the necessity of medical reports, the time limits will be automatically extended for only such time that it takes to receive such reports. It is understood and agreed that neither party will abuse exceptions to the time limits.

C. The losing party is obligated to pay the cost of the arbitration. This means the cost of the arbitrator (exclusive of mutually agreed to cancellation fees), the court reporter (if used) and the cost of the hearing room. Each party is responsible for the cost of presenting their respective cases including legal fees and court costs (if applicable).

D. The jurisdiction and authority of the arbitrator over the grievance and his opinion and award shall be confined exclusively to the interpretation of the explicit provisions of this Agreement at issue between the Union and the Company.

E. The arbitrator shall have no authority to add to, detract from, alter, amend or modify any

- 23 -

provision of this Agreement, or impose on any party hereto a limitation or obligation not explicitly provided for in this Agreement or establish or alter any wage rate or wage structure.

F. A decision reached at any step of the grievance/arbitration procedure shall be final and binding on the parties and the employees.

G. Unless otherwise specified, all references to day(s) in this Article refer to work days excluding Saturday, Sunday and holidays regardless of the work schedule.

## ARTICLE XXVII. - BULLETIN BOARD AND UNION VISITS

A.     The Company shall provide a covered and locked (with each chief steward for each department having their own key) bulletin board which shall be used exclusively for authorized Union notices, but same shall not be posted until they have been first called to the attention of the Company. There shall be no censorship by the Company. All such Union notices shall be non-controversial official union business and shall be authorized by the Secretary/Treasurer of the Local Union or by his designee who shall be a full-time representative of the Local Union involved.

B.     It is mutually agreed that there will be no interference by the Union with the work of any employee covered by this Agreement during the regular working hours of said employee.

C.     Union representatives and business agents upon entering each department must notify a member of management in that department.

D.     The Company shall recognize the Union's desire to have Shop Stewards and Alternates for each department on each shift and/or workweek. The authority of stewards so designated by the Union shall be limited to the following:

a)      The investigation and presentation of grievances with the Company within the stewards' department.

b)      The transmission of messages and information which shall originate with and be authorized by the Local Union Officers provided such messages or information is of routine nature and does not involve work stoppages, slowdowns or refusal to handle goods.

c)      The stewards have no authority to take strike action or any other action interrupting the Company's business except as authorized by official sanction of the Local Union.

d)      The steward shall be allowed reasonable time to investigate, present and process grievances on the Company's property without undue interruption of the Company's operation. Such steward will exercise good judgment in the use of this time. Said time is to be paid time during the steward's

regular working hours and shall be considered time worked for computing overtime and benefits.

The Company recognizes the right of each employee to have a steward present at such time that the employee reasonably contemplates disciplinary action may be taken against him and the right of each steward to also have the same representation when the steward reasonably contemplates disciplinary action may be taken against him.

## ARTICLE XXVIII. - MISCELLANEOUS CONDITIONS

A.      It is understood that all minimum hour guarantees in this Agreement are contingent on the employee's being available for all assigned work. It is further understood that these guarantees shall not apply in the case of partial or complete shutdown resulting from strikes, or any other circumstances outlined in Article XX. B. - HOURS OF WORK.

B.      Separability.  The provisions of this Agreement are deemed to be separable to the extent that if and when, by a final judgment, a Court or Government Agency of competent jurisdiction adjudges any provision of this Agreement to be in conflict with any law, rule or regulation issued thereunder, such decision shall not affect the validity of the remaining provisions of this Agreement, but such remaining provisions shall continue in full force and effect.

It is further provided that in the event any provision, or provisions, are so declared to be in conflict with such law, rules, or regulation, both parties shall meet within thirty (30) days for the purpose of renegotiating the provision or  provisions so invalidated.  If the parties are unable to agree, the matter will be submitted to the grievance procedure.

C.      Gender Clause.  The term "employees", or any designation of either sex of employee as used in this Agreement, includes both male and female employees covered by this Agreement.  In addition, wherever in this Agreement the masculine gender is used, it will apply to the female gender as well.

D.      Construction.  The Article, Section and Paragraph headings use in this Agreement were inserted for convenience only and shall have no bearing on the construction or meaning of this Agreement.

E.      The parties agree that an important goal of this Agreement is to find ways to improve the work environment morale, communication, and productivity within the Company in order to make it a better place to work.  To assist in this effort, the parties agree to meet and confer in good faith on at least a quarterly basis in departmental labor management committees to address and attempt to resolve any and all matters the Union and Employer want to bring to this forum. These committees will consist of at least two (2) Company and (2) Union representatives, and no more than four (4) Company and four (4) Union representatives.

## ARTICLE XXIX. - LIGHT DUTY

The Company, at its discretion, may assign employees with light duty restrictions due to a work-related injury, any non- bargaining unit work which meets the employee's medical restrictions. Health and Welfare and Pension Contributions will be made on behalf of employees who perform light duty work. Other contractual benefits shall not apply.

The Company may place employees temporarily unable to work full hours due to a work related injury in their regular positions, at a restricted number of hours provided the Company is satisfied that the normal duties of such position can reasonably be performed. Such placement will be reviewed by the Company on an ongoing basis each four weeks or sooner. While performing such transitional work, employees will be eligible for Health and Welfare and all other contractual benefits.

The Company will exercise full discretion in determining whether or not modified work is considered or offered to an employee. Seniority will not be a determining factor in placing the employees on a modified work plan.

The Company will only accept and work to accommodate physical restrictions which are supported by an attending physician's statement. The employee shall be guaranteed eight (8) hours a day provided there are no medically certified restrictions.

## ARTICLE XXX. – SUCCESSORS and ASSIGNS

In the event the Company or Union is acquired by sale of assets or is merged with another entity, the Company or Union shall as a condition of such sale or merger obtain the agreement of the surviving entity to assume this collective bargaining agreement.

## ARTICLE XXXI. – THIRD PARTY OPERATORS

During the life of this agreement, the Company shall not relinquish control and management of the facility to third party operators, except in the case of a merger or acquisition involving the Company.

## ARTICLE XXXII.- SIP/401(K):

The company will offer the Union SIP 401(K) Plan and will allow employees to defer pre-tax wages to the Plan. The Company shall pay an administration fee of no more than $1.00 per participant, per month, to the Plan.

## ARTICLE XXXIII. - TERM OF AGREEMENT

This Agreement shall be in full force and effect from August 10, 2003 until September 28, 2008, and from year to year thereafter unless one of the parties to this Agreement serves written notice of its desire to amend or terminate this Agreement upon the other

party not less than sixty (60) days nor more than ninety (90) days prior to its expiration date or any anniversary thereafter.

The Union agrees that at the expiration of, and/or any extension of this Agreement, and a new Agreement cannot be reached it shall give the Company seventy-two (72) hours for the removal or handling of perishable products in storage or transit before any picketing begins.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals this _____ day of _____ 2003, by their duly authorized representatives.

SAFEWAY INC.        LOCAL 439, I.B.T.

_____        _____

1-23-04        _____

# G.M. / H.B.C. (VARIETY)
# SUPPLEMENT

## WAGES:

| Classification | Pre-9/28/00 Top Wage Rate | 9/28/00 Wage Increase[1] | 9/28/01 Wage Increase[1] | 9/28/02 Wage Increase[1] | Effective 8/10/03 Top Wage Rate | 9/28/03 Wage Increase[1] | 9/26/04 Wage Increase[1] |
|---|---|---|---|---|---|---|---|
| WAREHOUSE | $18.87 | $.50/hr | $.50/hr | $.50/hr | $19.87/hr | $.50/hr | $.50/hr |

| Classification | 9/25/05 Wage Increase[1] | 9/24/06 Wage Increase[1] | 9/30/07 Wage Increase[1] |
|---|---|---|---|
| WAREHOUSE | $.60/hr | $.50/hr | $.50/hr |

[1] - In each year of the agreement, each department may elect to divert all or a portion of the wage increases ($.50, $.50, $.50, $.50, $.50, $.60, $.50, $.50) into their pension contribution, which was applied to top rates and, where applicable, from wages.

Employees hired after the effective date of ratification of this Agreement shall be paid in accordance with the Break In Rates Schedule set forth in Exhibit A, Section 1.

Employees not at the top wage rate in their classification prior to the effective date of ratification of this Agreement shall be paid in accordance with the Break In Rates Schedule set forth in Exhibit A, Section 2.

## PENSIONS:

Effective for hours paid as of September 28, 2000, the Company shall contribute to the Western Conference of Teamsters Pension Fund, on the dates below, on behalf of each employee performing work covered by the Job Classifications listed in the "Master Agreement and\or Supplements", for each compensable hour, excluding overtime, up to the monthly 173 hour maximum for all employees covered by this agreement which include the required sixteen and one half percent (16.5%) of the basic contribution rate necessary to fund the "PEER 80" as follows:

The contribution required to provide for the Program for Enhanced Early Retirement (PEER) will not be taken into consideration for benefit accrual purposes under the Plan.

Effective 5-1-95 and continuing, the contribution for PEER LEVEL "80" must at all times be sixteen and one half percent (16.5%) of the total contribution. This rate cannot be

FOR THE IBT LOCAL 439:   FOR SAFEWAY INC.:

_____    _____

_____    _____ 1-22-04 _____

be decreased or discontinued during the life of this agreement. Any additional contributions must also provide for 16.5% to be applied to the PEER rate so that the 16.5% PEER contribution is maintained.

| Effective Date | Accrual | PEER | Total |
|---|---|---|---|
| Sept 28, 2000 | 2.36 | .38 | 2.74 |
| Sept 28, 2001 | 2.40 | .39 | 2.79 |
| Sept 28, 2002 | 2.44 | .40 | 2.84 |
| Sept 28, 2003 | 2.48 | .41 | 2.89 |
| Sept 28, 2004 | 2.53 | .41 | 2.94 |
| Sept 28, 2005 | 2.57 | .42 | 2.99 |

Effective 8-10-2003 and continuing, the pension contribution rate for all warehouses will be equalized as set forth below. Wage rates will be adjusted as needed to achieve the equalization.

| Effective Date | Accrual | PEER | Total |
|---|---|---|---|
| Aug 10, 2003 | 2.79 | .55 | 3.34 |
| Sept 28, 2003 | 2.83 | .56 | 3.39 |
| Sept 26, 2004 | 2.87 | .57 | 3.44 |
| Sept 25, 2005 | 2.91 | .58 | 3.49 |
| Sept 24, 2006 | 2.91 | .58 | 3.49 |
| Sept 30, 2007 | 2.91 | .58 | 3.49 |

The Company shall pay on all straight time hours up to a maximum of 2080 hours per year.

The parties agree to abide by the rules and regulations promulgated by the Trustees of the Western Conference of Teamsters Pension Trust Fund.

If the Company chooses to do so, the pension contribution may be made on a four 4) week, four (4) week, and five (5) week basis (one hundred sixty (160) hour, two hundred (200) hour basis).

The Company agrees that the Union may, at its option, divert monies from scheduled wage increases into the pension contribution upon a vote of the affected employees.

- 32 -

FOR THE IBT LOCAL 439:   FOR SAFEWAY INC.:

_____

_____

contributions must also provide for 16.5% to be applied to the PEER rate so that the 16.5% PEER contribution is maintained.

| Effective Date | Accrual | PEER | Total |
|---|---|---|---|
| Sept 28, 2000 | 2.36 | .38 | 2.74 |
| Sept 28, 2001 | 2.40 | .39 | 2.79 |
| Sept 28, 2002 | 2.44 | .40 | 2.84 |
| Sept 28, 2003 | 2.48 | .41 | 2.89 |
| Sept 28, 2004 | 2.53 | .41 | 2.94 |
| Sept 28, 2005 | 2.57 | .42 | 2.99 |

Effective 8-10-2003 and continuing, the pension contribution rate for employees in the CRT department will be as set forth below notwithstanding wages diverted into pension.

| Effective Date | Accrual | PEER | Total |
|---|---|---|---|
| Aug 10, 2003 | 2.58 | .51 | 3.09 |
| Sept 28, 2003 | 2.62 | .52 | 3.14 |
| Sept 26, 2004 | 2.66 | .53 | 3.19 |
| Sept 25, 2005 | 2.71 | .53 | 3.24 |
| Sept 24, 2006 | 2.75 | .54 | 3.24 |
| Sept 30, 2007 | 2.79 | .55 | 3.24 |

The Company shall pay on all straight time hours up to a maximum of 2080 hours per year.

The parties agree to abide by the rules and regulations promulgated by the Trustees of the Western Conference of Teamsters Pension Trust Fund.

If the Company chooses to do so, the pension contribution may be made on a four 4) week, four (4) week, and five (5) week basis (one hundred sixty (160) hour, two hundred (200) hour basis).

**LETTER AGREEMENT 9**

**WORKERS COMPENSATION**

September 14, 2001

Mr. Sam Rosas
Secretary – Treasurer
Teamsters Local Union 439
P.O. Box 1611
Stockton, CA  95202

    Re:   Clarification of Summit Logistics Workers Compensation Policy

Dear Mr. Rosas:

Pursuant to the November 29, 2000 Memorandum of Changes between Sumimit Logistics and Local 439, please accept this letter as clarification of Summit's works' compensation policy.

(1)    If an employee leaves work to seek care or evaluation by the Company's designated doctor for a work injury and returns to work the day of the injury or at the start of the next scheduled regular or light duty shift, the employee will be compensated for actual work time lost up to the number of hours of the employee's regular shift (*i.e.* 8 or 10 hours).

(2)    If an employee leaves work to seek care or evaluation by the Company's designated doctor for an injury which is determined to require time away from work (*i.e.* the employee cannot return to work by the next scheduled shift).  The three (3) day state-mandated waiting period must run before the employee is eligible to receive workers' compensation temporary disability wage benefits. The Company will not separately reimburse the employee in these circumstances.

(3)    Employees are not reimbursed by the Company for non-work time that is spent by the employee in pursuit of doctor's care or evaluation such as, on a day off, after or before their shift, when otherwise off work for any reason, where a claim has already been filed, or where the purpose of the care or evaluation is to follow-up earlier care or evaluation.

(4)    Employees who are required to submit to for cause or post accident drug testing are made whole for actual work time lost up to the number of hours of the employee's regular shift (*i.e.* 8 or 10 hours) where the tests are found to be "normal".  Where tests are found to be "abnormal", an employee will be returned to work only after he or she furnishes proof that a legal prescription was taken. No lost time will be paid in this instance.

-86-

## LETTER AGREEMENT 10
### NEW HIRE PENSION CONTRIBUTION RATE AND START RATE

Teamsters Local No. 439 and Summit Logistics Inc. hereby agree to the following modifications of the collective bargaining agreement. Such changes are necessary so that the pension language in the collective bargaining agreement conforms to the contribution guidelines established by the Western Conference of Teamsters Pension Trust:

1.    After ninety (90) days of employment, the employee pension contribution rate will increase from 10¢ per hour to the full contractual rate in effect.

2.    For employees hired after the effective date of this Letter of Agreement, the $13.50 per hour start rate will increase to $14.00 after 1500 hours. Any person in the employ of Summit prior to the effective date of this Letter of Agreement will move to the $14.00 per hour rate after 1049 hours.

3.    This Agreement will be effective seven (7) days following the date it is signed. The Company will retroactively apply the ninety (90) day period for increase in pension contributions contained in number 1 above to the original effective date of the collective bargaining agreement.

TEAMSTERS LOCAL NO. 439

Sam Rosas
Secretary Treasurer

Date: ___17. -10 - 03___

1 - 23 - 04

Safeway, Inc.


Summit Logistics, INC.


Guy Langlais
Regional Director of Human Resources

Date: _____

- 88 -

## LETTER OF AGREEMENT 11

LETTER OF AGREEMENT BETWEEN
SAFEWAY INC. AND TEAMSTERS LOCAL UNION 439

## HEALTH AND WELFARE

The Health and Welfare language contained in Article XVII of the September 28, 2000 – September 27, 2006 CBA between Summit Logistics Inc. and IBT 439 shall be suspended until 12:01am on September 28, 2008. At that time, the language contained in Article XVII will become the collectively bargained language regarding Health and Welfare between the Safeway, Inc. and Local 439. In the interim the parties agree to the following language:

Effective September 1, 2003 eligible employees shall move to Teamster Benefit Trust Plan 1-A. The employer agrees to make the required contributions established by the Trustees of Plan 1-A to maintain the package of benefits on behalf of each eligible employee in effect on September 1, 2003.

### Acceptance of Trust

The parties hereby accept the written rules and Trust Agreement of the Trust. By acceptance of the Trust Agreement the Union and Employer agree to be bound by the provisions of the Trust and shall execute such documents as are required by the Trust for participation in said Trust.

### Eligibility

The employer agrees to make the required contribution for the current month on behalf of each employee who has worked or who has been paid for eighty (80) hours or more in the preceding calendar month. Time paid for, but not worked, shall be considered time worked for the purpose of this article. Specific eligibility for coverage shall be in compliance with the Trust rules for eligibility.

If a part-time employee works or is paid less than eighty (80) hours in any month, the employee's health and welfare shall be pro-rated and paid to the employee at the end of the month for all hours worked at the rate of the monthly contribution divided by 173 which determines the hourly rate. The pro-ration outlined herein does not apply to probationary employees.

### Posting

The monthly Health and Welfare report shall be posted on department bulletin boards by the employer.

### Due Date

The employer shall make monthly contributions to the Fund as designated by the Trustees between the first and tenth of the month in which said contributions are due.

Contributions

The contribution rate of Teamsters Benefit Trust Plan 1-A effective January 1, 2003 per month ($683.00) shall be continued. If there are further increases needed to maintain the plan of benefits during the life of the agreement, the company will pay the necessary increase to maintain the level of benefits. The above contributions constitute the Employer's sole obligations for providing Health and Welfare benefits for employees covered by this Agreement.

The parties hereby affirm their continuing understanding that, by mutual agreement, the parties may withdraw from the existing Trust Fund and place eligible active and retired employees in any mutually agreeable benefit plan for the purpose of providing a comparable level of benefits.

Retiree Benefits

The Board of Trustees has the exclusive right to determine the plan of benefits and eligibility rules covering retirees and their dependents.

1.    The Board of Trustees, in their sole discretion, will arrange for a plan of retiree health and welfare benefits. The Trustees shall have the right in their sole discretion to modify the structure of the said plan.

2.    Effective with December 1988 contribution (based on November 1988 hours) a maximum of twenty-five ($25.00) shall be allocated from each active participant's health and welfare contribution rate to provide benefits for eligible retirees and their eligible dependents. The above amount constitutes the Employer's sole obligation to fund Retiree benefits during the term of this Agreement.

3.    Should the cost of the plan of benefits exceed the amount allocated for this purpose, then the Trustee must, in their sole discretion adjust benefits accordingly and/or provide for co-payments from the retiree to support the Retiree Plan.

In the event the Trustees take action which makes Retiree benefits moot, then it shall be deleted from the contract.

_____          _____ Kurt Steinhoff
Sam Rosas – Secretary / Treasurer                          Labor Relations Manager
                                 John Flanigan – V.P., Logistics

Date: 12-10-03                   Date: 1-23-04

# EXHIBIT 2

SAFEWAY ()

April 14, 2008

Barbara Bridgewater J.D.          CERTIFIED MAIL  7003 3110 0003 3448 9895
2116 Eighth Street
Berkeley, CA 94710-2352

Ed Speckman                       CERTIFIED MAIL  7003 3110 0003 3448 9888
Teamsters Local 439
1531 East Fremont Street
Stockton, CA 95201

Dear Ms. Bridgewater:

Please be advised that consistent with Article XXVI- General Grievance Procedure Section A
of the August 10, 2003 Agreement between Safeway Inc. and Local 439 of the International
Brotherhood of Teamsters which reads in part:

> "Once each twelve (12) month period, either party may remove the arbitrator and
> request that a new arbitrator be chosen."

Safeway is exercising its unilateral contractual right to have you immediately removed as
arbitrator at the Board of Adjustment step of the grievance procedure. Please be advised that
all future hearing dates scheduled with you are hereby cancelled.

By copy of this letter to Teamsters Local 439, Safeway Inc hereby also notifies Teamsters
Local 439 of the termination of your employment as arbitrator and requests consistent with
Article XXVI- General Grievance Procedure Section A that my office be contacted to
immediately seek a replacement either by mutual agreement or through the use of the
alternating method utilizing a list from FMCS.

Sincerely Yours,
SAFEWAY INC

Carl E. Rammitz
Director Labor Relations
Northern California Division

cc:  Doug Ruygrok
     Dave Fabela
     Ben Ploshay

Safeway Inc.
Northern California Division
5918 Stoneridge Mall Road
Pleasanton, CA 94588-3229

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Barbara Bridgewater J.D.
2116 Eighth Street
Berkeley, CA 94710-2352

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

☐ Agent
☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
B BRIDGEWATER  4/17/08

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)    7003 3110 0003 3448 9895

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540



UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-40

• Sender: Please print your name, address, and ZIP+4 in this box •

SAFEWAY INC
NORCAL LABOR RELATIONS
5918 STONERIDGE MALL ROAD
PLEASANTON, CA 94588

NOR CAL
APR 22 2008
LABOR RELATIONS

L439 - Speckman/Bridgewater

B225

# EXHIBIT 3

STEWART WEINBERG
DAVID A. ROSENFELD
WILLIAM A. SOKOL
VINCENT A. HARRINGTON, JR.
W. DANIEL BOONE
BLYTHE MICKELSON
BARRY E. HINKLE
JAMES RUTKOWSKI ∗
SANDRA RAE BENSON
CHRISTIAN L. RAISNER
JAMES J. WESSER
THEODORE FRANKLIN
ANTONIO RUIZ
MATTHEW J. GAUGER
ASHLEY K. IKEDA ∗∗
LINDA BALDWIN JONES
PATRICIA A. DAVIS
ALAN G. CROWLEY
J. FÉLIX DE LA TORRE
KRISTINA L. HILLMAN ∗∗∗
ANDREA LaIACONA
EMILY P. RICH

# WEINBERG, ROGER & ROSENFELD
A PROFESSIONAL CORPORATION

1001 Marina Village Parkway, Suite 200
Alameda, CA 94501-1091
TELEPHONE 510.337.1001
FAX 510.337.1023

LORI K. AQUINO ∗∗
ANNE I. YEN
NICOLE M. PHILLIPS
BRUCE A. HARLAND
CONCEPCIÓN E. LOZANO-BATISTA
CAREN P. SENCER
LINELLE G. MOGADO
MANJARI CHAWLA
KRISTINA M. ZINNEN
JANNAH V. MANANSALA
MANUEL A. BOIGUES ∗∗∗∗
KERIANNE R. STEELE
ANA M. GALLEGOS
GARY P. PROVENCHER

PATRICIA M. GATES, Of Counsel
ROBERTA D. PERKINS, Of Counsel

∗ Also admitted in Arizona
∗∗ Admitted in Hawaii
∗∗∗ Also admitted in Nevada
∗∗∗∗ Also admitted in Illinois

April 24, 2008

Barbara Bridgewater
Arbitrator
2116 8th Street
Berkeley, CA  94710

Re:    Safeway

Dear Ms. Bridgewater:

I am writing this letter to you on behalf of Teamsters Local 439 and in response to the letter Carl Ramnitz sent you dated April 14.

The Union objects to the position taken by Safeway.   The language of the contract of which you have provided a copy provides that each chosen arbitrator is to serve for a 12 month period.  At the end of that 12 month period the party then has a right to remove an arbitrator.  No other construction of the language makes any sense.  You have not served your full 12 months and the union insists that you continue to serve.  The union insists that the dates which you have offered be used and the union will make arrangements for hearings to be held.  If Safeway chooses not to show up we ask that you proceed in their absence.  See Toyota Berkley v. Automobile Sales Man's Union Local 1095, 834 F.2d 751 (9th Cir. 1987) (Affirming arbitration award of arbitrator who was selected by the parties even though employer chose not to show up).  We ask that you maintain the integrity of the agreement in your selection of the arbitrator.

Sincerely,

*David A. Rosenfeld/kts*

David A. Rosenfeld

DAR/kts
opeiu 3 afl-cio(1)

cc:    Carl E. Ramnitz
        Christian Rowley

LOS ANGELES OFFICE
3435 Wilshire Boulevard, Suite 620
Los Angeles, CA  90010-1907
TEL 213.380.2344 FAX 213.381.1088

SACRAMENTO OFFICE
428 J Street, Suite 520
Sacramento, CA  95814-2341
TEL 916.443.6600 FAX 916.442.0244

HONOLULU OFFICE
1099 Alakea Street, Suite 1602
Honolulu, HI  96813-4500
TEL 808.528.8880 FAX 808.528.8881

# EXHIBIT 4

STEWART WEINBERG
DAVID A. ROSENFELD
WILLIAM A. SOKOL
VINCENT A. HARRINGTON, JR.
W. DANIEL BOONE
BLYTHE MICKELSON
BARRY E. HINKLE
JAMES RUTKOWSKI
SANDRA RAE BENSON
CHRISTIAN L. RAISNER
JAMES J. WESSER
THEODORE FRANKLIN
ANTONIO RUIZ
MATTHEW J. GAUGER
ASHLEY K. IKEDA ••
LINDA BALDWIN JONES
PATRICIA A. DAVIS
ALAN G. CROWLEY
J. FELIX DE LA TORRE
KRISTINA L. HILLMAN •••
ANDREA LAIACONA
EMILY P. RICH

**WEINBERG, ROGER & ROSENFELD**

A PROFESSIONAL CORPORATION

1001 Marina Village Parkway, Suite 200
Alameda, CA 94501-1091
TELEPHONE 510.337.1001
FAX 510.337.1023

LORI K. AQUINO ••
ANNE I. YEN
NICOLE N. PHILLIPS
BRUCE A. HARLAND
CONCEPCIÓN E. LOZANO-BATISTA
CAREN P. SENCER
LINELLE E. MOGADO
MANJARI CHAWLA
KRISTINA M. ZINNEN
JANNAH V. MANANSALA
MANUEL A. BOIGUES ••••
KERIANNE R. STEELE
ANA M. GALLEGOS
GARY P. PROVENCHER

PATRICIA M. GATES, Of Counsel
ROBERTA D. PERKINS, Of Counsel

• Also admitted in Arizona
•• Admitted in Hawaii
••• Also admitted in Nevada
•••• Also admitted in Illinois

May 5, 2008

Barbara Bridgewater
Arbitrator
2116 8th Street
Berkeley, CA 94710

Re:    Status as Arbitrator

Dear Ms. Bridgewater:

I am enclosing for your assistance two decisions of the Ninth Circuit. You will note in Toyota Berkley v. Automobile Salesmen's Union, 834 F.2d 751 (9th Cir. 1987), the court expressly affirmed the right of an arbitrator to proceed *ex parte* where the arbitrator had been chosen by the parties. This was re-affirmed later in New England Mechanical Inc. v. Laborers Local 294, 909 F. 2d 1339 (9th Cir. 1990) at footnote 5.

This grievance procedure was designed to allow these grievances to process promptly. Safeway's tactic of attempting to discharge you will likely mean that there will be no resolution of these grievances for a long time. The contract envisions that you will serve a year. The Union asks that you respect that decision. You cannot allow one party to terminate you. Court authority makes it plain that you have the right to proceed even if Safeway chooses not to show up.

Sincerely,

*David A. Rosenfeld/kts*

David A. Rosenfeld

DAR/kts
opeiu 3 afl-cio(1)

Enclosures

Cc: Christian Rowley

LOS ANGELES OFFICE
3435 Wilshire Boulevard, Suite 620
Los Angeles, CA 90010-1907
TEL 213.380.2344 FAX 213.381.1088

SACRAMENTO OFFICE
428 J Street, Suite 520
Sacramento, CA 95814-2341
TEL 916.443.6600 FAX 916.442.0244

HONOLULU OFFICE
1099 Alakea Street, Suite 1602
Honolulu, HI 96813-4500
TEL 808.528.8880 FAX 808.528.8881

# EXHIBIT 5



# GENERAL TEAMSTERS LOCAL No. 439
### *Affiliated With The International Brotherhood of Teamsters*

Sam Rosas, Secretary-Treasurer

April 25, 2008

**Officers**

Phil Rushing
President

Gabriel Salcido
Vice President

Bryon Beffa
Recording
Secretary

*Via Fax (209) 833-4727*
*Via First Class Mail*

**Trustees**

Chuck Tryon

Sal Muñoz

Daniel Lee

Ben Ploshay
Safeway Stores
16900 W. Schulte Rd
Tracy, Ca 95377

RE: Arbitration Line UP- May 22, 2008

1. Failure to comply-C.P.S
2. Alfredo Aguirre-Termination
3. Jose Rosales- Termination
4. Alex Zapeda- Termination
5. Miguel Rosas – Termination
6. Rick Miller - Termination

If you have any questions, please contact me at (209)948-9592 X 107.

SINCERELY,
SAM ROSAS
SECRETARY TREASURER

By: **Ed Speckman**
    Business Representative

# EXHIBIT 6



560 Mission Street, Suite 3100

San Francisco, California 94105

(415) 397-2823

fax (415) 397-8549

www.seyfarth.com

(415) 544-1001

crowley@seyfarth.com

May 2, 2008

Barbara Bridgewater, Arbitrator
2116 8th Street
Berkeley, CA 94710

   Re: IBT Local 439 - Safeway

Dear Ms. Bridgewater:

   We represent Safeway and are writing in response to Mr. Rosenfeld's letter to you of April 24, 2008. As you know, Safeway has terminated your appointment as the arbitrator under the current collective bargaining agreement between Local 439 and Safeway.

   Article XVI of the Local 439 contract (page 22, ¶ 1) reads in relevant part "once each twelve (12) month period, either party may remove the arbitrator and request that a new arbitrator is chosen. If the parties cannot mutually agree on the selection of a new arbitrator, the arbitrator will be selected using the alternating selection method indicated above. ..."

   Consequently, Safeway believes that you have no further authority to act as an arbitrator between it and Local 439. If you intend to continue to hear cases, as Mr. Rosenfeld suggests, please advise the parties of that fact immediately so that Safeway can take appropriate legal action.

   We look forward to hearing from you.

      Sincerely yours,

      SEYFARTH SHAW LLP

      Christian J. Rowley

CJR/lmf
cc: David Rosenfeld
   Carl Ramnitz

SF1 28322295.1 / 35977-000036

# EXHIBIT 7



ATTORNEYS

560 Mission Street, Suite 3100

San Francisco, California 94105

(415) 397-2823

fax (415) 397-8549

www.seyfarth.com

Writer's direct phone

(415) 544-1001

Writer's e-mail

crowley@seyfarth.com

May 9, 2008

Barbara Bridgewater, Arbitrator
2116 8th Street
Berkeley, CA 94710

     Re:   *Safeway/Local 439*

Dear Arbitrator Bridgewater:

     We received your letter of May 8, 2008. To make the record clear, Safeway was not submitting to you the issue of whether you have the authority to decide whether you were properly terminated pursuant to the parties' collective bargaining agreement. Rather, Safeway was advising you again that you had been terminated and was inquiring as to whether you intended to honor that termination. We understand from your May 8 letter, that you plan to continue to hear cases over Safeway's objection, and we will take appropriate action.

     Sincerely yours,

     SEYFARTH SHAW LLP

     Christian J. Rowley

CJR/lmf

cc:   David Rosenfeld
      Carl Ramnitz

ATLANTA  BOSTON  CHICAGO  HOUSTON  LOS ANGELES  NEW YORK  SACRAMENTO  SAN FRANCISCO  WASHINGTON, D.C.  BRUSSELS

# EXHIBIT 8



**SEYFARTH**
**ATTORNEYS SHAW** LLP

560 Mission Street, Suite 3100
San Francisco, California 94105
(415) 397-2823
fax (415) 397-8549
www.seyfarth.com

Writer's direct phone
(415) 544-1001

Writer's e-mail
jconley@seyfarth.com

May 19, 2008

OVERNIGHT MAIL

Barbara Bridgewater, Arbitrator
2116 8th Street
Berkeley, CA 94710

    Re:   *Safeway/Local 439*

Dear Arbitrator Bridgewater:

    I am writing regarding the hearing currently scheduled for May 22, 2008 with respect to Local 439's grievance over the terms of the settlement agreement related to the CPS warehouse ("Settlement Agreement Grievance"). To reiterate, Safeway objects to your hearing and deciding the Settlement Agreement Grievance because: (1) you do not have jurisdiction to hear the grievance given that Safeway has terminated your service as arbitrator pursuant to its rights under the parties' CBA; and (2) the dispute is not substantively arbitrable.

    With respect to your termination as arbitrator, Safeway had the clear right to terminate you. Article XXVI of the CBA states that: "[o]nce each twelve (12) month period, either party may remove the arbitrator and request that a new arbitrator is chosen." By the express terms of the CBA there is no limitation whatsoever on when within the twelve (12) month period such removal may occur. An arbitrator may be removed at any time and for any reason in a party's discretion therein. After Safeway notified you of your termination, Local 439 objected. You then issued what appears to be a written decision dated May 7, 2008, in which you concluded that you may continue to hear cases and that you will hear the Settlement Agreement Grievance on May 22.

    Let me be clear, Safeway did not submit the issue of your termination to you for decision. It simply notified you of your termination. Because you have been terminated, you do not have jurisdiction under the CBA to take any further action with respect to any matter thereunder regarding Safeway and Local 439. You therefore can make no ruling with respect to the merits of the CPS West Settlement Agreement Grievance as well as any and all other grievances between Safeway and Local 439, including all discharge and other cases you set for May 22 and thereafter. Nor do you have the authority to decide your own jurisdiction to hear disputes; and, again, Safeway objects to your purporting to do so.

BRUSSELS   WASHINGTON, D.C.   SAN FRANCISCO   SACRAMENTO   NEW YORK   LOS ANGELES   HOUSTON   CHICAGO   BOSTON   ATLANTA



Despite the foregoing, you have indicated that you will hear cases on May 22 even in Safeway's absence. Your decision to go forward has given Safeway little choice but to appear on May 22. Our appearance, however, and any position we may take in that proceeding, is not a waiver of (and does not waive) our position that you do not have the authority to decide the CPS West or any other dispute under the CBA. We hereby expressly reserve Safeway's right to bring the issue of your jurisdiction before a federal court. Accordingly, we intend to file an action under Section 301 of the Labor Management Relations Act and Sections 4 and 5 of the Federal Arbitration Act to require Local 439 to select a new arbitrator under the provisions of the CBA and for the court to declare that you do not have jurisdiction over the dispute that you are hearing on May 22 and/or on any future date. We also will seek to vacate any decisions that you issue.

With respect to the substantive arbitrability of the Settlement Agreement Grievance, we understand that you have purported to decide that issue and have found that the dispute is arbitrable under the parties' CBA. To summarize and reiterate Safeway's prior objections on that point, the Settlement Agreement Grievance is substantively inarbitrable for reasons that Safeway made clear at the original hearing.

Safeway made these arguments and objected to your hearing of the substantive arbitrability issue at the earlier proceeding and hereby reiterates those arguments and objections. As Safeway informed you at hearing, you had no authority to decide that issue or hear the merits of this case. Instead, the substantive arbitrability of this dispute is a question likewise for a court.

As I mentioned above, however, your apparently inalterable position has given Safeway little choice but to appear before you on May 22. By appearing and, if made necessary by your continuing position to date, addressing the merits of the case or any other case you claim to hear on May 22 or thereafter, however, Safeway hereby expressly preserves and does not waive its right to have a federal court decide the substantive arbitrability question and/or your right to serve as arbitrator over Safeway's objection by ultimately petitioning to vacate your award, or any other rights that Safeway may possess.

With that in mind, Safeway requests that you postpone the May 22 hearing in totality to give the Court time to address our legal action and, as to the CPS West matter, because a key witness will be unavailable. Paul Kenney was the Local 630 lead negotiator as to the CPS West agreement, and he will testify if subpoenaed for a different date. However, he is unavailable to testify on May 22 as evidenced by the attached letter received by Mr. Ruygrok.

Sincerely yours,

SEYFARTH SHAW LLP

Christian J. Rowley

cc:    David Rosenfeld



Carl Ramnitz

# EXHIBIT B

1

2  SEYFARTH SHAW LLP
   Christian J. Rowley (SBN 187293)
3    (crowley@seyfarth.com)
   560 Mission Street, Suite 3100
4  San Francisco, CA 94105
   Telephone: (310) 277-7200
5  Facsimile: (310) 201-5219

6  Attorneys for Respondent
   SAFEWAY, INC.

7

8

9

10                    UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12  INTERNATIONAL BROTHERHOOD OF        )  Case No. C08-02536-JL-ADR
    TEAMSTERS, LOCAL 439,               )
13                                      )  **DECLARATION OF DOUG RUYGROK**
                  Petitioner,           )
14                                      )
                                        )
15       v.                             )
                                        )
16  Safeway, Inc.,                      )
                                        )
17                Respondent.           )
                                        )
    _____)

18
        I, Doug Ruygrok, hereby state under the pains and penalty of perjury that:
19

20          1.  I am more than 18 years of age and am competent to make this declaration.  I

21  make this declaration based on my personal knowledge, information, and belief.

22          2.  I am currently employed as Safeway Inc.'s Director of Labor Relations,

23  Distribution & Supply.  In that position, I have knowledge of, and am one of the people

24  responsible for, labor relations at Safeway Inc.'s Distribution Center located in Tracy,

25  California at 16900 West Schulte Road, 95377 ("Distribution Center").  In that capacity, I

26  sometimes work at the Distribution Center.

27

28                                  - 1 -
                  DECLARATION OF DOUG RUYGROK, CASE NO. C08-02536-JL-ADR

SF1 28325541.1 / 35977-000110

1

2

3

4

5

6

7

 3. The International Brotherhood of Teamsters, Local 439 ("Union") is the collective bargaining representative for approximately 1,624 warehouse employees and drivers employed by Safeway at the Distribution Center and who are all covered by the Agreement Between Safeway, Inc. and Local 439 International Brotherhood of Teamsters Chauffeurs, Warehousemen, and Helpers of America, August 10, 2003 through September 27, 2008 ("CBA").

8

9

10

11

 4. The Union and the Food, Industrial & Beverage Warehouse, Drivers and Clerical Employees, Local 630 ("Local 630") filed grievances alleging that Safeway had transferred bargaining unit work to Safeway's distribution center located in West Sacramento, California ("CPS-West"). *See* Exhibits 1 and 2.

12

13

 5. Safeway denied those grievances.

14

15

16

 6. In the interest of resolving the disputes, however, Safeway, Local 630, and the Union entered into a settlement over the grievance ("CPS-West settlement agreement"). *See* Exhibit 3.

17

18

19

 7. Although the Union is signatory to the settlement agreement, the Union excused itself from settlement negotiations due to other commitments and did not participate in the final settlement discussions or the actual drafting of the settlement agreement.

20

21

22

 8. Instead, Local 630's attorney, Ralph Phillips, and I drafted and finalized the settlement agreement.

23

24

25

26

 9. In pertinent part, the CPS-West settlement agreement sets forth that Local 630 will represent the CPS-West workforce and that the collective bargaining agreement between Safeway and Local 630, which covers Safeway's Vons warehouse in Southern California ("Vons Warehouse"), would apply to CPS-West. *See* Exhibit 3 at ¶ 2.

27

28

SF1 28325541.1 / 35977-000110

10. Paragraph 3 of the settlement agreement further provides that employees from Local 630's and the Union's bargaining units who were "disadvantaged" by the alleged transfer of work to CPS-West would have an opportunity to transfer into CPS-West. *See* Exhibit 3 at ¶ 3.

11. As discussed at the time the settlement agreement was drafted and finalized, the definition of "disadvantaged" employees is limited to employees: (1) who worked in the allegedly affected departments, *i.e.*, Local 630 bargaining unit members working in the Variety and Grocery departments in the Vons Warehouse and Union bargaining unit members working in the Variety department in the Distribution Center in Tracy; and (2) who were laid off or who received reduced hours or classification as a result of the alleged transfer of work to CPS-West.

12. Additionally, the parties explicitly discussed and agreed that the definition of "disadvantaged" was not to include Local 630 or Union bargaining unit members who did not gain overtime opportunities or an elevated position on the seniority list as a result of the alleged transfer of work to CPS-West.

13. The Vons Warehouse experienced a layoff, and four Local 630 bargaining unit members from the affected departments applied for transfer to CPS-West under the CPS-West settlement agreement.

14. The Distribution Center in Tracy, however, did not experience a lay off or reduction in hours or classifications. Thus, no Union bargaining unit members could demonstrate they were "disadvantaged" as that term is defined in the CPS-West settlement agreement. Nonetheless, the Union claims that 48 of its bargaining unit members working at the Distribution Center were entitled to transfer under the terms of the CPS-West settlement agreement.

- 3 -

SFI 28325541.1 / 35977-000110

03/29/2007  12:48    2099483424    TEAMSTERS 439    PAGE  01/01



# GENERAL TEAMSTERS LOCAL No. 439
*Affiliated With The International Brotherhood of Teamsters*

Sam Rosas, Secretary-Treasurer

March 29, 2007

**Officers**

Phil Rushing
President

Gabriel Salcido
Vice President

Bryon Beffa
Recording
Secretary

**Trustees**

Chuck Tryon

Sal Muñoz

Daniel Lee

*Via Fax (209) 833-4727*
*Via Us Mail*

Ben Ploshay
Safeway Stores
16900 W. Schulte Rd
Tracy, Ca 95377

RE:    **Subcontract Diversion of Unit Work**
       **C.P.S./NFI Sacramento**
       **Union Grievance**

Dear Ben,

Consider this a grievance against Safeway.

The Company has violated Articles that include <u>but are not limited to</u>:

|   |   |   |
|---|---|---|
| * | Article I | Bargaining Unit |
| * | Article II | Employees Covered |
| * | Article X | Maintenance of more favorable conditions. |
| * | Article XXX | Successors and Assigns |
| * | Article XXXI | Third party Operators |
| * | Exhibit B | New Work |

In bad faith, the Company subcontracted/diverted work performed and expected to perform away from the bargaining unit.

The Union demands to be made whole.

SINCERELY,
SAM ROSAS
SECRETARY TREASURER

By: <u>Ed Speckman</u>
Business Representative

CC:    Sam Rosas          Armando Alonzo          Pablo Barrera
       Pablo Barrera      Joe Tauriac

# EXHIBIT 2

TEAMSTERS LOCAL UNION NO. 630

DATE: 10-25-06

COMPANY: Von's    DIVISION: _____

EMPLOYEE'S NAME: Angel Zepeda

SOCIAL SECURITY NUMBER: 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

EMPLOYEE'S ADDRESS: 16230 StoneHill CT

CITY, STATE, ZIP CODE: Riverside Ca 92503

TELEPHONE: 951 235-1337

NATURE OF GRIEVANCE:    (USE REVERSE SIDE IF NECESSARY)

BeHalf of All teamster Employees
I am Fileing Grievance on
BARgaining work going to C.P.S
WAreHouse

EMPLOYEE'S SIGNATURE _____

Recd on 10-25-06 _____

# EXHIBIT 3

P.02                          X86                                15:12  8002-10-83F

FROM :Teamsters Local150          FAX NO. :9163927675        Feb. 01 2008 03:05PM P2

02/01/2008  11:32   2899483424          TEAMSTERS 439              PAGE  02/03

RECEIVED
FEB 0 1 2008
LOCAL 630

RECEIVED
FEB 0 1 2008
LOCAL 630

## SETTLEMENT AGREEMENT

This Settlement Agreement is by and between Food, Industrial & Beverage Warehouse, Drivers and Clerical Employees, Local 630, International Brotherhood of Teamsters ("Local 630"), General Teamsters Local 439, International Brotherhood of Teamsters ("Local 439") and Safeway Inc. ("Company") with respect to grievances filed by each Local over the Company's alleged transfer of bargaining unit work to a distribution center owned by the Company and known as CPS-West ("CPS"), located in West Sacramento, California.

WHEREAS, each of the above-named Locals is party to a collective bargaining agreement with the Company and/or its Southern California Division, and

WHEREAS, each of the above-named Locals has grieved the Company's transfer of certain bargaining unit work to CPS, and

WHEREAS, CPS is a distribution center which is currently operated by a third party, NFI, which employs a non-union workforce, and

WHEREAS, the parties have met and discussed the issues raised by each grievance at length and have reached a settlement of all outstanding issues raised by the grievances,

THEREFORE, the parties agree as follows:

1.     The Company will, within ninety (90) days of the signing of this Settlement Agreement, buy out the remaining portion of its contract for the operation of CPS with NFI and assume direct control over the operations at CPS, including direction of the workforce. The Company may retain current warehouse employers at its discretion.

2.     Upon assuming control of the CPS facility, the Company agrees the warehouse work being done at that facility, including work the Company maintains is not and has never been covered work, will be work covered by the Southern California Food Industry Warehouse collective bargaining agreement ("CBA") between the Company and Local 630. For purposes of enforcing the terms of this Settlement Agreement, Local 630 will immediately be provided access to the CPS facility. Upon a showing of interest, the Company will recognize Local 630 as the exclusive bargaining agent for warehouse employees at CPS and will continue to operate the facility under the terms of the CBA with Local 630, subject to certain modifications concerning Health and Welfare, to be provided by Local 630 (as previously described during discussions between the parties), for its term, i.e., until September 19, 2010. Thereafter, the Company agrees to recognize any Teamster Local to whom jurisdiction is granted pursuant to IBT procedures.

96%    FEB-01-2008 15:12    TOTAL P.
P

ROM :Teamsters Local150        FAX NO. :9163927675        Feb. 01 2008 03:05PM P3

02/01/2008  11:32    2899403424        TEAMSTERS 439        PAGE 03/03
TOTAL P.008

RECEIVED

FEB 0 1 2008

LOCAL 630
TOTAL P.003

3.    Upon assuming control of the CPS facility, the Company agrees to provide a window period of adequate length (undefined at this time) in which Company employees covered by collective bargaining agreements with Locals 630 and 439 who may have been disadvantaged by the transfer of work to CPS will be permitted to transfer, with their seniority, to the CPS facility. Any employee who elects to transfer will be permitted to return to their original facility, with their seniority, within ninety (90) days of transfer. No further transfers will be required.

4.    This Settlement Agreement resolves all outstanding issues between the parties over the Company's alleged transfer of warehouse bargaining unit work to CPS. No payment of back pay, back dues, or other monetary damages is required.

This Settlement Agreement is effective and binding on the parties upon the date signed below.

Dated: 1 / 31 / 2008

_signature_
Paul A. Kenny, Secretary Treasurer
Teamsters Local 630

_signature_
Sam Rojas, Secretary Treasurer
Teamsters Local 439

_signature_
Jim Tobin, Secretary Treasurer
Teamsters Local 150

_signature_  2/1/08
Douglas Ruygrok, Director Labor Relations
Safeway Inc.

RECEIVED

FEB 0 1 2008

LOCAL 630

# EXHIBIT 4



# GENERAL TEAMSTERS LOCAL No. 439
*Affiliated With The International Brotherhood of Teamsters*

Sam Rosas, Secretary-Treasurer

Officers

Phil Rushing
President

Gabriel Salcido
Vice President

Bryon Beffa
Recording
Secretary

Trustees

Chuck Tryon

Sal Muñoz

Daniel Lee

April 1, 2008

Via Fax:  209-833-4727
Via Certified Mail: 7001 1140 0001 4423 9719

Ben Ploshay
Safeway Distribution Center
16900 W Schulte Rd
Tracy, Ca  95377

Re:  Failure to Comply C.P.S. – Grievance Settlement Demand to Arbitrate

Dear Ben:

Consider this a demand to Arbitrate.  Safeway has failed to comply with the terms of settlement relating to Local 439 C.P.S. grievance against Safeway.

The Union demands all affected to be made whole.

Sincerely,

Sam Rosas
Secretary-Treasurer

By:  Edward Speckman
Business Representative

Cc:    Sam Rosas

# EXHIBIT C

1 SEYFARTH SHAW LLP
  Christian J. Rowley (SBN 187293)
2  (crowley@seyfarth.com)
  560 Mission Street, Suite 3100
3 San Francisco, CA 94105
  Telephone: (310) 277-7200
4 Facsimile: (310) 201-5219

5 Attorneys for Respondent
  SAFEWAY, INC.
6

7

8

9       UNITED STATES DISTRICT COURT

10      NORTHERN DISTRICT OF CALIFORNIA

11 INTERNATIONAL BROTHERHOOD OF  ) Case No. C08-02536-JL-ADR
  TEAMSTERS, LOCAL 439,      )
12               ) **DECLARATION OF CHRISTIAN**
       Petitioner,     ) **ROWLEY**
13               )
   v.            )
14               )
  Safeway, Inc.,        )
15               )
       Respondent.   )
16 _____)

17

18    I, Christian J. Rowley, declare:

19

20    1. I am an attorney at law licensed to practice before all Courts of the State of

California, the United States District Court for the Northern District of California, and the

United States District Court for the Eastern District of California. I am a partner with the law

firm of Seyfarth Shaw LLP, and counsel of record for Respondent Safeway, Inc. I have

personal knowledge of the facts set forth in this declaration, and if called as a witness for this

purpose, I could and would testify competently under oath to them.

    2. On May 16, 2008, I informed David Rosenfeld, counsel for the International

Brotherhood of Teamsters, Local 439 ("Union"), by letter that on or after May 19, 2008

- 1 -
DECLARATION OF CHRISTIAN J. ROWLEY, CASE NO. C08-02536-JL-ADR

Safeway intended to seek an order from federal district court directing the Union to abide by the terms of the parties' CBA with respect to appointing a new permanent arbitrator, among other prayers for relief. A true and correct copy of that letter is attached at Exhibit 1.

3. I sent that May 16 letter on Safeway's behalf in order to comply with Section 4 of the Federal Arbitration Act ("FAA"), which requires five days notice to the adverse party before filing suit for an order directing arbitration to proceed in the manner provided for in the parties' arbitration agreement.

4. After learning Safeway's intentions, the Union filed the petition in this court to confirm Arbitrator Bridgewater's awards on May 20 – just one day before Safeway had satisfied its FAA notice requirements and was therefore able to file suit in the Eastern District of California ("Eastern District").

5. After satisfying its notice requirement, I filed a complaint on Safeway's behalf in the Eastern District on May 21, 2008, seeking speedy declaratory relief and an order compelling arbitration pursuant to the terms of the parties' CBA, and damages. A true and correct copy of that complaint is attached at Exhibit 2.

6. I also moved the Eastern District on Safeway's behalf to hold a "speedy hearing" under Federal Rule of Civil Procedure Rule 57 and the FAA on the claims set forth in Safeway's complaint. A true and correct copy of that motion is at Exhibit 3.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this June 9, 2008, in San Francisco, California.

Christian J. Rowley

DECLARATION OF CHRISTIAN J. ROWLEY, CASE NO. C08-02536-JL-ADR

SF1 28325542.1 / 35977-000110

# EXHIBIT 1



Writer's direct phone

(415) 544-1001

Writer's e-mail

crowley@seyfarth.com

May 16, 2008

**VIA FACSIMILE** (510.337.1023) &
**EMAIL**(drosenfeld@unioncounsel.net)

David A. Rosenfeld, Esq.
WEINBERG, ROGER & ROSENFELD
1001 Marina Village Parkway, Suite 200
Alameda, CA 94501

      Re:    *Safeway v. IBT Local 439 et al:*  EDCA Case;

Dear Mr. Rosenfeld:

In accordance with Section 4 of the Federal Arbitration Act, please be advised that the Company intends to file an action in federal district court on or after May 21, 2008, alleging that the Union has violated the LMRA and FAA by insisting that Arbitrator Barbara Bridgewater hear the upcoming May 22, 2008 arbitration and future arbitrations through September 30, 2008. More specifically, Safeway will seek, among other things, an order from the court under Section 5 of the FAA directing the Union to abide by the terms of the parties' CBA with respect to appointing an arbitrator for the upcoming May 22 arbitration and all future arbitrations.

            Sincerely yours,

            SEYFARTH SHAW LLP

            Christian J. Rowley

cc:   Carl Ramnitz
       Doug Ruygrok

BRUSSELS   WASHINGTON, D.C.   SAN FRANCISCO   SACRAMENTO   NEW YORK   LOS ANGELES   HOUSTON   CHICAGO   BOSTON   ATLANTA

# EXHIBIT 2

1  SEYFARTH SHAW LLP
   Christian J. Rowley (SBN 187293) (crowley@seyfarth.com)
2  560 Mission Street, Suite 3100
   San Francisco, CA 94105
3  Telephone:  (415) 397-2823
   Facsimile:  (415) 397-8549
4

5  Attorneys for Plaintiff
   SAFEWAY, INC.
6

7
                   UNITED STATES DISTRICT COURT
8                  EASTERN DISTRICT OF CALIFORNIA

9  SAFEWAY, INC., a Delaware corporation,      )
                                               )
10              Plaintiff,                      )   Case No. _____
                                               )
11  v.                                         )
                                               )
12  LOCAL 439 INTERNATIONAL                    )   COMPLAINT FOR SPEEDY
    BROTHERHOOD OF TEAMSTERS                   )   DECLARATORY RELIEF, AN ORDER
13  CHAUFFEURS, WAREHOUSEMEN,                  )   COMPELLING ARBITRATION, AND
    AND HELPERS OF AMERICA, a labor            )   DAMAGES
14  organization,                              )
                                               )
15              Defendant.                      )

16

17        Plaintiff Safeway, Inc. ("Safeway"), by its attorneys and pursuant to Rules 7 and 57 of

18  the Federal Rules of Civil Procedure, the Declaratory Judgment Act, Section 301 of the Labor

19  Management Relations Act, and Sections 4 and 5 the Federal Arbitration Act, submits the

20  following complaint:

21                          STATEMENT OF THE CASE

22        1.      This complaint requests speedy declaratory relief, an order compelling arbitration,

23  and damages.  The parties are signatories to a collective bargaining agreement.  Labor arbitration

24  proceedings between the parties are to be held on May 22, 2008 concerning up to six (6)

25  different grievances.  A dispute exists between the parties regarding the appropriate arbitrator to

26  hear those grievances and all other grievances scheduled for arbitration between May 22, 2008,

27  and September 27, 2008.

28
                                        - 1 -
    COMPLAINT FOR SPEEDY DECLARATORY RELIEF, AN ORDER COMPELLING ARBITRATION, AND DAMAGES,
                               CASE NO. [____]

2.      Defendant Local 439 International Brotherhood of Teamsters Chauffeurs, Warehousemen, and Helpers of America ("Union") has refused to select an arbitrator in violation of the collective bargaining agreement between Safeway, Inc. and Local 439 International Brotherhood of Teamsters Chauffeurs, Warehousemen, and Helpers of America dated August 10, 2003 to September 27, 2008 ("CBA"). A copy of the CBA is attached as Exhibit A.

3.      Article XXVI of the CBA provides a method for the appointment and termination of a "permanent" arbitrator who hears grievances within a 12-month period. Once during each 12-month period, either party may terminate the permanent arbitrator and select a new arbitrator. If the parties cannot mutually agree on a new arbitrator, then the parties must use an alternating strike method to select the new arbitrator. Under this method, the parties request a panel of seven (7) arbitrators from the Federal Mediation and Conciliation Service. After receiving the panel, the parties toss a coin to determine who first strikes an arbitrator's name from the panel. After that, the parties alternate strikes until only one (1) name remains. The remaining arbitrator becomes the new permanent arbitrator. If a party does not exercise its right to terminate the permanent arbitrator within the 12-month period, the arbitrator's appointment is automatically renewed for another 12-month period, subject to the removal procedure and the expiration of the parties' collective bargaining agreement. *See* Exhibit A, Article XXVI.

4.      On or about December 10, 2007, the parties selected Arbitrator Barbara Bridgewater as the permanent arbitrator to hear cases from January 1, 2008 through September 27, 2008 (the expiration date of the CBA). Pursuant to its right to terminate the permanent arbitrator once during each 12-month period, Safeway terminated Arbitrator Bridgewater on or about April 14, 2008, and so notified the Union. *See* Exhibit B. Safeway had not previously invoked its right to terminate the permanent arbitrator during the prior 12-month period.

- 2 -

1    5.    Despite the CBA's clear language giving Safeway the right to terminate the

2 permanent arbitrator, the Union objects to the removal of Arbitrator Bridgewater. It insists that

3 she serve as the permanent arbitrator until September 25, 2008, the last scheduled hearing date

4 prior to the expiration of the CBA. It refuses to select a new permanent arbitrator under the

5 selection method set forth in the parties' CBA. Pursuant to that insistence and refusal to abide by

6 the parties' CBA, the Union took the position before Arbitrator Bridgewater that she is to

7 adjudicate grievances under the CBA through the scheduled September 25, 2008 hearing, even in

8 Safeway's absence. *See* Exhibits C and D.

9

10    6.    Although Safeway had not submitted the issue of her termination to her for

11 determination, Arbitrator Bridgewater issued a written decision regarding that very issue on May

12 7, 2008. A copy of that May 7, 2008 decision is attached hereto as Exhibit E. In deciding her

13 own jurisdiction to hear cases between the parties, Arbitrator Bridgewater predictably ruled that

14 she remained the parties' permanent arbitrator. She further ruled that she would hear and decide

15 cases in Safeway's absence in the event Safeway chose not to appear before her.

16

17    7.    The parties have scheduled May 22, 2008 as a date for the hearing of grievances

18 under the CBA in Tracy California. The Union has informed Safeway that the Union intends to

19 bring six (6) grievances to Arbitrator Bridgewater for decision on that date. *See* Exhibit F. The

20 Union further has notified Safeway that it filed a motion on May 20, 2008 in the Northern

21 District of California to confirm Arbitrator Bridgewater's awards, presumably those issued after

22 her termination on April 14, 2008. *See* Exhibit G.

23

24    8.    Safeway has reiterated to the Union that it has terminated Arbitrator Bridgewater

25 and continues to object to the Union's refusal to select a new permanent arbitrator in violation of

26 the parties' CBA. Moreover, Safeway maintains its position that Arbitrator Bridgewater has no

27 authority to decide her own termination under the CBA.. *See* Exhibits H-J.

28

- 3 -

**PARTIES**

9.    Safeway is a Delaware corporation qualified to do business in the State of California.  It maintains a distribution center at 16900 West Schulte Road in Tracy, California 95377 ("Distribution Center"), at which it employs approximately 1,750 persons.  Safeway is in an industry affecting commerce within the meaning of Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. §185.

10.    The Union is the collective bargaining representative for approximately 1,624 warehouse employees and drivers employed by Safeway at the Distribution Center and who are all covered by the CBA.  The Union maintains its principal place of business at 1531 East Fremont Street in Stockton, California  95205.

**JURISDICTION AND VENUE**

11.    This case arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and/or the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and involves claims for declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.  This court has federal question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 185(c)(2).

12.    Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 185(a) because the Union has its principal place of business in Stockton California and is subject to personal jurisdiction in this District and further the facility covered by the CBA and the arbitrations at issue are all in Tracy California.

/ / /

/ / /

/ / /

**FACTS**

**A.    Applicable Provisions of CBA**

13.    Safeway and the Union are parties to the CBA. *See* Exhibit A.

14.    Article XXVI of the CBA -- entitled "General Grievance Procedure" -- establishes an arbitration mechanism for resolving grievances arising under the CBA. Article XXVI, Step Three provides for the selection and termination of a "permanent" arbitrator:

> Step Three. In the event the second step fails to settle the grievance it shall be referred to a Board of Adjustment within thirty (30) days by the initiating party or it shall be deemed resolved in favor of the other party. There shall be a Board of Adjustment comprised of four (4) members; two (2) representing the Union and two (2) representing the Company and one neutral member who shall be XX and shall also serve in the capacity of permanent arbitrator. . . . If XX is unable to serve, the parties will appoint another permanent arbitrator. *Should the parties fail to agree on the replacement for the permanent arbitrator they shall select an arbitrator from a panel of seven (7) arbitrators having offices in Northern California furnished by the FMCS. The Arbitrator shall be selected by the alternate striking method, the order of choosing determined by the winner of a coin toss.*
>
> The parties shall arrange with the arbitrator mutually agreeable dates, with a minimum of one date per month for a period of twelve (12) months for the Adjustment Boards to be convened. It is the intent of the parties that as many cases as can be heard, per monthly session, will be heard. By mutual agreement of the parties and the arbitrator, more dates may be scheduled. In no case shall attorneys be members of the Board of Adjustment except for the neutral member.
>
> *Once each twelve (12) month period, either party may remove the arbitrator and request that a new arbitrator is chosen. If the parties cannot mutually agree on the selection of a new arbitrator, the arbitrator will be selected using the alternating selection method indicated above. If no such request is made, the arbitrator shall be renewed for an additional twelve-(12) month period.*

(emphasis added).

**B.    The Union's Breach of the CBA**

15.    Additional facts pertinent to this action are set forth in Paragraphs 2-10 of the Complaint.

16.    Article XXVI of the CBA does not require the agreement of the parties to terminate the permanent arbitrator.

- 5 -

17. By letter dated April 14, 2008, Safeway terminated Arbitrator Barbara Bridgewater's appointment as arbitrator. *See* Exhibit B.

18. The Union's refusal to acknowledge Safeway's termination of Arbitrator Bridgewater and failure to select a new permanent arbitrator under the CBA's procedures violates Article XXVI of the CBA. The Union's insistence that Arbitrator Bridgewater hear grievances on May 22, 2008, and on future dates through the expiration of the CBA, and that she has further authority to decide grievances (including in Safeway's absence) similarly violates the CBA.

## COUNT I – DECLARATORY JUDGMENT

19. Safeway hereby incorporates by reference and realleges Paragraphs 1-18 above.

20. This is an action for declaratory judgment pursuant to 29 U.S.C. § 185 and 28 U.S.C. §§ 2201 & 2202 for the purpose of determining questions of actual controversy between the parties. Safeway is entitled to a determination and adjudication by the Court of the rights and liabilities of the parties with respect to whether Arbitrator Bridgewater has authority under the CBA to hear and adjudicate the grievances between Safeway and the Union on May 22, 2008, and on future dates through the expiration of the CBA, and whether the parties are to select a new permanent arbitrator pursuant to the method for doing so set forth in the CBA.

21. Specifically, Safeway is entitled to declarations and findings by this court that: (1) Safeway has terminated Arbitrator Bridgewater's appointment as permanent arbitrator; and, therefore, she has no authority to and may not hear or adjudicate the grievances between Safeway and the Union on May 22, 2008, or on any other future date (unless she were to be reappointed by the parties through the CBA's procedures); and (2) the Union is required to adhere to the CBA's procedures for the selection of a new permanent arbitrator.

- 6 -

22.    Sections 4 and 5 of the FAA, 9 U.S.C. §§ 4-5, address this very scenario where one (1) of the parties to an arbitration agreement refuses to proceed with arbitration in the manner by which the parties agreed. Section 4 states, among other things, that a court "shall make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement*" (emphasis added). Section 5 further provides that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed . . .[.]"

23.    Section 6 of the FAA provides that an application made to the court under the FAA shall be made and heard in the manner provided by law for the making and hearing of motions. Safeway makes such an application to this court by a motion for emergency hearing under Federal Rule of Civil Procedure Rule 57 (to be filed shortly) and motion to compel arbitration (as set forth herein at Count III).

24.    Because Arbitrator Bridgewater is scheduled to hear grievances on May 22, 2008, and on other dates in the near future and through the expiration of the CBA, Safeway requests that the Court hold a "speedy hearing" on the declaratory judgment action pursuant to Federal Rules of Civil Procedure Rule 57. A delay in the resolution of this matter will force Safeway to appear before Arbitrator Bridgewater when she lacks authority to adjudicate any further matters under the CBA. In view of the clear contract language supporting her removal as arbitrator and the selection of a new arbitrator, any proceedings before Arbitrator Bridgewater will be subject to vacation by this court thereafter, resulting in a waste of arbitral and judicial resources and undue resolution of labor disputes between the parties.

/ / /

/ / /

# COUNT II – VIOLATION OF LMRA § 301

25.    Safeway hereby incorporates and realleges paragraphs 1-24 above.

26.    Section 301 of the Labor Management Relations Act ("LMRA") provides in relevant part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act . . . may be brought in any district court of the United States having jurisdiction fo the parties . . .

29 U.S.C. § 185.

27.    The Union has violated Article XXVI of the CBA by refusing to adhere to the procedures for terminating and appointing a permanent arbitrator, and for the conduct of arbitration proceedings, as set forth therein.

28.    LMRA Section 301 provides the Court with broad authority to interpret the CBA and fashion appropriate remedies, including equitable and legal remedies, to remedy such violations.

# COUNT III – MOTION TO COMPEL ARBITRATION

29.    Safeway hereby incorporates by reference and realleges paragraphs 1-28 above.

30.    Pursuant to Section 4 of the FAA, 9 U.S.C. § 4, a party aggrieved by the failure of another party to arbitrate in a manner set forth in the parties' agreement to arbitrate may petition a federal district court for relief upon five days notice to the other party.

31.    On May 16, 2008, five days before Safeway filed this complaint, Safeway notified the Union that it intended to petition a federal district court for relief under the FAA. *See* Exhibit K.

32.    Accordingly, Safeway seeks an order compelling the Union to adhere to the procedures for selecting a new permanent arbitrator pursuant to the procedures for doing so

- 8 -

under the CBA; and, thereafter, submitting any further grievances which are to be advanced to arbitration before such new arbitrator pursuant to the terms of Article XXVI of the CBA.

## PRAYER FOR RELIEF

WHEREFORE, Safeway prays for the following relief:

33.  That the court enter a declaratory judgment finding and declaring that Arbitrator Bridgewater has no authority to and may not hear or adjudicate the grievances between Safeway and the Union on May 22, 2008 or on any other future date (unless she were to be reappointed by the parties through the CBA's procedures);

34.  That the Court enter a declaratory judgment finding and declaring that any awards Arbitrator Bridgewater issues with respect to Safeway and the Union from the date of her termination on April 14, 2008 are null, void, and unenforceable;

35.  That the Court enter a declaratory judgment finding and declaring that the Union violated the CBA in refusing to adhere to the procedures for the selection of a new permanent arbitrator set forth in Article XXVI of the parties' CBA;

36.  That the Court enter a declaratory judgment finding and declaring that the Union is required to adhere to the procedures for the selection of a new permanent arbitrator as set forth in Article XXVI of the parties' CBA;

37.  That the Court compel the Union to conduct future arbitration proceedings, including the proceedings scheduled for May 22, 2008 and through the expiration of the parties' CBA, before a new permanent arbitrator selected pursuant to and consistent with the provisions of Article XXVI of the parties' CBA;

- 9 -

1   38.   That the Court award Safeway any monetary damages, costs, and/or reasonable

2   attorneys' fees incurred as a result of any proceedings before Arbitrator Bridgewater from the

3   date of her termination on April 14, 2008;

4

5   39.   That the Court award Safeway its costs and reasonable attorneys' fees incurred in

6   bringing this action; and

7   40.   That the Court award such additional and further relief to Safeway as may be just

8   and equitable under the circumstances.

9

10  DATED: May 21, 2008

                                         SEYFARTH SHAW LLP

11

12                                       By

13                                          Christian J. Rowley
                                         Attorneys for Plaintiff
14                                       SAFEWAY INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR SPEEDY DECLARATORY RELIEF, AN ORDER COMPELLING ARBITRATION, AND DAMAGES,
CASE NO. [_____]

# EXHIBIT 3

1

2  SEYFARTH SHAW LLP
   Christian J. Rowley (SBN 187293) (crowley@seyfarth.com)
3  560 Mission Street, Suite 3100
   San Francisco, CA 94105
4  Telephone:  (415) 397-2823
   Facsimile:  (415) 397-8549
5
   Attorneys for Petitioner
6  SAFEWAY, INC.

7

8                    UNITED STATES DISTRICT COURT

9

10                   EASTERN DISTRICT OF CALIFORNIA

11

12  SAFEWAY, INC., a Delaware corporation,    )
                                              )
13                 Plaintiff,                 )
                                              )   Case No. 2:08-cv-01136-JAM-JFM
14  v.                                        )
                                              )
15  LOCAL 439 INTERNATIONAL                   )
    BROTHERHOOD OF TEAMSTERS                  )   PLAINTIFF'S NOTICE OF MOTION
16  CHAUFFEURS, WAREHOUSEMEN,                 )   AND MOTION FOR A SPEEDY
    AND HELPERS OF AMERICA, a labor           )   HEARING ON THE CLAIMS SET
17  organization,                             )   FORTH IN PLAINTIFF'S COMPLAINT;
                                              )   MEMORANDUM OF POINTS AND
18                 Defendant.                 )   AUTHORITIES
                                              )

19

20  TO DEFENDANT AND ITS ATTORNEY OF RECORD:

21        PLEASE TAKE NOTICE that on **July 9, 2008 at 9:00 a.m. in Courtroom 6** of the

22  United States District Court for the Eastern District of California located at 501 I Street,

23  Sacramento, California, Plaintiff SAFEWAY, INC. will and hereby moves the Court for an order

24  under Federal Rule of Civil Procedure ("FRCP") Rule 57 and Section 4 of the Federal

25  Arbitration Act ("FAA") for a speedy hearing on the claims set forth in Plaintiff's Complaint.

26  / / /

27  / / /

28
                                       - 1 -
    NOTICE OF MOTION, MOTION FOR A SPEEDY HEARING; MEMORANDUM OF POINTS AND
    AUTHORITIES, CASE NO. 2:08-cv-01136-JAM-JFM

1    Plaintiff's motion is based on this notice, the motion itself, the memorandum of points
2  and authorities attached hereto, the Declaration of Carl Ramnitz, the pleadings and records on
3  file with this court, and such other matters as the court may deem proper.
4  DATED: June 3, 2008
5                                                          SEYFARTH SHAW LLP
6
7                                                          By
8                                                              Christian J. Rowley
                                                           Attorneys for Plaintiff
9                                                          SAFEWAY INC.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MOTION FOR A SPEEDY HEARING
## <u>ON THE CLAIMS SET FORTH IN PLAINTIFF'S COMPLAINT</u>

Plaintiff SAFEWAY, INC. ("Safeway") hereby moves this court pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 57 and Section 4 of the Federal Arbitration Act ("FAA") for a speedy hearing on the claims set forth in Plaintiff's complaint.  Plaintiff alleges as follows:

1.     Safeway and Defendant Local 439 International Brotherhood of Teamsters Chauffeurs, Warehousemen, and Helpers of America ("Union") are parties to a collective bargaining agreement dated August 10, 2003 to September 27, 2008 ("CBA").

2.     The CBA contains a grievance-arbitration procedure that sets forth a method for terminating and selecting permanent arbitrators.  Specifically, Article XXVI of the CBA allows either party to unilaterally terminate the permanent arbitrator once per twelve-month period. Upon the termination of the permanent arbitrator by one party, Article XXVI sets forth a method for the parties to select a new permanent arbitrator.

3.     On or about April 14, 2008, Safeway terminated the former permanent arbitrator Barbara Bridgewater in accordance with the parties' CBA.

4.     In violation of the parties' CBA, the Union refused to accept Safeway's termination of Arbitrator Bridgewater and directed her to hear future grievances between the parties, even in Safeway's absence.  The Union further refuses to select a new permanent arbitrator in violation of the parties' CBA.

5.     Even though Safeway terminated her, Arbitrator Bridgewater heard grievances between the parties on May 22, 2008.  Moreover, Arbitrator Bridgewater is scheduled to hear grievances between the parties each month until the parties' CBA expires in September.

6.  Given the Union's violation of the parties' CBA, insistence that Safeway arbitrate grievances before a terminated arbitrator, refusal to select a new arbitrator under the method set forth in the parties' CBA, and insistence that Arbitrator Bridgewater hear grievances each month until September, Safeway filed a Complaint for Speedy Declaratory Relief, an Order Compelling Arbitration, and Damages pursuant to the Declaratory Judgment Act, the Labor Management Relations Act, and the Federal Arbitration Act.

7.  Because Arbitrator Bridgewater is scheduled to hear grievances each month through September, Safeway moves the court to hold a speedy hearing on the claims set forth in Safeway's complaint, which includes prayers for declaratory relief, under FRCP Rule 57 and Section 4 of the FAA.

8.  A speedy hearing in this matter is necessary because delay in the resolution of this matter (by proceeding in accordance with this court's normal hearing schedule) will cause further violations of Safeway's rights and further disruption of the parties' labor relations. A delay will force Safeway to continue to appear before Arbitrator Bridgewater when she lacks authority to adjudicate any further matters under the CBA. Moreover, in view of the clear contract language supporting her removal as arbitrator, any decisions as a result of the proceedings before Arbitrator Bridgewater will be subject to vacation by this court thereafter, resulting in a waste of arbitral and judicial resources.

9.  A speedy hearing in this matter is appropriate because prompt resolution may be reached that is consistent with the interests of justice and rights of all parties to due process of law for the reasons set forth in Safeway's Memorandum of Points and Authorities, which is attached hereto and incorporated herein.

///

///

- 4 -

1     WHEREFORE Safeway, Inc. respectfully requests that this court order a speedy hearing

2 on the claims in Safeway's complaint.

3

4 DATED: June 3 2008

SEYFARTH SHAW LLP.

By

Christian J. Rowley
Attorneys for Plaintiff
SAFEWAY INC.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2
## MEMORANDUM OF POINTS AND AUTHORITIES

3
## I.    INTRODUCTION

4
A dispute exists between the parties as to who is the proper arbitrator to hear and decide

5
grievances between them.  The Union is insisting that Arbitrator Barbara Bridgewater, an

6
arbitrator whom Safeway has terminated, hear grievances between the parties through September

7
27, 2008, in violation of the parties' collective bargaining agreement.  The Union is further

8
violating that collective bargaining agreement by refusing to select a new arbitrator to hear those

9
grievances.  Moreover, the Union has requested that Arbitrator Bridgewater hear and decide

10
those grievances even if Safeway does not appear at hearing.

11
Because Arbitrator Bridgewater has heard and has indicated that she intends to continue

12
hearing grievances between the parties pursuant to the Union's request, the scheduling of a

13
speedy hearing on Safeway's claims is necessary.  Thus, Safeway moves this court to set a

14
speedy hearing on Safeway's complaint pursuant to Federal Rule of Civil Procedure ("FRCP")

15
Rule 57 and Section 4 of the Federal Arbitration Act ("FAA").  A delay in the resolution of this

16
matter will force Safeway to continue appearing before Arbitrator Bridgewater when she lacks

17
authority to adjudicate any further matters under the collective bargaining agreement, and

18
ultimately will result in the waste of judicial and the parties' resources given that any decisions

19
by Arbitrator Bridgewater will be subject to vacation due to the clear contract language

20
supporting her termination as arbitrator.

21
## II.    FACTUAL AND PROCEDURAL BACKGROUND

22
Safeway and the Union are parties to the Agreement Between Safeway, Inc. and Local

23
439 International Brotherhood of Teamsters Chauffeurs, Warehousemen, and Helpers of

24
America, August 10, 2003 through September 27, 2008 ("CBA").  (Declaration of Carl Ramnitz,

25
attached as Exhibit A, at ¶ 4 and the CBA, attached as Exhibit 1 to that Declaration.)  Article

26
XXVI of the CBA -- entitled "General Grievance Procedure" -- provides an arbitration

27
mechanism for resolving differences between the parties.  (Exhibit A at ¶ 5.)

28

1    Pertinent to this dispute, Article XXVI "Step Three" provides for the selection and

2    termination of the permanent arbitrator. (*Id.* at ¶ 6.) More specifically, Step Three provides in

3    relevant part as follows:

4    
> Step Three. In the event the second step fails to settle the grievance it shall be
5    > referred to a Board of Adjustment within thirty (30) days by the initiating party or
> it shall be deemed resolved in favor of the other party. There shall be a Board of
6    > Adjustment comprised of four (4) members; two (2) representing the Union and
> two (2) representing the Company and one neutral member who shall be XX and
7    > shall also serve in the capacity of permanent arbitrator. . . . If XX is unable to
> serve, the parties will appoint another permanent arbitrator. ***Should the parties***
8    > ***fail to agree on the replacement for the permanent arbitrator they shall select***
> ***an arbitrator from a panel of seven (7) arbitrators having offices in Northern***
9    > ***California furnished by the FMCS. The Arbitrator shall be selected by the***
> ***alternate striking method, the order of choosing determined by the winner of a***
10   > ***coin toss.***

11   > The parties shall arrange with the arbitrator mutually agreeable dates, with a
> minimum of one date per month for a period of twelve (12) months for the
12   > Adjustment Boards to be convened. It is the intent of the parties that as many
> cases as can be heard, per monthly session, will be heard. By mutual agreement
13   > of the parties and the arbitrator, more dates may be scheduled. In no case shall
> attorneys be members of the Board of Adjustment except for the neutral member.

14   > ***Once each twelve (12) month period, either party may remove the arbitrator and***
15   > ***request that a new arbitrator is chosen. If the parties cannot mutually agree on***
> ***the selection of a new arbitrator, the arbitrator will be selected using the***
16   > ***alternating selection method indicated above.*** If no such request is made, the
> arbitrator shall be renewed for an additional twelve-(12) month period.

17   (emphasis added) (Exhibit A at ¶ 6, Exhibit 1).

18   In accordance with Article XXVI, on or about December 10, 2007, the parties selected

19   Arbitrator Barbara Bridgewater as the permanent arbitrator. (Exhibit A at ¶ 7.) The parties

20   selected one date per month, to and including September 25, 2008, for the permanent arbitrator

21   to hear grievances. (*Id.* at ¶ 8.)

22   Pursuant to Safeway's right to terminate the permanent arbitrator once each twelve-

23   month period, Carl Ramnitz, Safeway's Director Labor Relations, Northern California Division,

24   terminated Arbitrator Bridgewater on or about April 14, 2008. (*Id.* at ¶¶ 2, 9.) He notified the

25   Union accordingly. (Exhibit A at ¶ 9, Exhibit 2.) Safeway had not previously invoked its right

26   to terminate the permanent arbitrator within the twelve-month period following her appointment.

27   (Exhibit A at ¶ 9.)

28

1    Despite the CBA's clear language giving Safeway the right to terminate the permanent

2    arbitrator, the Union objected to the termination of Arbitrator Bridgewater. (Exhibit A at ¶ 10,

3    Exhibits 3-4.) The Union insists that she serve as the permanent arbitrator until the parties' CBA

4    expires on September 27, 2008. (Exhibit A ¶ 11.) The Union further refuses to select a new

5    permanent arbitrator under the selection method set forth in the parties' CBA. (*Id.* at ¶ 12.)

6    Pursuant to that insistence and refusal to abide by the parties' CBA, the Union told Arbitrator

7    Bridgewater to adjudicate grievances under the CBA through September 25, 2008 (the last date

8    she was scheduled to hear grievances), even in Safeway's absence. (*Id.* at ¶ 13.)

9    Although Safeway had not submitted the issue of her termination to her, Arbitrator

10    Bridgewater issued a written decision regarding that very issue on May 7, 2008. (Exhibit A at ¶

11    14, Exhibit 5.) In improperly deciding her own jurisdiction to hear cases between the parties,

12    Arbitrator Bridgewater predictably ruled that she remained the parties' permanent arbitrator.

13    (*Id.*) She further ruled that she would hear and decide cases in Safeway's absence in the event

14    Safeway chose not to appear before her. (*Id.*)

15    Prior to Arbitrator Bridgewater's termination, the parties had scheduled May 22, 2008 as

16    a date for the hearing of grievances under the CBA. (Exhibit A at ¶ 15.) The Union informed

17    Safeway that it intended to bring six grievances to Arbitrator Bridgewater for decision on that

18    date. (Exhibit A at ¶ 15, Exhibit 6.) Given Arbitrator Bridgewater's decision and the Union's

19    insistence that she decide cases even in Safeway's absence, Safeway was forced to appear at that

20    hearing and reiterate its objections to Arbitrator Bridgewater's jurisdiction and authority to hear

21    grievances between the parties. (Exhibit A at ¶ 15.) After the parties argued until approximately

22    3:00 p.m. on that day, Arbitrator Bridgewater required Safeway to proceed with hearing after

23    stating its objections on the record. (*Id.* at ¶ 15.) The Union continues to insist that Arbitrator

24    Bridgewater hear additional grievances in this same manner and over Safeway's continued

25    objections each month through September. (*Id.* at ¶ 16.)

26    Safeway has reiterated to the Union that it has terminated Arbitrator Bridgewater and

27    continues to object to the Union's refusal to select a new permanent arbitrator in violation of the

28    parties' CBA. (Exhibit A at ¶ 17, Exhibits 7-9.) Safeway maintains its position that Arbitrator

- 8 -

1  Bridgewater has no authority to decide her own termination (*i.e.*, whether she has jurisdiction to

2  hear future disputes between the parties). (Exhibit A at ¶ 18.) Accordingly, Safeway filed a

3  complaint in this court on May 21, 2008, seeking speedy declaratory relief, an order compelling

4  arbitration pursuant to the terms of the parties' CBA, and damages. (Complaint ¶¶ 33-40.)

5  **III.   LEGAL ARGUMENT**

6         In an action for declaratory judgment, FRCP Rule 57 allows the court to order a speedy

7  hearing:

8         The procedure for obtaining a declaratory judgment pursuant to Title 28, U.S.C. §
          2201, shall be in accordance with these rules . . . . ***The court may order a speedy***
9         ***hearing of an action for declaratory judgment and may advance it on the***
          ***calendar.***
10

11  FRCP Rule 57 (emphasis added). Similarly, Section 4 of the FAA requires courts to proceed

12  "summarily to the trial" where, as here, a party claims that arbitration is not proceeding in the

13  manner set forth in the parties' CBA. 9 U.S.C. § 4.

14         Courts order speedy hearings "to settle legal rights and remove uncertainty and insecurity

15  from legal relationships without awaiting a violation of the rights or a disturbance of the

16  relationships." *Rechler Partnership v. Resolution Trust Corp.*, Civil No. 90-3091, 1990 U.S.

17  Dist. LEXIS 18714, at *17 (D. N.J. Sept. 4, 1990) (quoting *Beacon Constr. Co., Inc. v. Matco*

18  *Elec. Co.*, 521 F.2d 392, 397 (2d Cir. 1975). *See also T & J Meat Packing, Inc. v. Service*

19  *Employees Int'l Union, Local 1*, No. 04 C 1475, 2004 U.S. Dist. LEXIS 6872, at *2-*3 (N.D. Ill.

20  Apr. 15, 2004) (noting that court granted a speedy hearing on plaintiff's request for declaratory

21  relief involving a labor dispute); *National Basketball Ass'n v. Williams*, 857 F.Supp. 1069, 1071

22  n.1 (S.D.N.Y. 1994) (noting that FRCP Rule 57 authorized the court to order a speedy hearing

23  for declaratory judgment); *In re Paris Air Crash of March 3, 1974*, 69 F.R.D. 310, 318 (C.D.

24  Cal. 1974) (noting that FRCP Rule 57 "requires a 'speedy hearing'"). A speedy hearing is

25  appropriate where "a prompt resolution may be reached, consistent with the interests of justice

26  and the rights of all parties to due process of law." *In re United States of America*, 452

27  F.Supp.2d 230, 271 (S.D.N.Y. 2006). In accordance with these rules and guidelines, a speedy

28  hearing is required in this case given the Union's breach of the parties' CBA and failure to

1    arbitrate in the manner set forth in the parties' CBA, the court's ability to order the Union to

2    remedy that breach, and the fact that additional delay in resolving this matter will further violate

3    Safeway's rights under the CBA and further disturb the parties' labor relations.

4        **A.    A speedy hearing is required because the Union plainly breached the arbitration provision of the parties' CBA.**

5

6        This court has subject matter jurisdiction pursuant to Section 301 of the Labor

7    Management Relations Act of 1947 ("LMRA") because this dispute involves an alleged violation

8    of the parties' CBA. *See* 29 U.S.C. § 185 ("Suits for violation of contracts between an employer

9    and a labor organization representing employees in an industry affecting commerce as defined in

10   this Act . . . may be brought in any district court . . . ."). While procedural disputes arising from

11   matters subject to arbitration are usually determined by the arbitrator and not by the court, *see*

12   *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964), this case concerns another, but

13   related issue – the designation of an arbitrator by ***mutual agreement***, whether for a particular

14   case or for a particular time period. Courts, not arbitrators, have the authority to order the parties

15   to appoint an arbitrator in accordance with their mutually agreed upon selection method. *See*

16   *Bethlehem Mines Corp. v. United Mine Workers*, 344 F.Supp. 1161, 1166 (W.D. Pa. 1972), *aff'd*,

17   494 F.2d 776 (3d Cir. 1974).

18       Indeed, the essential element of any arbitration provision is that the method of selection

19   of an arbitrator is established by mutual agreement between the parties. *See, e.g., id.* As the

20   district court in *Bethlehem* stated:

21       An arbitrator is a judge of the parties' own choosing, or the person selected by the
         parties to an arbitration agreement or submission to determine the matters

22       submitted. 6 C.J.S. Arbitration & Award § 40 at 41. *Burchell v. Marsh*, 58 U.S.
         344, 15 L. Ed. 96 (1854), 5 Am. Jur. 2d, *Arbitration & Award*, § 84 at 583.

23
         Arbitration agreements are aimed at amicable determination of disputes with
24       results which both parties will be willing to accept. Toward this end, it is
         desirable that the arbitration panel consists of arbitrators chosen by each of the

25       parties. Where imbalance is unnecessarily effected the purpose and advantages of
         arbitration are defeated. *Matter of Arbitration between Lobo & Co., Inc. v.*

26       *Plymouth Navigation Co.*, 187 F.Supp. 859 (S.D.N.Y. 1960).

27

28

1    *Id.* at 1165. In other words, "[i]t is fundamental that one cannot be compelled to submit a matter
2    to arbitration before a particular individual *where there is no agreement as to method by which*
3    *that individual is chosen.*" *Id.* (emphasis added).

4         Here, the Union is violating the parties' CBA by seeking to compel Safeway to submit
5    grievances before Arbitrator Bridgewater when there is no agreement to arbitrate grievances
6    before her. The parties have agreed that each party has the ability to terminate the permanent
7    arbitrator once per twelve-month period and then to select a new permanent arbitrator. After
8    Safeway terminated Arbitrator Bridgewater pursuant to this right, it asked the Union to select a
9    new permanent arbitrator. The Union, however, refused and instead insisted that Arbitrator
10   Bridgewater continue to hear grievances between the parties, even in Safeway's absence. Article
11   XXVI of the CBA, however, does not provide the Union with the ability to refuse an arbitrator's
12   termination (provided that Safeway had not terminated an arbitrator in the prior twelve-month
13   period, which it did not here). Moreover, the Union has no right to unilaterally "reappoint" a
14   terminated arbitrator. Arbitrator Bridgewater, therefore, has no jurisdiction to hear any
15   grievances at this time. Thus, the Union breached the Article XXVI of the CBA by insisting that
16   Arbitrator Bridgewater hear grievances and refusing to select a new permanent arbitrator.

17   **B.    A speedy hearing is required because the court has the authority to promptly**
18   **resolve the dispute by ordering the Union to select a new permanent**
     **arbitrator.**

19        Pursuant to the FAA, this court has the authority to require the Union to select a new
20   permanent arbitrator in accordance with the selection method set forth in Article XXVI of the
21   CBA. Under Section 4 of the FAA, 9 U.S.C. § 4, a party aggrieved by the failure of another
22   party to arbitrate may petition a district court for "an order directing that such arbitration proceed
23   in the manner provided for in such agreement." In addition, Section 5 of the FAA, 9 U.S.C. § 5,
24   provides that "[i]f in the agreement provision be made for a method of naming or appointing an
25   arbitrator or arbitrators or an umpire, such method shall be followed." Accordingly, the plain
26   language of the FAA requires that the parties follow a bargained-for process for the selection of
27   arbitrators. *See, e.g., United Ass'n of Journeymen and Apprentices of the Plumbing and*
28   *Pipefitting Indus. of the U.S. v. Bechtel Const. Co.*, 128 F.3d 1318, 1323 (9th Cir. 1997)

- 11 -

1    (adopting the Third Circuit's reasoning in *Bethlehem* that a court may order the parties to comply

2    with a procedure for selecting an arbitrator where the parties agreed on arbitration but not on an

3    arbitrator); *Clearwater Ins. Co. v. Granite State Ins. Co.*, No. C 06-4472 SI, 2006 U.S. Dist.

4    LEXIS 74771, at *9-10 (N.D. Cal. Sept. 29, 2006) (holding that the FAA requires the court to

5    issue an order requiring the parties to proceed to arbitration in the manner set forth in their

6    agreement). *See also Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 814 F.2d

7    1324, 1329 (9th Cir. 1987) (holding that court has the authority to remedy an impasse on the

8    selection of an arbitrator).

9          In this case, Safeway terminated Arbitrator Bridgewater, and the CBA requires the parties

10    to select a new permanent arbitrator pursuant to one of the selection methods set forth in Article

11    XXVI of the CBA.  The Union's attempt to circumvent this contractual arbitration provision by

12    refusing to select a new arbitrator and insisting that Arbitrator Bridgewater hear grievances

13    between the parties is contrary to the CBA.  In short, the Union's actions amount to a clear

14    breach of the arbitration provision.

15          Whatever license the Union feels it has to control the arbitration process simply does not

16    exist.  Pursuant to the bargained-for arbitration provisions of the CBA, Safeway had the right to

17    terminate Arbitrator Bridgewater.  Also pursuant to the bargaining-for arbitration provisions of

18    the CBA, the Union now has the obligation to select a new permanent arbitrator.  Because the

19    Union refuses to do so, this court should exercise its authority under the FAA to order that the

20    Union select a new permanent arbitrator under the selection method set forth in Article XXVI of

21    the CBA.  *See, e.g.. Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, No. C 99-1538 SI, 1999 U.S.

22    Dist. LEXIS 17348, at *16, *19-21 (N.D. Cal. Nov. 1, 1999) (requiring parties to proceed with

23    selecting new arbitrator pursuant to terms of contract where contract contemplated the removal

24    and replacement of arbitrators).

25

26

27

28

NOTICE OF MOTION, MOTION FOR A SPEEDY HEARING; MEMORANDUM OF POINTS AND
AUTHORITIES, CASE NO. 2:08-cv-01136-JAM-JFM

**C.    A speedy hearing is appropriate because prompt resolution may be reached that is consistent with the interests of justice and rights of all parties to due process of law and is necessary to avoid further violations of Safeway's rights and further disruption of the parties' labor relations.**

Given the plain language of the CBA and the limited number of facts involved or in dispute (if any), this case is a prime candidate for prompt resolution. The CBA sets forth a detailed arbitration provision for the termination and selection of permanent arbitrators. Based on that provision and Safeway's April 14, 2008 termination of Arbitrator Bridgewater, the court should be able to easily determine whether the parties should proceed before Arbitrator Bridgewater or select a new permanent arbitrator. In fact, the dispute in this case is so basic that it is merely over whether an arbitration is being held in accordance with the parties' agreement and, thus, Section 4 of the FAA requires the court to proceed summarily to trial.

Moreover, the interests of justice and the rights of all parties to due process of law will be served by a prompt resolution. Having a hearing ensures that all parties will be heard. Having a speedy hearing protects the interests of justice by resolving both parties' rights and responsibilities under the CBA as soon as possible. Quickly resolving the dispute will vindicate the principle that arbitration is a creature of contract, and that parties should not be forced to arbitrate a dispute before an arbitrator upon whom they have not agreed, whose appointment violates the CBA, and who lacks authority to adjudicate matters under the CBA. In addition, a quick resolution will limit the number of arbitration decisions subject to vacation by this court, which would result in a waste of judicial resources.

Finally, a prompt resolution is necessary to avoid further violations of Safeway's rights and further disruption of the parties' labor relations. Because the Union refused to select a new permanent arbitrator and requested Arbitrator Bridgewater to hold an *ex parte* hearing if Safeway did not show up for hearing, Safeway was forced to arbitrate grievances before Arbitrator Bridgewater on May 22. Similarly, without a speedy hearing on its complaint in this case, Safeway will be forced to arbitrate additional grievances before Arbitrator Bridgewater each month until the parties' CBA expires in September. Under such circumstances, Safeway's rights would be further violated because: (1) Safeway would completely lose its bargained-for right to

NOTICE OF MOTION, MOTION FOR A SPEEDY HEARING; MEMORANDUM OF POINTS AND AUTHORITIES, CASE NO. 2:08-cv-01136-JAM-JFM

1  terminate the permanent arbitrator; and (2) Safeway would completely lose its bargained-for

2  right to select a new permanent arbitrator pursuant to the selection methods set forth in the CBA.

3  As it stands now, Safeway is going to be forced every month to appear before an arbitrator who

4  has no authority to hear grievances. This state of affairs causes significant disruption in the labor

5  relations between Safeway and the Union given Safeway's need to continually object to

6  Arbitrator Bridgewater's jurisdiction and the parties' continued arguments at hearing over her

7  authority to hear grievances. Therefore, the court must order a speedy hearing to resolve this

8  matter. *Accord Bechtel*, 128 F.3d at 1323 ("Preservation of labor peace requires that district

9  courts have some flexibility in fashioning decrees to enforce agreements to arbitrate labor

10 disputes."). *See also* 9 U.S.C. § 4.

11         The Company simply requests that it be granted the benefit of its bargain, which is its

12 ability to terminate Arbitrator Bridgewater and to select a new permanent arbitrator using the

13 method set forth in the parties' CBA. At the very least and regardless of the outcome of this

14 dispute, the parties need a prompt resolution of the matter to clear the cloud of uncertainty

15 surrounding the identity of the permanent arbitrator.

16 **IV.     CONCLUSION**

17         For the foregoing reasons, Safeway respectfully requests that the court issue an order for

18 a speedy hearing on Safeway's complaint pursuant to FRCP Rule 57 and Section 4 of the FAA.

19

20 DATED: June 3, 2008

                                    SEYFARTH SHAW LLP
21

22                                  By
23                                         Christian J. Rowley
                                    Attorneys for Plaintiff
24                                  SAFEWAY INC.

25

26

27

28

- 14 -