1  SEYFARTH SHAW LLP
   Christian J. Rowley (SBN 187293)
2  (crowley@seyfarth.com)
   560 Mission Street, Suite 3100
3  San Francisco, CA 94105
   Telephone: (310) 277-7200
4  Facsimile: (310) 201-5219

5  Attorneys for Respondent
   SAFEWAY, INC.

6

7
                    **UNITED STATES DISTRICT COURT**
8
                  **NORTHERN DISTRICT OF CALIFORNIA**
9

10 INTERNATIONAL BROTHERHOOD OF      )    Case No. C08-02536-JL-ADR
   TEAMSTERS, LOCAL 439,             )
11                                   )    **RESPONSE TO NOTICE OF**
                                     )    **PENDENCY OF OTHER ACTION OR**
12            Petitioner,            )    **PROCEEDING**
                                     )
13     v.                            )
                                     )
14 SAFEWAY, INC.,                    )
                                     )
15            Respondent.            )
   _____)

16

17

18

19

20

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................2

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................3

III.    LEGAL ARGUMENT.............................................................4

        A.      The Court Should Deny The Petition Because The Parties Have Not
                Consented To The Entry Of Judgment Upon Arbitration Awards. ......................4

        B.      The Court Should Further Deny The Petition Because The Arbitration
                Awards Are Not Final..............................................................5

        C.      Alternatively, The Court Should Transfer This Action To The Eastern
                District Of California. ...........................................................6

                1.      The Union's petition could have been brought in the Eastern
                        District.................................................................6

                2.      The Union's petition should be transferred to the Eastern District. ...........7

                        a.      The Eastern District is a more convenient forum for the
                                parties. ........................................................7

                        b.      The Eastern District is a convenient forum for the
                                witnesses. ......................................................8

                        c.      The interests of justice favor transfer to the Eastern District...........8

                        d.      The Eastern District's interest in the action outweighs the
                                Union's choice of forum. ......................................9

                        e.      The relative ease of access to evidence favors transferring
                                this action to the Eastern District. ..................................10

                        f.      The availability of compulsory process for unwilling
                                witnesses and the costs involved in securing willing
                                witnesses favor transferring this action to the Eastern
                                District.........................................................10

                        g.      Practical considerations make it easier to try this case in the
                                Eastern District.................................................10

IV.     CONCLUSION................................................................11

# TABLE OF AUTHORITIES

## CASES

*Alltrade Inc. v. Uniweld Prods, Inc.,*
    946 F.2d 622 (9th Cir. 1991) ......................................................................9

*American Pres. Lines, Ltd. v. Trans Atlantic Assocs., Inc., No. C-04-1515*
    2004 U.S. Dist. LEXIS 16852 (N.D. Cal. Aug. 17, 2004)........................3, 4

*Commodity Futures Trading Comm'n v. Savage,*
    611 F.2d 270 (9th Cir. 1979) ...................................................................5, 6

*Commonwealth Enterps. v. Liberty Mutual Ins. Co., No. CA 91-55892,*
    1992 U.S. App. LEXIS 6121 (9th Cir. Mar. 27, 1992)...........................3, 4

*Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.,*
    529 U.S. 193 (2000)................................................................................6, 10

*Decker Coal Co. v. Commonwealth Edison Co.,*
    805 F.2d 834 (9th Cir. 1986) ......................................................................7

*General Drivers, Warehousemen & Helpers v. Riss & Co.,*
    372 U.S. 517 (1963)....................................................................................4

*Los Angeles Memorial Comm'n v. Nat'l Football League,*
    89 F.R.D. 497 (C.D. Cal. 1981) ..................................................................5

*Mediastream, Inc. v. Priddis Music, Inc., No. C 07-2127 PJH,*
    2007 U.S. Dist. LEXIS 73707 (N.D. Cal. Sept. 24, 2007) ........................9

*Meyers v. Ciano, No. C 01-3955 TEH,*
    2002 U.S. Dist. LEXIS 2556 (N.D. Cal. Feb. 12, 2002) ........................8, 9

*Michaels v. Mariforum Shipping,*
    624 F.2d 411 (2d Cir. 1980).........................................................................5

*Millmen's Local 550, United Bhd. of Carpenters & Joiners v. Wells Exterior Trim,*
    828 F.2d 1373 (9th Cir. 1987) .....................................................................5

*Public Serv. Elec. & Gas Co. v. Sys. Council U-2,*
    703 F.2d 68 (3d Cir. 1983)...........................................................................4

*Textile Unlimited, Inc. v. A. Bmhand Co., Inc.,*
    240 F.3d 781 (9th Cir. 2001) .......................................................................6

*Varley v. Tarrytown Assocs., Inc.,*
    477 F.2d 208 (2d Cir. 1973).........................................................................3

## STATUTES

9 U.S.C. § 9 .......................................................................................................3, 6

28 U.S.C. § 1391(b) ..............................................................................................6

TABLE OF AUTHORITIES

28 U.S.C. § 1404 ......................................................................................................2

28 U.S.C. § 1404(a) ................................................................................................5, 6

28 U.S.C. § 1407 ...................................................................................................2, 3

29 U.S.C. § 185 ........................................................................................................3

**MISCELLANEOUS**

22A Fed. Proc. § 52:2002 (Lawyers ed. 2003) ........................................................4

- iii -

TABLE OF AUTHORITIES

1    Respondent Safeway, Inc. ("Safeway"), by and through its attorneys, hereby submits the

2    following response in opposition to Petitioner International Brotherhood of Teamsters, Local

3    439's ("Union's") Notice of Pendency of Other Action or Proceeding:

4    **I.    INTRODUCTION**

5    Safeway's Complaint for Speedy Declaratory Relief, An Order Compelling Arbitration,

6    and Damages, Case No. 2:08-cv-01136-JAM-JFM ("Complaint"), which Safeway filed in the

7    United States District Court for the Eastern District of California ("Eastern District"), is properly

8    before the Eastern District.  The Complaint should not be transferred to the United States District

9    Court for the Northern District of California ("Northern District" or "this court") because venue

10   is not appropriate in the Northern District.  Instead, this court should outright dismiss the

11   Union's Petition to Confirm Arbitration Awards ("Petition"), which is currently pending before

12   this court.  (Docket # 1.)[1]  This court does not have the authority to confirm those awards

13   because the parties never agreed that a district court would enter judgment upon the issuance of

14   arbitration awards.  Moreover, the awards at issue are not final and not properly before this court.

15   Alternatively, this court should transfer the Petition to the Eastern District under 28

16   U.S.C. § 1404.  This court should not effect the transfer of the Complaint to this court under 28

17   U.S.C. § 1407, as requested by the Union, because venue is not appropriate in this district.  The

18   parties reside in the Eastern District; the Union's principal place of business is in Stockton,

19   California, and Safeway's Distribution Center at issue in the Complaint and Petition is located in

20   Tracy, California.  Additionally, the arbitrations at issue all occurred in the Eastern District, and

21   many of the witnesses involved in the underlying grievances and disputes relevant to the Petition

22   work in the Eastern District.  Consequently, the Union's request that this court transfer the

23   Complaint to this court should be denied.

24

25

26

27   [1]  All references to the "Docket" contained herein are to this court's docket in the above-captioned case.

28

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Safeway refers the court to the Factual and Procedural Background set forth in Safeway's Response and Opposition to Petition to Confirm Arbitration Awards; Motion to Transfer Or Stay Action Or to Vacate Arbitration Awards ("Response").  (Docket # 4 at 8-16.)  Since Safeway filed its response, the following additional facts have developed:

The parties had another arbitration hearing before Arbitrator Bridgewater on June 12, 2008.  (Declaration of Christian J. Rowley, attached hereto as Exhibit A, at ¶ 2.)  At the hearing, Safeway again objected to Arbitrator Bridgewater's authority to hear grievances between the parties:

> Mr. Ruygrok:  . . . [A]nd again, this is for reiteration purposes and for the record since we are now on the record, we reiterate our position that, one, you don't have authority to hear this case despite your ruling; two, that your authority to determine your own authority, we object to that.  And to protect – and are not waiving any arguments [in] that respect.

> We're here obviously so that there's not a decision without us being represented or heard in this matter.

> Finally, that we again are not waiving any of our arguments with respect to your authority to hear the case or the fact that your position as an arbitrator at this Board of Adjustment has been terminated.

> . . . And the court has – at least it's our position the court has the authority to make that determination.

(Exhibit A at ¶ 3, Exhibit 1 at 25.)  After that objection by Safeway, Arbitrator Bridgewater stated that her May 7 award did not decide those issues:

> The Arbitrator:   And the arbitrator would like to state for the record that the arbitrator has not made a ruling as to whether or not she has authority to rule in this matter.  The arbitrator's letters were clear and unambiguous in that she's appearing here based on the union's position that she has authority.

(Exhibit A at ¶ 4, Exhibit 1 at 25-26.) (emphasis added).  The Union then reiterated its position that the June 12 hearing was proper and that Safeway did not have a right under the CBA to unilaterally terminate the arbitrator.  (Exhibit A at ¶ 5, Exhibit 1 at 26.)  Following those objections and statements on the records, Arbitrator Bridgewater continued to hear the issues the Union presented to her at the June 12 hearing.  (Exhibit A at ¶ 6.)  Arbitrator Bridgewater will continue to hear grievances between the parties each month until the CBA expires on September

- 3 -

1   27, 2008.  (Docket # 4, Exhibit A at ¶ 21.)

2   **III.    LEGAL ARGUMENT**

3       **A.    The Court Should Deny The Petition Because The Parties
                Have Not Consented To The Entry Of Judgment Upon
4               Arbitration Awards.**

5           The court's jurisdiction over this action is based on Section 301 of the Labor

6   Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Federal Arbitration Act

7   ("FAA"), 9 U.S.C. § 1 *et seq.*  Section 9 of the FAA provides federal district courts with

8   authority to confirm arbitration awards, but only if "the parties in their agreement have agreed

9   that a judgment of the court shall be entered upon the award made pursuant to the arbitration."  9

10  U.S.C. § 9.  Courts will not confirm arbitration awards absent such specific agreement by the

11  parties.  *See, e.g., Commonwealth Enterps. v. Liberty Mutual Ins. Co.*, No. CA 91-55892, 1992

12  U.S. App. LEXIS 6121, at *5-*8 (9th Cir. Mar. 27, 1992), *aff'd*, 958 F.2d 376 (9th Cir. 1992)

13  ("[C]onfirmation of an arbitration award is appropriate only where the parties in their agreement

14  have agreed that a judgment of the court shall be entered upon the award.") (quotations omitted);

15  *Varley v. Tarrytown Assocs., Inc.*, 477 F.2d 208, 210 (2d Cir. 1973) (same); *American Pres.*

16  *Lines, Ltd. v. Trans Atlantic Assocs., Inc.*, No. C-04-1515 EDL, 2004 U.S. Dist. LEXIS 16852, at

17  *4 (N.D. Cal. Aug. 17, 2004) ("The district court must grant a timely motion to confirm an

18  arbitration award: (1) *if the parties have agreed that a court judgment shall be entered on the*

19  *award; and* (2) unless the arbitration award is vacated, modified or corrected.") (emphasis

20  added).

21          The parties in this case have not agreed that court judgments shall be entered upon

22  arbitration awards.  Indeed, the CBA's grievance-arbitration provision is completely silent on the

23  issue.  (Docket # 4, Exhibit A at ¶ 12, Exhibit 1 at 21-24.)  Accordingly, the court has no

24  authority to confirm the arbitration awards at issue here.  *See, e.g., Commonwealth Enterps.*,

25  1992 U.S. App. LEXIS 6121, at *6 (affirming the district court's denial of petition to confirm

26  arbitration award where "nothing in the [arbitration agreement] indicated that a court judgment

27  would be entered upon the award").  *Compare American Pres. Lines*, 2004 U.S. Dist. LEXIS

28

- 4 -

16852, at *4-*5 (confirming award because the parties' arbitration agreement provided that awards "may be enforced by any court . . . as may properly assert jurisdiction"). Thus, for this reason alone, the court should deny the Union's petition.

### B. The Court Should Further Deny The Petition Because The Arbitration Awards Are Not Final.

As a general rule, a court cannot review an arbitration decision until the decision is final. *See, e.g., General Drivers, Warehousemen & Helpers v. Riss & Co.*, 372 U.S. 517, 519 (1963). A decision is not final until all of the issues associated with the award are final. *See, e.g., Public Serv. Elec. & Gas Co. v. Sys. Council U-2*, 703 F.2d 68, 69-70 (3d Cir. 1983) (parties to a labor arbitration had agreed to bifurcate the determination of liability and remedy but court held that the determination of liability alone was not a reviewable final and binding award); 22A FED. PROC. § 52:2002 (Lawyers ed. 2003) ("Generally, a District Court may review an arbitrator's rulings pursuant to 29 U.S.C.A. § 185 only after there is a final award containing findings as to liability and as to the remedy."). As the Ninth Circuit has noted approvingly, the "Second Circuit has held that an arbitration award under the Federal Arbitration Act, . . . is a reviewable final order only if intended by the arbitrator to be a complete determination of the claims, including the issue of damages." *Millmen's Local 550, United Bhd. of Carpenters & Joiners v. Wells Exterior Trim*, 828 F.2d 1373, 1376 (9th Cir. 1987) (citing *Michaels v. Mariforum Shipping*, 624 F.2d 411, 413-14 (2d Cir. 1980).

Neither arbitration award at issue in this case is final. With respect to Arbitrator Bridgewater's May 14, 2008 decision, Arbitrator Bridgewater decided merely the issue of substantive arbitrability, *i.e.*, whether the issue of Safeway's compliance with a February 1, 2008 settlement agreement was arbitrable under the parties' CBA. Arbitrator Bridgewater has not decided the merits of the case, even though she intends to do so over Safeway's continuing objection. With respect to Arbitrator Bridgewater's May 7, 2008 decision, Arbitrator Bridgewater expressly has not decided the issue of whether she has jurisdiction to hear grievances between the parties given her termination on April 14, 2008. (Exhibit A at ¶ 4, Exhibit 1 at 25-26.) The Union's claim that her May 7 award is final is, thus, entirely without

- 5 -

merit. Even if she had decided that issue, she has not decided the merits of any grievances heard subsequent to her termination. Because Arbitrator Bridgewater has not yet heard the merits of any of the grievances related to her May 14 or May 7 awards, those awards are not final because they are not a complete determination of the Union's claims and, therefore, are not subject to review by the court. *See, e.g., Millmen's*, 28 F.2d at 1376-77. Consequently, the court should deny the Union's petition for this additional reason.

**C.    Alternatively, The Court Should Transfer This Action To The Eastern District Of California.**

A court has statutory authority to transfer a case to another district. Section 1404(a) specifically provides that: "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). To successfully move for transfer under Section 1404(a), Safeway must establish that the action could have been brought in the district to which transfer is sought. *See, e.g., Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Safeway also bears the burden of "establishing that the action should be transferred." *Los Angeles Memorial Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 499 (C.D. Cal. 1981), *aff'd*, 726 F.2d 1381 (9th Cir. 1984). As explained in detail below, Safeway meets its burden in both respects. Indeed, transfer is particularly appropriate in this case because the related action that Safeway filed in the Eastern District of California ("Eastern District") involves the same parties and similar issues (*e.g.,* whether Arbitrator Bridgewater has authority to hear and decide grievances between the parties). *See, e.g., Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 196-97 (2000).

**1.    The Union's petition could have been brought in the Eastern District.**

Section 9 of the FAA provides that a petition to confirm an arbitration award "may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. However, the venue provision in Section 9 is permissive and subject to the general venue statute. *See, e.g., Cortez Byrd*, 529 U.S. at 204; *Textile Unlimited, Inc. v. A. Bmhand Co.,*

1   *Inc.*, 240 F.3d 781, 784 (9th Cir. 2001).  Section 1391(b), which is the general venue statute that

2   applies in this case because the petition is based on federal question jurisdiction under Section

3   301 of the LMRA, provides in pertinent part that venue is appropriate in any district where any

4   defendant resides or where a substantial part of the events giving rise to the claim occurred.  28

5   U.S.C. § 1391(b).  Accordingly, the Union could have brought the petition in the Eastern District

6   because Safeway resides there, the arbitrations occurred there, and the underlying facts

7   pertaining to the grievances occurred there (not to mention that the Union resides there as well).

8   Thus, Safeway has met the first part of the transfer test by establishing "that the action could

9   originally have been brought in the [Eastern District of California]."  *Commodity Futures*, 611

10  F.2d at 279.

11            **2.    The Union's petition should be transferred to the**
                      **Eastern District.**
12

13          In ruling on a motion to transfer, the court must consider each of the factors enumerated

14  in Section 1404(a), *i.e.*, convenience of the parties, convenience of the witnesses, and the

15  interests of justice.  28 U.S.C. § 1404(a).  Other relevant factors include: the plaintiff's choice of

16  forum, the local interest in the issue, the relative ease of access to evidence, the availability of

17  compulsory process for unwilling witnesses and the cost involved in securing willing witnesses,

18  and the practical issues that make a case easier or more difficult to try in a given forum.  *See*

19  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  As explained

20  below, most – if not all – of these factors weigh in favor of transferring the case to the Eastern

21  District.

22            **a.    The Eastern District is a more convenient forum**
                      **for the parties.**

23          Both parties reside in the Eastern District.  The Union's principal place of business is in

24  Stockton, California.  (Docket # 4, Exhibit A at ¶ 6.)  Similarly, Safeway's Distribution Center is

25  located in Tracy, California, and Safeway employees that the Union represents work in that

26  facility.  (*Id.* at ¶¶ 2, 4-5.)  Given that both parties reside in the Eastern District, that the

27  arbitrations occurred there (Docket # 4, Exhibit A at ¶ 15 and Exhibit B at ¶ 16), that many of the

28

- 7 -

1    witnesses involved in the underlying grievances and the disputes relevant to this lawsuit work

2    there, it will be more convenient for the parties to try a case in that court.

3              **b.    The Eastern District is a convenient forum for
                        the witnesses.**

4

5        Safeway intends to call at least two witnesses at any trial in this matter, Doug Ruygrok

6    and Carl Ramnitz.  Mr. Ruygrok and Mr. Ramnitz are both responsible for labor relations at the

7    Distribution Center.  (Docket # 4, Exhibit A at ¶ 2 and Exhibit B at ¶ 2.)  At trial, they would

8    testify to the topics included in their declarations.  (Docket # 4, Exhibits A and B.)  Through

9    their employment at Safeway, both Mr. Ruygrok and Mr. Ramnitz work at or visit the

10   Distribution Center in the Eastern District.  (Docket # 4, Exhibit A at ¶ 2 and Exhibit B at ¶ 2.)

11   As such, the Eastern District is a convenient forum for them.

12       Safeway does not know whom the Union would call as witnesses at any trial in this

13   matter.  However, Safeway assumes that such witnesses would include Union representatives

14   and business agents.  Because the Union's principal place of business is in the Eastern District

15   and because the Union's representatives and business agents represent employees at the

16   Distribution Center in that district (Docket # 4, Exhibit A at ¶ 2, 5-6), the Eastern District would

17   not be an inconvenient forum for the Union's witnesses.

              **c.    The interests of justice favor transfer to the
                      Eastern District.**

18

19       Transfer is appropriate for the additional reason that this court is in the preliminary stage

20   of proceedings.  *See, e.g., Meyers v. Ciano*, No. C 01-3955 TEH, 2002 U.S. Dist. LEXIS 2556, at

21   *10 (N.D. Cal. Feb. 12, 2002) (finding it was within the interests of justice to transfer the action

22   because litigation had not progressed far).  Although the Eastern District likewise is in the

23   preliminary stage of proceedings on Safeway's complaint, the interests of justice still weigh in

24   favor of transferring the action because of judicial economy.  Safeway could not have brought its

25   declaratory judgment action in this court because venue is not proper here.  The Union, the only

26   defendant in that case, is not a resident of this judicial district.  (Docket # 4, Exhibit A at ¶ 6.)

27   Moreover, a substantial part of the events giving rise to Safeway's claims in its complaint did not

28

                                                - 8 -

occur in this judicial district. Rather, the arbitrations and CBA at issue all occurred or were entered into in the Eastern District. (Docket # 4, Exhibit A at ¶ 15 and Exhibit B at ¶ 16.) Additionally, the underlying facts related to the grievances at issue occurred in that district. (Docket # 4, Exhibit A at ¶ 2, 5 and Exhibit B at ¶ 2, 4.) Consequently, if this court refuses to deny the petition or to transfer the action, then two closely related proceedings will be occurring in two different judicial districts, wasting both the parties' and the judiciary's resources. The interests of justice plainly favor the transfer of this action.

### d.     The Eastern District's interest in the action outweighs the Union's choice of forum.

The Eastern District has local interest in this action for a number of reasons. First, the Distribution Center at issue is located in that district. (Docket # 4, Exhibit A at ¶ 2.) Second, the Union's principal place of business is located in that district. (*Id.* at ¶ 6.) Third, the arbitrations at issue occurred or will occur in that district. (Docket # 4, Exhibit A at ¶ 15 and Exhibit B at ¶ 16.) Fourth, the employees subject to the parties' CBA work in that district, and many of them reside in that district. (Docket # 4, Exhibit A at ¶ 4.) In comparison, this district has no particular interest in the subject matter of this dispute other than the fact that Arbitrator Bridgewater resides in this district, and she is not a party to this dispute. Given the Eastern District's local interest in this case, this court should transfer the action to that district.

Although the Union's choice of forum is one factor that the court should consider when deciding to transfer an action, the court should give the Union's choice of forum little weight in this case. Indeed, this court has held that where, as here, the local interest lies so heavily in another district the plaintiff's choice of forum should be given minimal weight in the transfer analysis. *See, e.g., Meyers*, 2002 U.S. Dist. LEXIS 2556, at *8-*9 (holding that a plaintiff's choice of forum should only be afforded minimal consideration where "she is not a resident of the district where she instituted suit, the operative facts have not occurred within the forum, and the forum has no particular interest in the parties or the subject matter"). Moreover, the Union filed this suit only after Safeway gave notice that it would file a complaint in the Eastern District. Such anticipatory suits "are disfavored because they are examples of forum shopping."

- 9 -

1    *Mediastream, Inc. v. Priddis Music, Inc.*, No. C 07-2127 PJH, 2007 U.S. Dist. LEXIS 73707, at

2    *7 (N.D. Cal. Sept. 24, 2007). Thus, the Union's choice of forum should be given minimal

3    weight for this additional reason. *See, e.g., Alltrade Inc. v. Uniweld Prods, Inc.*, 946 F.2d 622,

4    628 (9th Cir. 1991) (finding that courts should disregard the plaintiff's forum choice if the suit is

5    a result of forum shopping).

6                    e.    **The relative ease of access to evidence favors
                          transferring this action to the Eastern District.**
7
                As set forth above, the Distribution Center and the Union's offices are located in the
8
     Eastern District. Because the disputes center around contract interpretation issues, any evidence
9
     would be located in that district. The Distribution Center houses the CBA, grievance paperwork,
10
     and bargaining history. (Docket # 4, Exhibit A at ¶ 8.) Similarly, Safeway assumes that the
11
     Union's offices house the CBA, relevant grievance paperwork, and relevant bargaining history.
12
     None of the evidence is located in this district. Thus, the relative ease of access to evidence
13
     weighs in favor of transferring this action to the Eastern District.
14
                    f.    **The availability of compulsory process for
15                       unwilling witnesses and the costs involved in
                         securing willing witnesses favor transferring this
16                       action to the Eastern District.**

17              As of this time, Safeway is unaware of any unwilling witnesses. However, if the need to

18   subpoena any unwilling witness arose, it is most likely that the subpoena would need to issue

19   from the Eastern District because the Distribution Center and the Union's offices are located in

20   that district. Moreover, for the reasons set forth in Section "b" above, Safeway's willing

21   witnesses and the Union's likely witnesses work and/or reside in the Eastern District, and their

22   costs of appearing there would be minimal. Accordingly, this factor favors transferring this

23   action to the Eastern District.

24                    g.    **Practical considerations make it easier to try this
                           case in the Eastern District.**
25
                This case is related to grievances, ongoing arbitrations, and future arbitrations that are
26
     occurring in the Eastern District. (Docket # 4, Exhibit A at ¶ 2, 4-5, 15 and Exhibit B at ¶ 16.)
27
     Moreover, this case is substantially related to the proceedings pursuant to Safeway's complaint
28

- 10 -

filed in that district. (Docket # 4, Exhibit C at ¶ 5.) Because witnesses and counsel are handling those grievances and ongoing arbitrations, future arbitrations, and court proceedings are occurring in the Eastern District. (Docket # 4, Exhibit A at ¶ 15, Exhibit B at ¶ 16, and Exhibit C at ¶ 5), it makes logistical sense to have this case proceed in that district as well. Thus, this factor weighs in favor of venue transfer.

Based on all of the foregoing, it is apparent that the bulk of the venue transfer factors favor transferring this action to the Eastern District. Accordingly, the court should transfer the action to that court in the event that it does not dismiss the action outright. *See, e.g., Cortez*, 529 U.S. at 203-04 (holding that court should have carefully considered petitioner's motion to transfer where petitioner filed a petition to vacate an arbitration award in one district and respondent filed a petition to confirm the award in another district and venue was appropriate in both courts).

## IV.    CONCLUSION

For the foregoing reasons, Safeway respectfully requests this court not to effect the transfer of the Complaint in the Eastern District to this court. Instead, this court should dismiss the Union's Petition outright or transfer the Petition to the Eastern District.

DATED: June 30, 2008                SEYFARTH SHAW LLP


                                    By_____/s/_____.
                                        Christian J. Rowley
                                    Attorneys for Respondent
                                    SAFEWAY INC.

- 11 -

# EXHIBIT A

1   SEYFARTH SHAW LLP
    Christian J. Rowley (SBN 187293)
2     (crowley@seyfarth.com)
    560 Mission Street, Suite 3100
3   San Francisco, CA 94105
    Telephone: (310) 277-7200
4   Facsimile: (310) 201-5219

5   Attorneys for Respondent
    SAFEWAY, INC.

6

7

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11  INTERNATIONAL BROTHERHOOD OF    )   Case No. C08-02536-JL-ADR
    TEAMSTERS, LOCAL 439,           )
12                                  )   **DECLARATION OF CHRISTIAN J.**
            Petitioner,             )   **ROWLEY**
13                                  )
        v.                          )
14                                  )
    Safeway, Inc.,                  )
15                                  )
            Respondent.             )
16  _____)

17

        I, Christian J. Rowley, declare:
18
        1.  I am an attorney at law licensed to practice before all Courts of the State of
19
    California, the United States District Court for the Northern District of California, and the United
20
    States District Court for the Eastern District of California.  I am a partner with the law firm of
21
    Seyfarth Shaw LLP, and counsel of record for Respondent Safeway, Inc.  I have personal
22
    knowledge of the facts set forth in this declaration, and if called as a witness for this purpose, I
23
    could and would testify competently under oath to them.
24
        2.  The parties had another arbitration hearing before Arbitrator Bridgewater on June 12,
25
    2008.  True and correct copies of the relevant pages of the transcript from that hearing are
26
    attached as Exhibit 1.
27

28                                   - 1 -
    _____
    SF1 28327509.1 / 35977-000110

3.   At the hearing, Safeway again objected to Arbitrator Bridgewater's authority to hear grievances between the parties:

> Mr. Ruygrok: . . . [A]nd again, this is for reiteration purposes and for the record since we are now on the record, we reiterate our position that, one, you don't have authority to hear this case despite your ruling; two, that your authority to determine your own authority, we object to that.  And to protect – and are not waiving any arguments [in] that respect.
>
> We're here obviously so that there's not a decision without us being represented or heard in this matter.
>
> Finally, that we again are not waiving any of our arguments with respect to your authority to hear the case or the fact that your position as an arbitrator at this Board of Adjustment has been terminated.
>
> . . . And the court has – at least it's our position the court has the authority to make that determination.

*See* Exhibit 1 at 25.

4.   After that objection by Safeway, Arbitrator Bridgewater stated that her May 7 award did not decide those issues:

> The Arbitrator:   And the arbitrator would like to state for the record that the arbitrator has not made a ruling as to whether or not she has authority to rule in this matter.  The arbitrator's letters were clear and unambiguous in that she's appearing here based on the union's position that she has authority.

*Id.* at 25-26.

5.   The Union then reiterated its position that the June 12 hearing was proper and that Safeway did not have a right under the CBA to unilaterally terminate the arbitrator.  *Id.* at 26.

6.   Following those objections and statements on the records, Arbitrator Bridgewater continued to hear the issues the Union presented to her at the June 12 hearing.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this June 30, 2008, in San Francisco, California.

/s/ Christian J. Rowley_____
Christian J. Rowley

# EXHIBIT 1

Arbitration

1

IN ARBITRATION PROCEEDINGS

PURSUANT TO AGREEMENT BETWEEN THE PARTIES

IN THE MATTER OF A              )
CONTROVERSY BETWEEN:            )
                                )
IBT LOCAL 439,                  ) No. Unassigned
                                )
        Union,                  )
                                )
        and                     )
                                )
SAFEWAY, INC.,                  ) Volume One
                                ) Pages 1 - 150
        Company/Employer.       )
                                )


        BOARD OF ADJUSTMENT MEETING
        AND ARBITRATION HEARING

        DATE:  June 12, 2008, at 10:25 a.m.


        ARBITRATOR:   BARBARA BRIDGEWATER
                      2116 Eighth Street
                      Berkeley, California 94710-2374

        REPORTER:  Patricia Coward, CSR No. 5142

        LOCATION:   Holiday Inn Express
                    3751 Tracy Boulevard
                    Tracy, California 95304


                    --oOo--

Arbitration

---

**Page 2**

```
1   APPEARANCES:
2   ARBITRATOR:  Barbara Bridgewater
3
    BOARD OF ADJUSTMENT MEMBERS:
4
    Barbara Bridgewater
5   Daniel Lee
    Charles Tryon
6   Kurt Steinhoff
    Michelle Scott
7
8
    FOR THE UNION:
9
    ED SPECKMAN, Business Representative
10  Teamsters Local 439
    1531 East Fremont Street
11  Stockton, CA 95201
12  David Rosenfeld and Sarah McBride, Attorneys at Law,
    with the Law Offices of Weinberg, Roger & Rosenfeld
13
    Sam Rosas
14  Pablo Barrera
15
16  FOR THE COMPANY:
17  DOUG RUYGROK, Safeway
    Supply and Distribution
18  618 Michillinda Avenue
    Arcadia, CA 91007
19
    Christian J. Rowley, Attorney At Law, with the Law
20  Offices of Seyfarth & Shaw
21  Rich Cox
    Ben Ploshay
22
23           --o0o--
24
25
                                                    2
```

---

**Page 4**

```
1               INDEX OF EXAMINATION
2
    WITNESSES:   DIRECT  CROSS  REDIRECT  RECROSS
3
    CALLED BY THE UNION:
4
    PABLO BARRERA    38    56      68      69
5                          75    73
    SAM ROSAS        76    107    132    141
6                          145    146
    PHILLIP CREAMER  91    94
7                    97
    JOHN WILLIAMS    99
8   (via telephone)
9                    --o0o--
10
              INDEX OF EXHIBITS
11
    EXHIBIT NUMBER AND DESCRIPTION:    IDEN.   EVID.
12
13  JOINT EXHIBITS:
14  1    Agreement
         (Marked in prior proceedings)
15
16  UNION EXHIBITS:
17  1    Settlement Agreement
         (marked in prior proceedings)
18
    2    Seven pages of photographs    43    48
19
    3    Warehouse Stock-Out           48    49
20       documents
21  4    Seven pages of photographs    50    52
22  5    19 pages of photographs       52    56
23
                (continued)
24
25
                                                    4
```

---

**Page 3**

```
1       BOARD OF ADJUSTMENT HEARING
2   BEGINS:              PAGE
3                          7
4        INDEX OF WITNESSES
5   WITNESSES:  DIRECT  CROSS  REDIRECT  RECROSS
6   CALLED BY THE UNION:
7   ED SPECKMAN    9    11    12
8             --o0o--
9
         CLOSING STATEMENTS
10
    BY:                  PAGE
11
    Mr. Rowley           14
12  Mr. Rosenfeld        16
13
             --o0o--
14
15   BEGINNING OF ARBITRATION HEARING
16  BEGINS:              PAGE
17  [Reporter's Note: Begin Arbitration    24
    portion of proceedings]
18
    Mass swearing in of all potential witnesses   31
19
20
21       OPENING STATEMENTS
22  BY:                  PAGE
23  Mr. Ruygrok          32
24           --o0o--
25
                                                    3
```

---

**Page 5**

```
1               INDEX OF EXHIBITS
2
    EXHIBIT NUMBER AND DESCRIPTION:    IDEN.   EVID.
3
    COMPANY EXHIBITS:
4
    1    Document titled          116    119
5        "Important Notice"
6    2   Employee names, hire dates,   121    123
         full-time dates, and
7        departments
8                 --o0o--
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                                                    5
```

2 (Pages 2 to 5)

Arbitration

| | |
|---|---|
| 1 | From:    CAROL NYGARD & ASSOCIATES |
| 2 |    CERTIFIED SHORTHAND REPORTERS |
| | 4180 TRUXEL ROAD, SUITE 100 |
| 3 |    SACRAMENTO, CALIFORNIA 95834 |
| | Telephone: (916) 928-8999 |
| 4 |    Fax: (916) 928-9989 |
| 5 | |
| | June 26, 2008 |
| 6 | |
| 7 | SEYFARTH & SHAW      ED SPECKMAN |
| | BY: CHRISTIAN J. ROWLEY   BUSINESS REPRESENTATIVE |
| 8 | ATTORNEY AT LAW      TEAMSTERS LOCAL 439 |
| | 60 Mission Street      1531 East Fremont Street |
| 9 | Suite 3100      Stockton, CA 95201 |
| | San Francisco, CA 94105 |
| 10 | |
| | Re: IBT Local 439 and Safeway Stores, Inc. |
| 11 |    Hearing of June 12, 2008 |
| 12 | Counsel: |
| 13 | The transcript of Volume I of the above Board of |
| | Adjustment and Arbitration hearing has now been |
| 14 | completed, and a copy is enclosed herein for each |
| | attorney. The original transcript has been forwarded |
| 15 | to the arbitrator. |
| 16 | Thank you for your referral of this matter to our |
| | office. |
| 17 | |
| | Yours very truly, |
| 18 | |
| | CAROL NYGARD & ASSOCIATES |
| 19 | |
| 20 | |
| | By: Patricia Coward |
| 21 | Certified Shorthand Reporter |
| 22 | cc: Barbara Bridgewater, Arbitrator |
| 23 | |
| 24 | |
| 25 | |
| | 6 |

| | |
|---|---|
| 1 | So we don't have witnesses right now on the |
| 2 | bargaining history, although our position is frankly |
| 3 | the bargaining history is not relevant given the clear |
| 4 | language of the contract in this case, and in any event |
| 5 | as I'll discuss later on, the bargaining history |
| 6 | actually has -- as testified. |
| 7 | UNIDENTIFIED SPEAKER: We can't hear you. |
| 8 | MR. ROWLEY: I'm sorry, the bargaining history |
| 9 | as testified by Mr. Tauriac and Mr. Speckman actually |
| 10 | supports the – Safeway's position that an attorney is |
| 11 | entitled to be here, but we can argue that later. |
| 12 | THE ARBITRATOR: Did you want to present any |
| 13 | other witnesses on the issue of whether attorneys can |
| 14 | be present at a board of adjustments? |
| 15 | MR. ROWLEY: No, ma'am. |
| 16 | THE ARBITRATOR: So the company rests. |
| 17 | MR. ROWLEY: The company rests, yes. |
| 18 | THE COURT: Would the union like to present any |
| 19 | further? |
| 20 | MR. ROSENFELD: No. We rest, too, on the |
| 21 | issue – hold on a second. |
| 22 | THE ARBITRATOR: Off the record a minute. |
| 23 | (Brief pause.) |
| 24 | MR. ROSENFELD: I do think we are going to call |
| 25 | another witness. |
| | 8 |

| | |
|---|---|
| 1 | June 12, 2008, at Tracy, California, 10:25 a.m. |
| 2 | --o0o-- |
| 3 | THE ARBITRATOR: Ready to go on the record. So |
| 4 | today is June the 12th, 2008. And we're here for a |
| 5 | Board of Adjustment. This matter began back in April, |
| 6 | specifically on April the 14th, and we had another |
| 7 | hearing date on May the 22nd. On May the 22nd, we |
| 8 | began around 4:00 p.m., and we had four witnesses, two |
| 9 | for the union and two for the company. |
| 10 | So my understanding, that the issue in May was |
| 11 | whether or not attorneys could be present at a Board of |
| 12 | Adjustment and that the company was going to have me |
| 13 | sign some subpoenas and proceed further with |
| 14 | presentation of witnesses; is that correct? |
| 15 | MR. ROWLEY: Yes, Madam Arbitrator. The |
| 16 | subpoenas weren't directly at the arbitrator or to the |
| 17 | attorney issue. We did have some subpoenas. |
| 18 | THE ARBITRATOR: Right. |
| 19 | MR. ROWLEY: The company had two potential |
| 20 | witnesses with regard to the attorney issue. One of |
| 21 | the two witnesses has had debilitating strokes and is |
| 22 | unable to travel, and the other witness is in Tennessee |
| 23 | and no longer works for the company, and he has just |
| 24 | started a new job, so he was unavailable to come out |
| 25 | and testify. |
| | 7 |

| | |
|---|---|
| 1 | THE ARBITRATOR: Okay. |
| 2 | MR. ROSENFELD: Ed Speckman |
| 3 | THE ARBITRATOR: You're still under oath. |
| 4 | MR. SPECKMAN: Yeah. |
| 5 | THE ARBITRATOR: And so this witness is |
| 6 | recalled? |
| 7 | MR. ROSENFELD: Right. |
| 8 | |
| 9 | ED SPECKMAN, |
| 10 | |
| 11 | called as a witness by the Union, having been |
| 12 | previously sworn to testify the truth, the whole truth, |
| 13 | and nothing but the truth, testified further on oath as |
| 14 | follows: |
| 15 | --o0o-- |
| 16 | |
| 17 | DIRECT EXAMINATION BY MR. ROSENFELD |
| 18 | |
| 19 | MR. ROSENFELD: Mr. Speckman, are you familiar |
| 20 | with what's happened in the past with respect to use of |
| 21 | attorneys in contract interpretation cases? |
| 22 | A.    I believe I am. |
| 23 | Q.    For how long have you had responsibility for |
| 24 | handling these cases with Safeway? |
| 25 | A.    Since the contract inception in August 2003. |
| | 9 |

3 (Pages 6 to 9)

Arbitration

1  going to hear testimony, and it may influence their own
2  testimony. It's human nature.
3      The history of this board is to sequester
4  witnesses, and I think we can get testimony if we need
5  to from the members of the panel in fact in that
6  respect. And again, it's not an issue of persuasion or
7  decorum; it's an issue of we don't want their testimony
8  to be influenced or heard by other potential witnesses.
9      THE ARBITRATOR: Okay. Any response to the
10  history of sequestering the witnesses of the Board of
11  Adjustment?
12      MR. SPECKMAN: When it's been ordered, we've
13  always complied. I can't recall when that's happened,
14  but I know we certainly wouldn't -- I mean if --
15      MR. RUYGROK: Well, you acknowledge that it's
16  happened, and you acknowledge that you've complied, and
17  the motion has been made by both sides in the past,
18  both the company and the union.
19      THE ARBITRATOR: So, okay.
20      MR. SPECKMAN: Okay, how about this: We will
21  agree that any witness that's going to testify will be
22  removed?
23      THE ARBITRATOR: Is that acceptable to the
24  company?
25      MR. RUYGROK: Give me a moment.

22

1      attorney, I just need to get my thoughts together for
2  just a moment. Can I, just ten minutes?
3      THE ARBITRATOR: The attorneys can be present
4  during the hearing if they're not going to be
5  witnesses, you know.
6      MR. SPECKMAN: Yeah, I just need ten minutes.
7      THE ARBITRATOR: Okay.
8      MR. SPECKMAN: Quite frankly I've never done it
9  in that manner so I need to just consult for a minute.
10      THE ARBITRATOR: Okay. We need a break anyway,
11  so we'll taken a ten-minute break. Off the record.
12      (A break was taken.)
13      [Reporter's Note: Now begins the
14      Arbitration Hearing portion of
15      today's proceedings.]
16      THE ARBITRATOR: Let's go on the record. Would
17  the parties like to discuss anything with respect to
18  this matter off the record before we officially start?
19  The exhibits issue, statement of the issue, anything?
20  Or should we stay on the record?
21      MR. SPECKMAN: I think at this point we're
22  prepared to go on the record and go forward.
23      THE ARBITRATOR: Any -- any agreement as to the
24  statement of the issue?
25      MR. SPECKMAN: Not with us.

24

1      (Comments off the record.)
2      MR. RUYGROK: Not knowing exactly what we are
3  going to hear from their witnesses, and we believe that
4  all the people here have an interest in the outcome of
5  this arbitration, both with respect to their ability to
6  transfer to the CPS facility, they have an interest in
7  this thing, and we don't know who's going to testify or
8  what they're going to say, and we may want to call some
9  of these individuals ourselves. But to have them
10  present during the merits of the case, we ask that they
11  be sequestered.
12      We had a decision made earlier based on the
13  longstanding precedent. The precedent here is, when
14  the party asks for witnesses to be sequestered, they
15  get sequestered.
16      MR. SPECKMAN: We agree that witnesses that are
17  going to testify will be removed.
18      THE ARBITRATOR: The company's position is that
19  they don't know who they might call. If I make a
20  ruling to sequester all of the union witnesses, that
21  also applies to the company's, so.
22      MR. RUYGROK: Of course, we understand.
23      THE ARBITRATOR: So everybody out.
24      MR. SPECKMAN: And with that, can we just -- and
25  I'm sorry, just so -- with the ruling of the no

23

1      MR. RUYGROK: Pardon me? Oh, and before we do,
2  and again, this is for reiteration purposes and for the
3  record since we are now on the record, we reiterate our
4  position that, one, you don't have authority to hear
5  this case despite your ruling; two, that your authority
6  to determine your own authority, we object to that.
7  And to protect -- and are not waiving any arguments
8  with that respect.
9      We're here obviously so that there's not a
10  decision without us being represented or heard in this
11  matter.
12      Finally, that we again are not waiving any of
13  our arguments with respect to your authority to hear
14  the case or the fact that your position as an
15  arbitrator at this Board of Adjustment has been
16  terminated.
17      THE ARBITRATOR: And the arbitrator would like
18  the record --
19      MR. RUYGROK: And the court has -- at least it's
20  our position the court has the authority to make that
21  determination.
22      THE ARBITRATOR: And the arbitrator would like
23  to state for the record that the arbitrator has not
24  made a ruling as to whether or not she has authority to
25  rule in this matter.

25

7 (Pages 22 to 25)

Arbitration

| | |
|---|---|
| 1  The arbitrator's letters were clear and | 1  statement of the issues. |
| 2  unambiguous in that she's appearing here based on the | 2  THE ARBITRATOR: Proceed, Mr. Speckman. |
| 3  union's position that she has authority. | 3  MR. RUYGROK: Well -- okay. |
| 4  MR. RUYGROK: But -- | 4  MR. SPECKMAN: Everything was done in accordance |
| 5  MR. SPECKMAN: Just a statement over here, that | 5  with the agreement. Postings were put up. 48 of our |
| 6  is our position, and the positions that we hold in | 6  employees signed to transfer. And they were supposed |
| 7  documents, our positions, we're not making any other | 7  to be transferred on May 1st, and yet the company |
| 8  position, and we are maintaining that this is a proper | 8  refused to do so. We are here to compel the settlement |
| 9  proceeding and that it was properly done in accordance | 9  terms of this agreement and to allow our employees that |
| 10  with the agreement, and that the employer does not have | 10  have been disadvantaged by this transfer of work to CPS |
| 11  a right to unilaterally terminate the arbitrator. | 11  to be permitted to transfer. And at this point, no |
| 12  THE ARBITRATOR: Now, with the would the union | 12  employees have transferred. |
| 13  like to set forth its statement of the issues? What is | 13  THE ARBITRATOR: So the union's issue is whether |
| 14  the issue from the union's perspective on the | 14  the company violated the settlement agreement by not |
| 15  substantive matter? | 15  permitting Local 439 members to transfer to CPS? |
| 16  MR. SPECKMAN: The reason why we are here and | 16  MR. SPECKMAN: Correct. |
| 17  demanding arbitration is regarding what has been | 17  THE ARBITRATOR: The company's issue. |
| 18  provided to the panel already, and that's Union | 18  MR. RUYGROK: We would propose an issue as |
| 19  Exhibit 1 which is a document that includes 18 pages. | 19  follows: Did Safeway violate the CPS settlement |
| 20  THE ARBITRATOR: And that was at the April 14 -- | 20  agreement by refusing to transfer 48 employees from the |
| 21  MR. SPECKMAN: That is correct. | 21  439 bargaining unit who were not disadvantaged? |
| 22  THE ARBITRATOR: -- hearing. | 22  MR. SPECKMAN: I would object. I would say that |
| 23  MR. SPECKMAN: Our position at this point is we | 23  they have not moved any employees. |
| 24  are not objecting to or have any disagreement with | 24  MR. RUYGROK: We would stipulate we have not -- |
| 25  Union Exhibit 1, Pages 1 and 2, which is actually the | 25  well, we have moved from the other Local 630, but I |
| 26 | 28 |

| | |
|---|---|
| 1  settlement agreement. | 1  didn't -- no employees were moved, but he did not agree |
| 2  The part that we do have a dispute with in | 2  to transfer the 48 employees that he's referring to as |
| 3  Union 1, Pages 1 and 2, particularly, is number three | 3  they were not disadvantaged. |
| 4  on the settlement document. And that paragraph reads, | 4  THE ARBITRATOR: I understand. So Safeway's |
| 5  "Upon assuming control of the CPS facility, the company | 5  issue is whether Safeway violated the CPS settlement |
| 6  agrees to provide a window period of adequate length, | 6  agreement by refusing to transfer 48 employees who were |
| 7  undefined at this time, in which company employees | 7  not disadvantaged? |
| 8  covered by collective bargaining agreements with | 8  MR. RUYGROK: Correct. |
| 9  Local 630 and 439, who may have been disadvantaged by | 9  THE ARBITRATOR: So I have both sides' issues. |
| 10  the transfer of work to CPS will be permitted to | 10  Would the union like to make an opening statement or |
| 11  transfer with their seniority to the CPS facility. Any | 11  proceed to witnesses? |
| 12  employee who elects to transfer will be permitted to | 12  MR. SPECKMAN: I'd like to proceed to the |
| 13  return to their original facility with their seniority | 13  witnesses. |
| 14  within 90 days of transfer. No further transfers will | 14  THE ARBITRATOR: Okay. So we'll have to take |
| 15  be required." I read verbatim what the settlement | 15  time to call witnesses in one by one. |
| 16  agreement says. | 16  MR. RUYGROK: The company would then reserve its |
| 17  Local 439 -- | 17  right to make an opening statement since they've waived |
| 18  THE ARBITRATOR: I was just going to say, why | 18  theirs. |
| 19  don't we just consider this the union's opening | 19  MR. SPECKMAN: That's fine. Would you like to |
| 20  statement. | 20  make an opening statement? |
| 21  MR. RUYGROK: I was going to say, is there a | 21  MR. RUYGROK: I said we're going to reserve it. |
| 22  statement of issue in this here someplace? Because | 22  THE ARBITRATOR: He'll reserve it until their |
| 23  otherwise I'd like to propose one. | 23  case in chief. |
| 24  THE ARBITRATOR: Okay. | 24  The union's first witness. |
| 25  MR. SPECKMAN: Well, I was getting to our | 25  MR. SPECKMAN: Yes, okay. I will go get my |
| 27 | 29 |

8 (Pages 26 to 29)